**No. ____**

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

In re DAVID ANTHONY RUNYON,
*Petitioner*

From the United States District Court
for the Eastern District of Virginia

*United States v. Runyon,* No. 4:08-cr-00016
(The Honorable Rebecca Beach Smith)

## PETITION FOR WRIT OF MANDAMUS

Kathryn M. Ali
ALI & LOCKWOOD LLP
300 New Jersey Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com

Nicholas J. Xenakis
*Counsel of Record*
Peter A. Swanson
Santiago M. Zalazar
Eric T. O'Brien
Meaghan A. Ryan
Tyler G. VanderMolen
Rachel D. Bercovitz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

STATEMENT OF FACTS ..................................................................... 8

    A.    The Withdrawal of Mr. Runyon's Habeas Counsel ............... 8

    B.    The District Court's Counsel Rulings ................................... 11

REASONS WHY THE WRIT SHOULD ISSUE ..................................... 18

    I.    Mr. Runyon Has a Clear and Indisputable Right to Have His Chosen Counsel Be Admitted *Pro Hac Vice*. .................................. 18

        A.    Mr. Runyon Has a Right to Retain Out-of-District Counsel For His Capital Habeas Proceeding. ...................... 19

        B.    The District Court Clearly Abused Its Discretion in Barring Any *Pro Hac Vice* Admissions For Mr. Runyon's Counsel. ............................................................... 21

    II.    Mr. Runyon Has No Other Adequate Means to Vindicate His Right to Counsel of Choice ............................................................. 28

    III.    Granting This Writ Is Appropriate under the Exceptional Circumstances of the Case. ............................................................ 34

CONCLUSION .................................................................................. 41

CERTIFICATE OF COMPLIANCE .................................................... 42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015
WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *R&R
adopted in part*, No. 2:15-cv-015, 2016 WL 184397 (E.D.
Va. Jan. 15, 2016) ........................................................................ 22

*Belue v. Leventhal*,
640 F.3d 567 (4th Cir. 2011) .......................................................... 26

*Bills v. United States*,
11 F. App'x 342 (4th Cir. 2001) ....................................................... 25

*Cheney v. U.S. Dist. Ct.*,
542 U.S. 367 (2004) ........................................................................ 18

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) .......................................................... 33

*D.H. Overmyer Co. v. Robson*,
750 F.2d 31 (6th Cir. 1984) ............................................................ 22

*In re Evans*,
524 F.2d 1004 (5th Cir. 1975) ........................................................ 33

*In re Federal Savings & Loan Insurance Corp.*,
No. 88–3814, 1988 WL 76272 (4th Cir. July 11, 1988) .......... 33, 34, 38

*In re Fluor Intercontinental, Inc.*,
803 F. App'x 697 (4th Cir. 2020) ............................................... 30, 32

*Fuller v. Diesslin*,
868 F.2d 604 (3d Cir. 1989) ...................................................... 20, 21

*Martel v. Clair*,
565 U.S. 648 (2012) ........................................................................ 19

*In re Murphy-Brown, LLC,*
  907 F.3d 788 (4th Cir. 2018)...............................................................18

*Powell v. Alabama,*
  287 U.S. 45 (1932)...............................................................19

*In re Pruett,*
  133 F.3d 275 (4th Cir. 1997).............................................. 32, 38, 39

*Roma Constr. Co. v. Russo,*
  96 F.3d 566 (1st Cir. 1996) ..........................................................25, 27

*Sanders v. Russell,*
  401 F.2d 241 (5th Cir. 1968)...............................................................27

*Schlumberger Techs., Inc. v. Wiley,*
  113 F.3d 1553 (11th Cir. 1997)...............................................................22

*SEC v. Rajaratnam,*
  662 F.3d 159 (2d Cir. 2010) ...............................................................38

*Thomas v. Cassidy,*
  249 F.2d 91 (4th Cir. 1957) (per curiam)......................................22, 32

*U.S. Bd. of Parole v. Merhige,*
  487 F.2d 25 (4th Cir. 1973)...............................................................37

*In re U.S. for an Order Pursuant to 18 U.S.C. Section
  2703(D),*
  707 F.3d 283 (4th Cir. 2013)...............................................................18

*In re United States,*
  791 F.3d 945 (9th Cir. 2015).......................................... 22, 24, 32, 33

*United States v. Ensign,*
  491 F.3d 1109 (9th Cir. 2007)...............................................................20

*United States v. Gonzales-Lopez,*
  548 U.S. 140 (2006)...............................................................20

*United States v. Menner,*
  374 F. App'x 446 (4thCir. 2010) (unpublished) ...............................22

*United States v. Panzardi Alvarez,*
816 F.2d 813 (1st Cir. 1987) ................................................................. 28

*United States v. Runyon,*
707 F.3d 475 (4th Cir. 2013), *cert. denied,* 574 U.S. 813
(2014) ........................................................................................................ 8

*United States v. Runyon,*
994 F.3d 192 (4th Cir. 2021) ........................................................... 8, 35

*Willlliams v. Stirling,*
914 F.3d 302 (4th Cir. 2019) ............................................................... 36

## Statutes

18 U.S.C. § 3599 ........................................................................... *passim*

28 U.S.C. § 1291 ................................................................................ 32

28 U.S.C. § 1292 ................................................................................ 32

28 U.S.C. § 2255 ........................................................................... *passim*

## Other Authorities

District Court for the Eastern District of Virginia Local Civil
Rule 83.1(E) ................................................................... 23, 30, 39

District Court for the Eastern District of Virginia Local
Criminal Rule 57.4(E) ................................................... 23, 30, 38

Motion for Stay Pending Appeal, *In re: Elizabeth Peiffer,*
No. 23-5, ECF No. 8 (4th Cir. June 30, 2023) .................................. 36

Virginia's Criminal Justice Act Plan,
https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20
CJA%20PLAN.pdf .................................................................... 21, 24

## INTRODUCTION

Petitioner David Anthony Runyon respectfully petitions this Court for a writ of mandamus concerning the district court's refusal to allow his counsel at Covington & Burling LLP ("Covington") to appear in his capital habeas proceeding. Mr. Runyon is an indigent petitioner who has been sentenced to death. He retained Covington to represent him on a pro bono basis, with Kathryn Ali of Ali & Lockwood, after his lead counsel withdrew due to conflicts of interest in early 2023. While the district court appointed Ms. Ali pursuant to 18 U.S.C. § 3599, the court has repeatedly stated that it will reject any *pro hac vice* applications submitted by Mr. Runyon's attorneys from Covington, thereby preventing them from appearing on his behalf and participating in the evidentiary hearing currently scheduled to begin on November 1, 2023.

The Covington attorneys meet all of the requirements for *pro hac vice* admission under the applicable local rules, and neither the district court nor the government has raised any questions regarding the Covington attorneys' ethics, professionalism, or conduct. Moreover, as pro bono counsel, Covington is not seeking compensation for its work on Mr. Runyon's case and does not require the district court's approval

1

under § 3599. The district court, however, has erected what amounts to a categorical bar against *pro hac vice* admissions for Mr. Runyon. Notably, this bar appears to be one-sided, as one of the government's attorneys is admitted *pro hac vice*.

The district court has provided no reasoned explanation for its refusal to admit the Covington attorneys. During a recent status conference, the court suggested that *pro hac vice* counsel do not owe the same professional obligations to the court as members of the court's bar. That is legal error under this Court's precedent. The court also expressed concerns that Mr. Runyon's former counsel were admitted *pro hac vice* and subsequently had to withdraw after discovery issues came to light. But that is not a proper basis for barring *pro hac vice* admissions for entirely new counsel who have no relationship to Mr. Runyon's former counsel and for whom there is no basis to question their ethics and professionalism. Finally, the court noted a concern about having too many attorneys at the hearing. But the court may not substitute its judgment for Mr. Runyon's as to the number of attorneys representing him, and in any case, this concern does not support a blanket refusal to admit even a single lawyer *pro hac vice*.

The district court's bar on *pro hac vice* counsel is causing Mr. Runyon irreparable harm. As it stands now, Mr. Runyon is the only person on federal death row litigating a 28 U.S.C. § 2255 petition with a single active counsel of record. Although Mr. Runyon has two appointed counsel—Ms. Ali and Elizabeth Peiffer of the Capital Representation Resource Center ("CRRC")—Ms. Peiffer recently moved to withdraw after her mother was suddenly diagnosed with Stage IV cancer, creating a conflict of interest that materially limits her representation of Mr. Runyon. The district court denied Ms. Peiffer's request to withdraw, even though the Covington lawyers were prepared to step into the case.[1] But the court's refusal to permit Ms. Peiffer to withdraw does not change the reality that she lacks the capacity to meaningfully work on Mr. Runyon's case for at least the next several months, leaving him with only a single lawyer, Ms. Ali, who was appointed less than two months ago.

The government, by contrast, has at least three counsel actively participating in this matter—two of whom have been working on this case since the trial—and the resources of the Department of Justice at

---

[1] This denial is the subject of a pending interlocutory appeal by Ms. Peiffer. *See In re: Elizabeth Peiffer*, Case No. 23-5 (4th Cir 2023).

its disposal. This disparity is particularly notable given that it is Mr. Runyon who bears the burden of proof in his § 2255 proceeding, which involves complex medical, legal, and factual issues.

In view of these circumstances, Mr. Runyon is entitled to mandamus. *First*, Mr. Runyon has a clear and indisputable right to have the Covington attorneys admitted *pro hac vice* in this proceeding. While courts have discretion in considering *pro hac vice* applications, a court may not categorically reject all such applications without a valid reason. By erecting an arbitrary and one-sided bar to any *pro hac vice* admissions for Mr. Runyon, the district court clearly abused its discretion.

*Second*, Mr. Runyon has no other adequate means for relief. In the absence of mandamus relief, Mr. Runyon will be forced to proceed to an evidentiary hearing—possibly his last opportunity to present evidence in this federal death penalty proceeding—without his counsel of choice. As courts have recognized, the harm from such a denial of counsel cannot be effectively remedied through an appeal at the conclusion of the case.

*Third*, mandamus is an appropriate exercise of this Court's supervisory authority to prevent this irreparable harm, which is closely linked to the district court's order requiring Ms. Peiffer to continue

representing Mr. Runyon despite her conflict of interest. Mandamus is also warranted to give guidance to courts on the standards they must apply in exercising their discretion over *pro hac vice* applications, particularly in capital cases.

## RELIEF SOUGHT

For the reasons explained below, Mr. Runyon respectfully requests that the Court grant his petition and direct the district court to admit the Covington attorneys upon submission of *pro hac vice* applications demonstrating that they satisfy the requirements of the local rules.

## ISSUE PRESENTED

Whether this Court should exercise its supervisory authority to correct the district court's categorical bar on out-of-state attorneys from appearing in this capital habeas proceeding on behalf of Mr. Runyon, where (a) such attorneys meet all of the requirements for *pro hac vice* admission under the court's local rules; (b) the attorneys do not seek appointment or compensation pursuant to 18 U.S.C. § 3599; (c) the district court's bar would limit Mr. Runyon's counsel of record to a newly appointed attorney and an attorney who suffers from a conflict of interest that materially limits her representation of Mr. Runyon; and (d) the harm to denying Mr. Runyon's choice of counsel cannot be adequately remedied on appeal.

## STATEMENT OF FACTS

In 2009, Mr. Runyon was convicted and sentenced to death in the United States District Court for the Eastern District of Virginia (No. 08-cr-00016). His convictions and sentences were affirmed on direct appeal. *United States v. Runyon*, 707 F.3d 475, 520–21 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014). In 2015, Mr. Runyon moved to vacate his sentence pursuant to 28 U.S.C. § 2255, ECF No. 478; he amended that motion in 2016, ECF No. 511. The district court denied Mr. Runyon's motion without a hearing in January 2017. ECF No. 560. This Court granted a certificate of appealability, and in February 2021, it vacated the dismissal of Mr. Runyon's § 2255 motion "to the extent that it dismissed without a hearing [on] Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health," remanding that claim for a hearing. *United States v. Runyon*, 994 F.3d 192, 197, 212 (4th Cir. 2021).

### A.    The Withdrawal of Mr. Runyon's Habeas Counsel

In November 2014, the district court appointed Michele Brace of the CRRC as habeas counsel. ECF No. 410 at 12. A few months later, Ms. Brace moved for appointment of Dana Hansen Chavis of the Federal Defender Services of Eastern Tennessee, Inc. ("FDSET") as co-counsel.

ECF No. 433 at 1. Ms. Brace had explained that CRRC attorneys and staff were and would remain unavailable to assist her in Mr. Runyon's case. *See* ECF No. 425 at 2 n.2. Because Ms. Chavis is not a member of the Virginia Bar, following her appointment, ECF No. 435, Ms. Brace moved for *pro hac vice* admission for Ms. Chavis, ECF No. 436, which the district court granted, ECF No. 438.

In November 2021, Ms. Brace moved to withdraw for medical reasons and sought substitution of Elizabeth Peiffer, another CRRC attorney. ECF No. 648. The district court granted both requests. ECF No. 649.

Following this Court's remand, in January 2022, the parties agreed to a discovery order, which the district court entered, requiring Mr. Runyon to provide "all matters contained in the trial counsel file as related to trial defense counsel's investigation, strategy, and failure to present mitigation as set forth in Petitioner's Habeas Claim 6, to include documents related to relevant communications with expert consultants, mitigation consultants, and potential expert witnesses, as well as materials provided to or otherwise relied upon by mitigation and expert consultants and potential expert witnesses." ECF No. 657 at 2. The

9

parties engaged in discovery throughout 2022, and the court set an evidentiary hearing for February 2023. ECF No. 695.

In February 2023, Ms. Peiffer moved for *pro hac vice* admission on behalf of another FDSET lawyer, Helen Susanne Bales. ECF No. 764. Ms. Peiffer explained that Mr. Runyon anticipated presenting, *inter alia*, tens of witnesses at his evidentiary hearing such that Ms. Bales's assistance was necessary to provide adequate representation at the hearing. ECF No. 726 at 3. The district court admitted Ms. Bales *pro hac vice*, but only for the specific purpose of presenting or cross-examining seven listed witnesses. ECF No. 772.

During the February 2023 evidentiary hearing, it became apparent that FDSET attorneys had not fully complied with their discovery obligations. ECF No. 796 at 3–4. The court determined that FDSET counsel were conflicted and permitted them to withdraw, leaving only Ms. Peiffer to litigate Mr. Runyon's § 2255 proceeding. *Id.* at 4. The court also directed FDSET and Ms. Peiffer "to come to an agreement on the logistics of exchanging *all* physical and electronic case files that [were] in the possession of FDSET and/or its employees." *Id.* A diligent search for co-counsel to assist Ms. Peiffer ensued.

In light of the discovery issues that surfaced at the hearing, Mr. Runyon's counsel needed to review all of FDSET's files in order to determine whether any additional documents needed to be produced under the discovery order. ECF No. 797-1. Since April 2023, FDSET has sent Ms. Peiffer 70 bankers boxes containing tens of thousands of paper files and more than 200,000 electronic files. ECF No. 806, ¶¶ 3–5; ECF No. 808, ¶¶ 1–3. These files were disorganized, improperly scanned, and/or sent without an explanation concerning their origin, necessitating an ongoing, time-consuming review to ensure that all appropriate disclosures are made. ECF No. 808, ¶ 5.

**B.    The District Court's Counsel Rulings**

Given the large volume of files needing review, the potential for depositions, and the work required for the evidentiary hearing, Mr. Runyon engaged Covington in April 2023 to represent him in his § 2255 proceeding on a pro bono basis. To spearhead the Covington team, Petitioner chose Mr. Peter Swanson and Mr. Nicholas Xenakis, both of whom have extensive experience with complex litigation matters,

including death penalty and post-conviction matters.[2]  Ex. 2 (Mem. in Supp. of Mot. for Appointment, ECF No. 803), ¶¶ 15–16. Mr. Xenakis is a former attorney with the Office of the Federal Public Defender for the Eastern District of Virginia. *Id.* ¶ 16.

That same month, Mr. Runyon moved to appoint Ms. Ali as counsel and notified the district court that he had also engaged Covington, whose *pro hac vice* motions would be forthcoming. Exs. 1 (Mot. for Appointment, ECF No. 802); Ex. 2 ¶¶ 13–17. The district court granted this motion in part, appointing Ms. Ali as "second counsel," based on "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case." Ex. 3 (Appointment Order, ECF No. 810) at 1–2. Regarding the Covington attorneys, however, the district court stated that it "does not intend to appoint, nor to otherwise admit, pro hac vice, any additional attorneys." *Id.* at 2.

Several weeks after Mr. Runyon moved to appoint Ms. Ali as counsel, Ms. Peiffer's mother was unexpectedly diagnosed with Stage IV

---

[2] Covington attorneys have met with Mr. Runyon—virtually and in person—several times. And since April 2023, Covington has spent more than 1,300 hours assisting with various tasks, including drafting, document review and production, and legal research.

breast cancer. Ex. 5 (Mem. in Supp. of Mot. to Withdraw, ECF No. 815) at 1; Ex. 6 (Ex. A to Mem. in Supp. of Mot. to Withdraw, ECF No. 815-1), ¶¶ 3–7. Ms. Peiffer immediately became a critical part of her mother's care team. As a result of her condition, Ms. Peiffer's mother is unable to safely move or care for herself without assistance. Ex. 5 at 2; Ex. 6 ¶¶ 8–12, 14. This has significantly limited Ms. Peiffer's availability to work on this matter and will continue to do so for at least the next several months. In the meantime, the deadlines in Mr. Runyon's case, including the evidentiary hearing scheduled for November 1, 2023, are fast-approaching.

Upon review of the Virginia Rules of Professional Conduct, and after consultation with ethics counsel for the Virginia State Bar, Ms. Peiffer moved to withdraw from Mr. Runyon's case given the significant constraints on her capacity and resulting conflicts of interest. Ex. 4 (Mot. to Withdraw, ECF No. 814). Mr. Runyon agreed with Ms. Peiffer's decision to withdraw, *id.* at 2, and in the same motion, sought to substitute attorneys from Covington, renewing his request that these attorneys be admitted *pro hac vice, id.* The motion attached a declaration attesting that each Covington attorney meets the requirements for *pro*

*hac vice* admission set forth in the local rules.[3] *See* Ex. 7 (Ex. B to Mem. in Supp. of Mot. to Withdraw, ECF No. 815-2), ¶¶ 4–6. The government did not file any opposition to the motion.

During a status conference on June 16, 2023, the district court opined that Ms. Peiffer would be "violating [her] duties to Mr. Runyon by not staying in his case," Ex. 8 (Status Conference Tr., ECF No. 819) at 10:13–14, and that notwithstanding the advice Ms. Peiffer received from ethics counsel, she in fact "ha[s] an ethical obligation not to withdraw[,]" *id.* at 17:1–2. Despite these statements, the court did not dispute that Ms. Peiffer's circumstances would require her to proceed "on a limited basis," *id.* at 16:25, and in a "lesser role," *id.* at 19:5–6. The court denied Ms. Peiffer's motion, concluding that she does not have "a conflict of interest necessitating withdrawal." Ex. 9 (June 20, 2023, Order, ECF No. 820) at 2.

---

[3] Given that the district court had already indicated it would deny their *pro hac vice* applications, Ex. 3 at 2, the Covington attorneys did not submit applications in connection with the motion, because a denial would potentially need to be disclosed when seeking admission to other courts.

During the same status conference, the district court denied Mr. Runyon's request to admit the Covington attorneys and made clear that any *pro hac vice* application would be denied:

> Number two, I see no reason to admit, at least it appears five attorneys in here to be *pro hac vice* because that can put the hearing out of control. To the extent they want to volunteer their time to you, Ms. Ali and Ms. Peiffer, they can. There is nothing that keeps them from acting *pro bono*. They can certainly, if their firm wants it and permits it, they can act *pro bono*. They can advise you, and you and Ms. Peiffer can use them however you deem appropriate. **But I see no reason to start admitting attorneys *pro hac vice* to be here for this continued evidentiary hearing**. The record will show what happened before with the *pro hac vice* situation. So, consequently, I welcome any *pro bono* help you can get. That's up to you, Ms. Peiffer and Ms. Ali, whether you need *pro bono* help. Number one, that's up to you. Number two, it's up to their attorneys and their law firm. I permit the attorneys to be *pro bono*, but **the Court is not inclined to admit them *pro hac vice* in this case**. They can be present at the hearing, whatever you decide, but not as counsel in the case. There is no requirement that they be admitted *pro hac vice* to be present. So if they want to file the motions, you can file them, but **be prepared for my decision**, unless there are other factors to consider. **My decision at this juncture is no** for the above reasons.

Ex. 8. at 25:17–26:16 (emphasis added); *see also id.* at 21:12–20 ("We had a problem with that before with Ms. Bales, Ms. Chavis, and the

15

Tennessee Public Defender. I did that against my better judgment, but we will get to that in a minute. There are five attorneys sitting in here. Do you know what a hearing is like with various attorneys jumping up and down and, well, Ms. Bales prepared this witness so she has to do it, and the record will go back and show that, and then there was conflict between the *pro hac vice* counsel.").

Later in the hearing, the court expressed its belief that any Covington attorney admitted *pro hac vice* would not have the same level of responsibility to the court as one admitted to the district court bar:

> The Court looks to counsel of record, lead counsel. That's where a Court looks to hold the attorney responsible. **So, consequently, I'm not going to admit *pro hac vice* because they don't have the same level of responsibility to the Court.**

*Id.* at 56:24–57:9 (emphasis added).

At the same time, however, the district court made clear that only counsel of record could communicate with the government, produce documents, and participate in meet and confers. *Id.* at 27:19–25, 28:1–2, 32:17–25, 33:1–9, 53:7–22.

The district court ordered all discovery to be completed by August 31, 2023, and it scheduled a multi-week evidentiary hearing to begin on

16

November 1, 2023. Ex. 9 at 3–4. The district court's subsequent written order also reiterated its intention "not to admit any additional attorneys to represent Petitioner." *Id.* at 3.

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus is an extraordinary remedy available under limited circumstances. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 289 (4th Cir. 2013). Three conditions must be satisfied for a court to issue a writ of mandamus: (1) the petitioner has shown a "clear and indisputable" right to the requested relief; (2) the petitioner must "have no other adequate means to attain the relief he desires"; and (3) the court deems the writ "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004); *see also In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018). Although the standard is "demanding," it is "not insuperable." *Cheney*, 542 U.S. at 369. It is met here.

## I. Mr. Runyon Has a Clear and Indisputable Right to Have His Chosen Counsel Be Admitted *Pro Hac Vice.*

The district court's arbitrary bar on Mr. Runyon's use of *pro hac vice* counsel violates his constitutional and statutory rights, runs afoul of the law governing *pro hac vice* admissions, and constitutes a clear abuse of the court's discretion over attorney admissions.

**A. Mr. Runyon has a right to retain out-of-district counsel for his capital habeas proceeding.**

Section 3599(a)(2) of Title 18 "guarantees that indigent defendants in federal capital cases will receive the assistance of counsel, from pretrial proceedings through stay applications." *Martel v. Clair*, 565 U.S. 648, 658 (2012). The Supreme Court has explained that "Congress's efforts in § 3599 to enhance representation in capital cases" include situations where a "court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client." *Id.* at 661; *see also id.* at 658 (motions for substitution under § 3599 are evaluated under an "interests of justice" standard).

Although "Congress declined to track the Sixth Amendment" in the statute, § 3599 provides broader protections than the Sixth Amendment by granting counsel to petitioners who would not otherwise have a constitutional right to it. *Martel*, 565 U.S. at 662. And because § 3599 establishes a "right to counsel" for an indigent habeas petitioner, it follows that the petitioner "should be afforded a fair opportunity to secure counsel of his choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). As the Supreme Court has explained, the right to counsel of one's choice is an independent right: "[t]he right to select counsel of one's choice . . . has

19

never been derived from the Sixth Amendment's purpose of ensuring a fair trial. It has been regarded as the root meaning of the constitutional guarantee." *United States v. Gonzales-Lopez*, 548 U.S. 140, 147–48 (2006).

Here, Mr. Runyon has the right to retain Covington as his counsel for his capital habeas proceedings, and the "deprivation of [Mr. Runyon's right was] complete when [he] was erroneously prevented from being represented by the lawyer he wants." *Id.* at 148. Although § 3599 does provide a court with discretion over *appointments* for indigent petitioners, Covington does not seek appointment pursuant to § 3599. Thus, the statute does not give the district court any basis to deny Mr. Runyon's selection of Covington as additional counsel in this proceeding.

Nor does the fact that the Covington attorneys are out-of-district permit the district court to deny Mr. Runyon his counsel of choice. As other circuits have held, the right to counsel of choice includes the right to have out-of-state counsel appear *pro hac vice. See, e.g., United States v. Ensign*, 491 F.3d 1109, 1114 (9th Cir. 2007) ("We have held that a defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted *pro hac vice.*" (cleaned up)); *Fuller v.*

*Diesslin*, <u>868 F.2d 604, 607</u> (3d Cir. 1989) ("[W]e conclude that the right to counsel *pro hac vice* is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases."). In fact, the U.S. District Court for the Eastern District of Virginia's Criminal Justice Act ("CJA") plan expressly provides for this: "Out-of-district counsel, including federal defender organization staff, who possess the requisite expertise may be considered for appointment in capital § 2255 cases to achieve high quality representation together with cost and other efficiencies." CJA Plan § XIV.E.6;[4] *see also* 7 Guide to Judicial Policies and Procedures, § 620.10.20(b) (recommending appointment of "at least two counsel" for § 2255 proceedings in capital cases).

**B. The district court clearly abused its discretion in barring any *pro hac vice* admissions for Mr. Runyon's counsel.**

While courts have discretion over *pro hac vice* admissions, this discretion is not unlimited. As the Ninth Circuit has held: "At a

---

[4] Available at: https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf.

minimum, a court's decision to deny *pro hac vice* admission must be based on criteria reasonably related to promoting the orderly administration of justice . . . or some other legitimate policy of the courts . . . ." *In re United States*, 791 F.3d 945, 957 (9th Cir. 2015). Such criteria typically focus on unethical, unprofessional, or vexatious conduct by the attorney seeking *pro hac vice* admission. *See, e.g.*, *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) ("Absent a showing of unethical conduct rising to a level that would justify disbarment, the court ***must admit*** the attorney." (emphasis added)); *D.H. Overmyer Co. v. Robson*, 750 F.2d 31, (6th Cir. 1984) ("[T]his circuit and others have upheld a lower court's denial of *pro hac vice* status when some evidence of ethical violations was present.").

For example, this Court has explained that it is not error to deny admission because of "unlawyerlike conduct." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curiam); *see also United States v. Menner*, 374 F. App'x 446, 447 (4th Cir. 2010) (unpublished) (per curiam) (upholding admission requirement in U.S. District Court for the Eastern District of Virginia that "foreign counsel associate with local counsel before they may be admitted to the bar of a court," which would be

satisfied here with the involvement of Ms. Ali); *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015 WL 13733927, at \*4 (E.D. Va. Nov. 18, 2015), *R&R adopted in part*, No. 2:15-cv-015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (citing cases showing that there must be some legitimate, specific basis for denial, such as "uncivil behavior or abusive language by an attorney"; "an attorney's impact on judicial economy," as in a situation "where a party's out-of-state counsel has continually thwarted the progress of the litigation"; or where there have been "conflicts of interest or clear-cut violations of the rules").

The district court's refusal to permit *pro hac vice* admissions for Mr. Runyon's counsel was not rooted in any of these concerns. As an initial matter, Mr. Runyon demonstrated that the Covington attorneys meet the criteria for *pro hac vice* admission set forth in the court's local rules. *See* Ex. 7, ¶¶ 4–6 (stating that Covington attorneys satisfy all the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E)). Neither the court nor the government has expressed concerns about the attorneys' ethics, professionalism, or conduct, and the government has not raised any objection to their admission. Nor will the Covington attorneys, who are

available to participate in the upcoming hearing, cause any delay in the proceeding.

Moreover, Mr. Runyon's counsel informed the district court that they had conferred with the Federal Public Defender for the Eastern District of Virginia, who supports lawyers from Covington serving as Mr. Runyon's counsel. Ex. 5 at 9. Although the court's CJA plan provides that "[w]hen appointing counsel in a capital § 2255 matter, the court should consider the recommendation of the Federal Public Defender, who will consult with the Federal Capital Habeas § 2255 Project," CJA Plan § XIV.E.4, the district court failed to consider the Federal Public Defender's recommendation.[5]

In barring Mr. Runyon's use of *pro hac vice* counsel, the district court did not articulate any reasons specific to the Covington attorneys, much less any legitimate policy or administrative concern. Instead, the court appeared to create a blanket rule against *pro hac vice* admissions for Mr. Runyon. This alone constitutes a clear abuse of discretion. *See In re United States*, 791 F.3d at 950, 957 (finding clear abuse of discretion

---

[5] The Federal Capital Habeas Project concurs that the Covington attorneys should serve as Mr. Runyon's counsel.

where district court had policy of denying *pro hac vice* admission for out-of-state government attorneys); *cf. Bills v. United States*, <u>11 F. App'x 342, 343</u> (4th Cir. 2001) (holding that district court could not impose categorical bar to attorney appearing *pro hac vice* in the district).

The court's bar on *pro hac vice* admissions is especially arbitrary where, as here, it does not appear to apply to the government. *See Roma Constr. Co. v. Russo*, <u>96 F.3d 566, 577</u> (1st Cir. 1996) (district court abused its discretion in denying *pro hac vice* admission for plaintiff's attorney, where "defendants were represented by more than ten attorneys, the plaintiffs by two"). The government has one attorney (AUSA Carrie Lee Ward) who is actively participating in the proceeding and is admitted *pro hac vice*. ECF No. 645.

The district court offered three reasons for refusing any *pro hac vice* admissions for Mr. Runyon's counsel, none of which is valid.

*First*, the district court committed legal error in stating that out-of-district counsel do not "have the same level of responsibility to the Court." Ex. 8 at 57:8–9. This Court has held that "*pro hac vice* attorneys are held to the same professional responsibilities and ethical standards as regular

counsel." *Belue v. Leventhal*, <u>640 F.3d 567, 576</u> (4th Cir. 2011) (cleaned up).

*Second*, it is improper for the district court to bar the Covington attorneys from admission based on the conduct of Mr. Runyon's previous counsel, with whom the Covington attorneys have no connection. The proposed Covington attorneys have significant experience in capital cases and other complex litigation matters, Ex. 2, ¶¶ 15–16, and the law firm is committed to professionalism, skill, and thoroughness in all of its matters. Missteps by prior, unrelated counsel do not provide a valid basis for assuming that similar problems will arise with these attorneys.

In fact, the opposite is true given the substantial resources the firm can bring to bear—and has already brought to bear—on this case. For example, the district court record showed that both Mr. Swanson and Mr. Xenakis have experience in criminal matters, including death penalty matters, and Mr. Xenakis was previously an attorney in the Office of the Federal Public Defender for the Eastern District of Virginia. *See* Ex. 2 ¶ 16. And the Covington team has already contributed hundreds of hours and covered significant out-of-pocket expenses, including in connection

with the review of the voluminous documents received from FDSET. *See* Ex. 5 at 10–11.

*Third*, the district court's concern about the number of lawyers representing Mr. Runyon, Ex. 8 at 25:17–19, is not a valid reason for denying a litigant's preferred counsel. *See Roma Constr.*, 96 F.3d at 577 (finding abuse of discretion where "district court stated that 'we already have one *pro hac vice* and we're not going to take more than one on a case" (cleaned up)); *Sanders v. Russell*, 401 F.2d 241, 245–46 (5th Cir. 1968) ("It is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation . . . lack of necessity— in the judge's view—simply is not and cannot be a proper basis for exclusion [of additional out-of-district counsel] . . . The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.").

Not only does the district court's concern interfere with Mr. Runyon's right to select how many (non-appointed) attorneys he desires, but it bears no reasonable relationship to *pro hac vice* admissions. The

same concern would be present if Mr. Runyon had retained multiple lawyers already admitted to the district court bar. To the extent the court's concern was grounded in the number of attorneys examining witnesses at the hearing, that is an issue the court may address as the hearing approaches.

* * *

In short, out-of-district *pro hac vice* admission in this case will not "hinder the efficacious administration of justice," *United States v. Panzardi Alvarez*, 816 F.2d 813, 817–18 (1st Cir. 1987), but rather will further it. The district court not only failed to cite a single reasonable basis for denying the Covington lawyers *pro hac vice* admission, but it also failed—at every turn—to consider the benefits that the Covington lawyers would bring to the case. All of these errors confirm that the court's rulings constitute a clear abuse of discretion.

## II. Mr. Runyon Has No Other Adequate Means to Vindicate His Right to Counsel of Choice.

A writ of mandamus is the only avenue available to Mr. Runyon to remedy the district court's improper refusal to admit his chosen counsel *pro hac vice*. There are two reasons for this.

*First*, Mr. Runyon has exhausted all reasonable avenues for relief before the district court, which has made clear on three occasions that it will not allow any of his attorneys to appear *pro hac vice*. As discussed above, Mr. Runyon first raised his intent to have the Covington attorneys represent him when he moved to appoint Ms. Ali as his counsel. In its order appointing Ms. Ali, the court unequivocally stated that it "does not intend to appoint, nor to otherwise admit *pro hac vice*, any additional attorneys." Ex. 3 at 2.

Mr. Runyon then renewed his request to admit the Covington attorneys after it became clear that Ms. Peiffer would be unable to continue representing him in light of her mother's cancer diagnosis and the resulting conflict of interest. Mr. Runyon's and Ms. Peiffer's motion to withdraw requested substitution of the Covington attorneys for Ms. Peiffer. Ex. 4. The district court ruled on that motion orally at the June 2023 status conference, and the court's comments left no doubt what would happen if the Covington attorneys proceeded to file *pro hac vice* applications: "So if they want to file the motions, you can file them, ***but be prepared for my decision***, unless there are other factors to consider. My decision at this juncture is ***no*** for the above reasons." Ex. 8 at 26:12–

16 (emphasis added). The district court's subsequent written order reiterated its intention "not to admit any additional attorneys to represent Petitioner." Ex. 9 at 3.

In view of the district court's clear and repeated statements that it will deny any *pro hac vice* applications, there would be no purpose served by requiring the Covington attorneys to file such applications before Mr. Runyon may seek mandamus. As this Court has explained, mandamus does not require a party to take an action in the district court that "would be futile." *See In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 700 (4th Cir. 2020). The submission of applications for admission *pro hac vice* would be "inadequate in light of the district court's suggestion that such an effort would be futile." *Id.*

As explained above, a declaration attached to Mr. Runyon's motion to withdraw and substitute demonstrated that the Covington attorneys meet all of the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E). *See* Ex. 7, ¶¶ 4–6. The district court's *pro hac vice* application—a one-page form that identifies the federal district courts in which the attorney has been admitted and attests to the requirements in the local rules—will not

provide the district court with any additional information about these attorneys necessary to the court's decision. *See* Ex. 9 (attaching application as Exhibit A). Mr. Runyon's motion to withdraw and substitute also provided detailed arguments on the law regarding *pro hac vice* admissions and the right to counsel, and it offered reasons for why the admission of the Covington attorneys would be beneficial in the case. Ex. 5 at 4–13. These sworn statements and arguments were before the district court when it reaffirmed its decision not to admit the attorneys.

If the Covington attorneys were to submit *pro hac vice* applications, the district court's inevitable denial of the applications would have negative and lasting consequences for them. Many courts require disclosure of previous denials of admission applications when applying for admission or *pro hac vice* admission.[6] The Covington attorneys have "little or no incentive to risk" the negative consequences of the all but assured denial here, so the "the district court's error" in refusing to admit

---

[6] *See, e.g.*, *Motion for Admission Pro Hac Vice and Affidavit*, W.D.N.C, https://www.ncwd.uscourts.gov/sites/default/files/general/ProHacViceFo rm.pdf) (requiring applicants to certify that they have "never been denied admission *pro hac vice* in this or any other jurisdiction . . ."); *Application/Affidavit for Pro Hac Vice admission*, D.S.C., https://view.officeapps.live.com/op/view.aspx?src=http%3A%2F%2Fwww .scd.uscourts.gov%2FForms%2FPro_Hac_Vice%2FPro_Hac_Vice_Applic ation_(Word).doc&wdOrigin=BROWSELINK (requiring applicants to attach a copy of any order of denial of *pro hac vice* admission).

attorneys *pro hac vice* "would escape review entirely." *In re Pruett*, <u>133 F.3d 275, 280</u> n.10 (4th Cir. 1997); *see also Fluor Intercontinental*, <u>803 F. App'x at 700</u> ("As to appealing from a contempt order, we have previously held that such an appellate remedy is hardly 'adequate.'" (cleaned up)).

*Second*, an appeal is not an adequate means to remedy the district court's *pro hac vice* decision. A district court's denial of *pro hac vice* admission "is neither a final order appealable under <u>28 U.S.C. § 1291</u> . . . nor an interlocutory order appealable under <u>28 U.S.C. § 1292.</u>" *In re United States*, <u>791 F.3d at 958</u>–59. This Court has likewise expressed "grave doubt whether the denial of [*pro hac vice*] permission is appealable." *Thomas*, <u>249 F.2d at 92</u>.

Nor can the denial of Mr. Runyon's counsel be effectively addressed in an appeal at the conclusion of the district court proceeding. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.,* <u>586 F.3d 703, 710</u> (9th Cir. 2009) ("[A] lost choice of counsel cannot be adequately remedied through means other than mandamus and the resultant harm is not correctable on appeal."). By that point, Mr. Runyon will have been forced to litigate the remainder of his proceeding, including an evidentiary hearing, without his counsel of his choice. The harm will have been done, and it "is not

correctable on appeal." *Id.*; *see also In re United States*, <u>791 F.3d at 960</u> (finding that mandamus for denial of *pro hac vice* admission would have been appropriate but for district court's "voluntary cessation"); *In re Evans*, <u>524 F.2d 1004, 1008</u> (5th Cir. 1975) (granting mandamus where district court improperly denied motion for *pro hac vice* admission).

These circumstances are similar to those faced by the Court in *In re Federal Savings & Loan Insurance Corp.*, No. 88–3814, <u>1988 WL 76272</u>, at *5 (4th Cir. July 11, 1988) (unpublished). There, the petitioner sought mandamus to challenge (a) the district judge's refusal to recuse himself where the circumstances of the case called into question his impartiality and (b) the court's revocation of the petitioner's counsel's *pro hac vice* admission. *Id.* at *3. The respondent argued that the petitioner had "avenues other than mandamus in which to seek vindication." *Id.* This Court granted the petition, finding that recusal was required and mandamus relief was appropriate. *Id.* at *3–*4.

Here, too, the district court's denial of Ms. Peiffer's request to withdraw and repeated refusal to admit *pro hac vice* Mr. Runyon's counsel from Covington has left Mr. Runyon in the position of proceeding headlong toward an evidentiary hearing with effectively a single attorney

who has been on the case for only a few months; he will not be able to remedy this situation on appeal. And he stands alone in this posture. As the record before the district court showed, every other person on federal death row litigating a § 2255 petition has at least two (and sometimes more) active counsel of record. *See* Ex. 2 ¶ 5. There is "but one method"— mandamus—"that will restore" his right to use his counsel of choice. *In re Federal Savings & Loan Insurance Corp.*, 1988 WL 76272, at *4.

### III. Granting This Writ Is Appropriate under the Exceptional Circumstances of the Case.

There are several exceptional circumstances that justify a writ of mandamus here, including the unfair prejudice Mr. Runyon will endure and the seriousness of the issues at stake in his case, the heightened need for this Court's intervention to ensure proper judicial administration, the fact this case presents an issue of first impression, and the extreme limitations that the district court has imposed on Covington's representation of Mr. Runyon. Mandamus is appropriate to address and rectify each of these concerns.

**Unfair prejudice to Mr. Runyon's complex capital case.** The claim that this Court remanded—*i.e.*, "ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and

mental health," *Runyon*, 994 F.3d at 212—involves complicated medical, factual, and legal issues, including several neurological and psychological evaluations of Mr. Runyon, the facts concerning trial counsel's mitigation investigation, and whether trial counsel's conduct comported with prevailing professional standards. *See id.* at 208–09, 212. The district court recognized the case's high stakes and complexity when it appointed Ms. Ali as second counsel. Ex. 3 at 1–2 (noting "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case").

Mr. Runyon's forthcoming evidentiary hearing will address not only whether trial counsel "made a strategic choice not to pursue the potentially mitigating evidence after a reasonable investigation," but also whether that failure to investigate prejudiced Mr. Runyon. *Runyon,* 994 F.3d at 208–09. These questions implicate several experts apart from the two directly mentioned in the opinion itself (Dr. Mirsky and Dr. Merikangas), and it will be necessary to have multiple experts present the appropriate complex and technical evidence about Mr. Runyon's brain damage and mental health. There will also be an expert on the prevailing professional standards of conduct. Separate from the expert

witnesses, there will likely be further examination of trial counsel to evaluate their decisions or the lack thereof. *See id.* at 208 (observing that the facts of this case are "much like those that we recently considered in *Williams*, where 'evidence of [fetal alcohol syndrome] was reasonably available, but counsel failed to connect the indicators suggesting further investigation.'" (quoting *Willliams v. Stirling*, 914 F.3d 302, 315 (4th Cir. 2019))).

There is also substantial discovery—namely, review and production of documents—that must be completed by August 31, 2023. As noted above, FDSET provided 70 bankers boxes of paper documents and more than 200,000 electronic files that Mr. Runyon's counsel is continuing to review.

At present, Mr. Runyon has only one counsel of record (Ms. Ali) who is available to complete discovery and to prepare for and participate in the evidentiary hearing. Given her conflict of interest, Ms. Peiffer cannot adequately or effectively represent Mr. Runyon. *See* Mot. for Stay Pending Appeal at 9–18, *In re: Elizabeth Peiffer*, No. 23-5, ECF No. 8 (4th Cir. June 30, 2023). That leaves Ms. Ali to complete discovery and handle the hearing, but she only began work on this long-running case within

the past few months, and she has had to spend most of her time to date on discovery and document production, thus limiting her ability to prepare for the upcoming evidentiary hearing. A single counsel of record appointed just months before an evidentiary hearing would be inadequate in any § 2255 proceeding—let alone a proceeding such as this one that involves complicated medical, legal, and factual issues, a lengthy history, and a voluminous record.

The prejudice to Mr. Runyon is even greater considering that at least three lawyers are actively participating on behalf of the government, two of whom have been involved since the trial in this matter. Mr. Runyon bears the burden of proof in this proceeding, and his life hangs in the balance. Yet the district court's arbitrary counsel rulings have given the government a substantial advantage.

**Heightened need for judicial administration.** This Court has held that mandamus is appropriate "when supervisory control of the district court is 'necessary to the proper judicial administration of the federal system.'" *In re Fed. Sav. & Loan*, 1988 WL 76272, at \*3 (quoting *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 30 (4th Cir. 1973)). Our system of justice depends on the ability of litigants to retain counsel to represent

37

them in federal litigation, and in enacting § 3599, Congress determined that counsel plays an essential role in federal capital habeas proceedings. *See supra*, § I.A. These circumstances justify the extraordinary remedy of mandamus.

**Issue of first impression.** Mandamus is also appropriate because this case presents "an issue of first impression that involves the power of the district court," and "an issue likely to be faced by other district courts but for which there is scant authority, and it is of a nature that is likely to escape effective review." *Pruett*, 133 F.3d at 281 (granting mandamus where district court issued *ex parte* discovery order); *see also SEC v. Rajaratnam*, 662 F.3d 159, 171 (2d Cir. 2010) (mandamus is appropriate where petition order raises a "novel and significant question of law" whose resolution "will aid in the administration of justice").

As explained above, the district court has refused to admit attorneys who indisputably meet the requirements for *pro hac vice* admission under Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E), and the reasons for the court's refusal are not grounded in the local rules or any other authority. Like the *ex parte* discovery order in *Pruett*, this appears to be an issue of first impression; it involves the

power of the district court; and it is likely to escape effective appellate review after the evidentiary hearing has taken place. *See* 133 F.3d at 281.

**Extreme limitations on Covington's ability to represent Mr. Runyon.** Finally, the district court's suggestion that Covington may contribute to the case, even if not counsel of record, is no answer to an improper refusal to admit them as counsel of record. *See* Ex. 9 at 3 ("Ms. Peiffer and Ms. Ali may continue to utilize the services of *pro bono* attorneys . . ."). Instead, it only highlights how limited the Covington attorneys' involvement can be absent this Court's intervention. If the Covington attorneys are not counsel of record, they will be unable to present and question witnesses at the evidentiary hearing, argue any motions, or otherwise address the court during hearings or status conferences. The district court further made clear that the attorneys may not produce discovery to the government or otherwise communicate with the government as representatives of Mr. Runyon. Ex. 8 at 27:23–28:1 ("But if you're not admitted in a case as counsel, you're not on the docket sheet as any type of counsel of record, and local counsel of record are responsible."); *id.* at 52:15–16 ("[O]nly counsel that are admitted in this case will be part of the meet and confer.").

This leaves Mr. Runyon without the counsel he selected to perform the most critical tasks in this proceeding (at no cost to the court). The fact that Covington is able to provide some help in the background—while Ms. Ali is forced to handle the evidentiary hearing by herself—does not ameliorate the dual harms to Mr. Runyon of losing the counsel he selected for the hearing and increasing the burden on his existing counsel.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the petition and direct the district court to admit the Covington attorneys in these federal death penalty proceedings upon submission of *pro hac vice* applications demonstrating that they satisfy the requirements of the local rules.

July 7, 2023

Kathryn M. Ali
ALI & LOCKWOOD LLP
300 New Jersey Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com

Respectfully submitted,

Nicholas J. Xenakis
Peter A. Swanson
Santiago M. Zalazar
Eric T. O'Brien
Meaghan A. Ryan
Tyler G. VanderMolen
Rachel D. Bercovitz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

41

# CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitations of <u>Federal Rule of Appellate Procedure 21(d)(1)</u> because it contains 7,761 words.

2. This petition complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.


Dated: July 7, 2023                    Respectfully submitted,


                                       */s/ Nicholas J. Xenakis*

                                       Nicholas J. Xenakis
                                       COVINGTON & BURLING LLP
                                       One CityCenter
                                       850 Tenth Street, N.W.
                                       Washington, D.C. 20001-4957
                                       (202) 662-6000
                                       nxenakis@cov.com

                                       *Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I certify that on this 7th day of July, 2023, a copy of the foregoing

Petition for Writ of Mandamus and exhibits were served by Federal

Express on the following:

The Honorable Rebecca Beach Smith
United States Courthouse
2400 West Avenue
Newport News, VA 23607

Brian J. Samuels
Lisa R. McKeel
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: brian.samuels@usdoj.gov
Email: lisa.mckeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Phone: (202) 923-7154
Fax: (202) 305-9779
Email: carrie.ward@usdoj.gov

Elizabeth J. Peiffer
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906

Phone: (434) 817-2970
Fax: (434) 817-2972
Email: epeiffer@vcrrc.org

*  *  *

Dated: July 7, 2023

Respectfully submitted,

<u>/s/ Nicholas J. Xenakis</u>
Nicholas J. Xenakis
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth
Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*