# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NEWPORT NEWS DIVISION

DAVID ANTHONY RUNYON,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

## MOTION FOR APPOINTMENT OF COUNSEL FOR PROCEEDINGS
## PURSUANT TO 28 U.S.C. § 2255

Petitioner, David Anthony Runyon, an indigent federal prisoner under sentence of death imposed by this Court, hereby moves this Court, pursuant to 18 U.S.C. § 3599(a)(2), to appoint Kathryn Marshall Ali of Ali & Lockwood LLP to represent him as co-counsel in litigating his claims for post-conviction relief pursuant to 28 U.S.C. § 2255. By this motion, Mr. Runyon also provides notice to the Court that he seeks to be represented in this matter on a pro bono basis by attorneys from Covington & Burling LLP.

The reasons supporting this motion are set out in the accompanying memorandum of law. A proposed order accompanies this motion.

Respectfully Submitted,

/s/ Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Elizabeth J. Peiffer

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| vs. | ) | **CAPITAL § 2255 PROCEEDINGS** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |

**ORDER**

Petitioner David Anthony Runyon has filed a Motion for Appointment of Counsel for Proceedings Pursuant to 28 U.S.C. § 2255 requesting that Ms. Kathryn Marshall Ali of Ali & Lockwood LLP be appointed pursuant to 18 U.S.C. § 3599(a)(2) to represent him as co-counsel in litigating his claims for post-conviction relief.

The requested appointment is appropriate, as Ms. Ali meets the requirements of 18 U.S.C. § 3599, and her appointment will facilitate the proceeding of this case in a timely and efficient manner.

For these reasons, the Court GRANTS Petitioner's motion and appoints Ms. Kathryn Marshall Ali as co-counsel for Petitioner.

IT IS SO ORDERED.

April ____, 2023

_____
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

| | |
|---|---|
| DAVID ANTHONY RUNYON, <br><br> Petitioner, <br><br> v. <br><br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. 4:15-cv-108 <br><br> Initial Criminal No. 4:08-cr-16-3 <br> CAPITAL § 2255 PROCEEDINGS <br> HON. REBECCA BEACH SMITH |

**MEMORANDUM IN SUPPORT OF
MOTION FOR APPOINTMENT OF COUNSEL FOR PROCEEDINGS
PURSUANT TO 28 U.S.C. § 2255**

Petitioner, David Anthony Runyon, an indigent federal prisoner under sentence of death imposed by this Court, has moved this Court, pursuant to 18 U.S.C. § 3599(a)(2), to appoint Kathryn Marshall Ali of Ali & Lockwood LLP to represent him as co-counsel in litigating his claims for post-conviction relief pursuant to 28 U.S.C. § 2255. By this motion, Mr. Runyon also provided notice to the Court that he seeks to be represented in this matter on a pro bono basis by attorneys from Covington & Burling LLP, whose pro hac vice motions are forthcoming. In support of this Motion, Petitioner states as follows:

1.      Petitioner David Anthony Runyon is a federal prisoner convicted and sentenced to death in this Court (No. 4:08-cr-16-3). His convictions and sentences were affirmed by the United States Court of Appeals for the Fourth Circuit on direct appeal, and his petition for certiorari was denied by the United States Supreme Court, *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013),

1

*cert. denied*, 135 S. Ct. 46 (2014). Mr. Runyon filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 in 2015, ECF No. 478, which he amended in early 2016, ECF No. 511, and which this Court denied without a hearing in January 2017, ECF No. 560. The Fourth Circuit subsequently granted a certificate of appealability on four issues and, in an Amended Published Opinion dated February 12, 2021, vacated the dismissal of Mr. Runyon's § 2255 motion "to the extent that it dismissed without a hearing Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health," and remanded that claim for a hearing. *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).

2.      Because he is an indigent person under a sentence of death who lacks the funds to hire an attorney or to pay any costs related to the prosecution of a proceeding under 28 U.S.C. § 2255, Mr. Runyon is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854–57 (1994).

3.      Currently, Mr. Runyon is represented by appointed undersigned counsel, Elizabeth Peiffer of the Capital Representation Resource Center. Mr. Runyon was previously represented in connection with his § 2255 proceedings by undersigned counsel and Dana Hansen Chavis and Helen Susanne Bales of the Federal Defender Services of Eastern Tennessee. However, these prior counsel withdrew earlier this year, leaving Mr. Runyon with only undersigned counsel to litigate his § 2255 claims.

4.      This Court's Criminal Justice Act ("CJA") Plan directs that "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing **at least two attorneys**" to represent prisoners pursuing 28 U.S.C. § 2255 post-conviction petitions in federal death penalty cases. *See* United States District Court for the Eastern

District of Virginia Criminal Justice Act Plan § XIV.E.2 (approved Nov. 6, 2019) (emphasis added).[1]

5.     This District is not an outlier; the Guide to Judicial Policies and Procedures recommends appointment of "at least two counsel" for § 2255 proceedings in capital cases. *See* 7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01(A)(2). Many (perhaps most) courts' CJA plans include similar directives. *See, e.g.*, W.D.N.C. CJA Plan at 35[2] ("Due to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least two attorneys" in § 2255 federal death penalty proceedings); E.D.L.A. CJA Plan at 8[3] ("Pursuant to 18 U.S.C. § 3005, a person charged with a federal capital offense is entitled to the appointment of two attorneys"). And courts routinely appoint at least two attorneys to represent indigent people on death row litigating post-conviction proceedings. *See, e.g.*, *Lawlor v. Zook*, No. 2:15CV113, 2015 WL 4590827, at *2 (E.D. Va. July 28, 2015) (appointing three counsel in a capital habeas proceeding over objection of the government) (citing Vol. 7A *Guide to Judiciary Policy* § 620.10.20(b));[4] *United States v. Sampson*, No. CR. 01-10384, 2008 WL 2563374, at *3 (D. Mass. June 25, 2008) (appointing three counsel in a § 2255 proceeding). In fact, *every* indigent federal capital defendant in the process of litigating a § 2255 motion in district

---

[1] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf (last visited Apr. 3, 2023).

[2] *Available at* https://www.ncwd.uscourts.gov/sites/default/files/generalorders/Criminal%20Justice%20Act%20Plan%20-%20Amended%202019.pdf.

[3] *Available at* https://www.laed.uscourts.gov/sites/default/files/pdfs/CJA%20Plan%202018%20with%20Approval%20ELA.pdf.

[4] It should be noted that this was a § 2254 case. Capital § 2255 cases, which are not subject to the habeas restrictions imposed on state cases and which involve large records, are invariably bigger in scope.

court, with the exception of Mr. Runyon, currently has two or more appointed counsel, with the sole exception being where a large institutional Capital Habeas Unit office is handling the case, in which instance three or more lawyers from the Capital Habeas Unit usually assist.[5]

6.      Given the capital sentence in this case, it is imperative that Mr. Runyon is able to continue to prepare his case for a fair and complete evidentiary hearing. Several factors in his case support the need for additional counsel. First, the undersigned counsel has recently received from prior counsel a voluminous amount of documents—including at least fifty-seven bankers boxes and a hard drive containing 187,284 documents—that must be reviewed before the hearing can proceed. It would be unduly burdensome and inefficient for a single person to review and digest these documents. Second, and relatedly, as the hearing was stopped at least in part due to the production of documents not previously disclosed to the government nor known to remaining

---

[5] *See*, *Gabrion # 09184-055 v. United States*, No. 1:15-CV-00447 (W.D. Mich. filed Apr. 27, 2015); *United States v. Corley*, No. 3:02-CR-00116 (N.D. Ind., filed Oct. 17, 2002); *Agofsky v. United States*, No. 1:07-cv-511 (E.D. Tex., filed July 23, 2007); *United States v. Mikos*, No. 1:10-CV-6331 (N.D. Ill., filed Oct. 04, 2010); *United States v. Lighty*, No. 8:03-CR–0457–1 (D. Md., filed Oct. 10, 2003); *Barnette v. United States*, No. 3:12-cv-327 (W.D. N.C., filed May 23, 2012); *Ebron v. United States*, No. 1:14-cv-539 (E.D. Tex., filed Oct. 27, 2014); *Garcia v. United States*, No. 1:13-cv-723 (E.D. Tex., filed Dec. 18, 2013); *Snarr v. United States*, No. 1:13-cv-724 (E.D. Tex., filed Dec. 18, 2013); *United States v. Hager*, No. 1:05-cr-264-3 (E.D. Va., filed June 9, 2005); *United States v. Lawrence*, No. 2:05-cr-11-1 (S.D. Ohio, filed Jan. 20, 2005); *Troya v. United States*, No. 9:16-cv-80700 (S.D. Fla., filed May 3, 2016); *Sanchez v. United States*, No. 9:16-cv-80693 (S.D. Fla., filed May 3, 2016); *Umaña v. United States*, No. 3:16-CV-57 (W.D. N.C., filed Feb. 2, 2016); *Taylor v. United States*, No. 1:19-cv-147 (E.D. Tenn., filed May 14, 2019); *United States v. Fields*, No. 6:03-cr-73-1 (E.D. Okla., filed Aug. 1, 2003); *United States v. Fackrell*, No. 1:16-CR-26-2, (E.D. Tex., filed Mar. 3, 2016); *United States v. Savage*, No. 2:07-cr-550-3 (E.D. Pa., filed Sept. 12, 2007); *Hall v. United States*, No. 4:21-cv-8001 (W.D. Mo., filed Mar. 2, 2021); *Coonce v. United States*, No. 6:20-cv-8000 (W.D. Mo., filed Dec. 8, 2020); *United States v. Cramer*, No. 1:16-CR-26-1 (E.D. Tex., filed Mar. 3, 2016); *United States v. Kadamovas*, No. 2:02-cr-220-2 (C.D. Cal., filed Mar. 5, 2002); *United States v. Mikhel*, No. 2:02-cr-00220 (C.D. Cal., Mar. 5, 2002); *United States v. Roof*, No. 2:15-cr-472-1 (D. S.C., filed July 22, 2015); *United States v. Torrez*, No. 1:11–CR–115 (E.D. Va., filed May 26, 2011).

counsel, it is critical for both parties (and for any subsequent appeal) that a careful and thorough review be made of all potentially relevant documents in this case. Third, a number of expert and lay witnesses remain to be called. Additional counsel will assist undersigned counsel's efforts to conduct a thorough and efficient review of the documents, make any required productions to the government, and effectively prepare for and present witnesses when the hearing resumes.[6] These witnesses include those subject to recall—who were handled by Ms. Chavis at the earlier portion of the hearing, at least five unpresented expert witnesses noticed by Mr. Runyon, cross-examination of the government expert, and any necessary rebuttal witnesses.

7.      Kathryn Ali is willing to accept appointment for Mr. Runyon pursuant to 18 U.S.C. § 3599 and the CJA in connection with his § 2255 motion, and to replace previously appointed (but now withdrawn) counsel.

8.      Ms. Ali exceeds the minimum requirements set forth in 18 U.S.C. § 3599(b). Ms. Ali is an attorney licensed to practice law in the Commonwealth of Virginia and admitted to practice before this Court, the United States Court of Appeals for the Fourth Circuit, and the United States Supreme Court. She is a founding partner of the law firm Ali & Lockwood LLP in Washington, D.C. In addition to being barred in Virginia, she is licensed to practice law in the District of Columbia and California.

9.      Ms. Ali is a 2011 graduate of Harvard Law School and a 2007 graduate of the

---

[6] Section 3599 provides that: "[u]nless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including . . . all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e).

University of California at Berkeley. After law school she clerked in this District for the Honorable Robert G. Doumar, and then joined the Washington, D.C., office of Hogan Lovells, where she spent a decade as a member of the firm's civil litigation practice group, first as an associate and then as a partner.

10.     Ms. Ali has eleven years of capital habeas experience and extensive knowledge of substantive criminal and habeas corpus law. She has represented many death-sentenced prisoners litigating both state and federal habeas claims. This includes representing state prisoners under sentence of death in Florida, Texas, Mississippi, and Kentucky challenging their convictions at the trial and appellate levels. Ms. Ali has also represented prisoners on federal death row in litigating their cases, including during the recent spate of federal executions in late 2020. And she has represented people on death row in Arkansas, Florida, and Virginia challenging execution protocols under 42 U.S.C. § 1983. Ms. Ali has significant experience litigating cases involving brain injury and mental illness, both in habeas proceedings and in civil litigation under § 1983. This has included working with brain injury and mental health experts.

11.     Ms. Ali also currently represents Kyle Young, a Kansas man facing state capital charges, and recently put on expert witnesses and other evidence at a live evidentiary hearing related to his case.

12.     Ms. Ali also has served as post-conviction counsel to several prisoners facing non-capital charges. This includes Adnan Syed, whose case became the subject of the viral podcast *Serial*, and another Maryland prisoner convicted of first-degree murder in a successful challenge based on an unconstitutional jury instruction administered at his trial.

13.     As mentioned above, Ms. Ali plans to be assisted by attorneys from Covington & Burling LLP ("Covington"). Covington will assist Mr. Runyon *pro bono* and thus does not seek

compensation pursuant to § 3599. Covington will also cover certain non-reimbursable costs relating to this representation, including, for instance, document production and copying charges.

14.     Covington will provide additional resources to ensure that Mr. Runyon receives skilled representation and that the proceeding moves forward in an efficient manner. The Covington lawyers who seek to appear in this matter have extensive experience in complex litigation matters, including expert-heavy cases involving extensive document review, such as this one. This expertise, coupled with the ability to bring resources to bear on Mr. Runyon's case, will facilitate the ongoing document review and the preparation for, and presentation of evidence at, the evidentiary hearing.

15.     The Covington team will be led by Peter Swanson. Mr. Swanson has been a partner in the firm's litigation practice group since 2012. In addition to leading a number of complex civil litigation matters, Mr. Swanson has led or worked on a number of criminal matters, including both death penalty and post-conviction matters. For example, he is currently leading a post-conviction case in Alabama state court on behalf of a client on death row. The case involves, *inter alia*, claims that trial counsel were ineffective for failing to investigate and present mitigating evidence, including mental health evidence. He has also represented clients convicted of murder on direct appeal and in post-conviction proceedings, as well as clients charged with murder or attempted murder.

16.     The Covington team will also include Nicholas J. Xenakis, who previously served as an attorney with the Federal Public Defender's Office for the Eastern District of Virginia, where he represented indigent clients charged with misdemeanor, felony, and capital offenses. He also coordinated § 2255 litigation for the Federal Public Defender following the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).

17.     Mr. Swanson and Mr. Xenakis intend to move for pro hac vice admission following the Court's ruling on Ms. Ali's motion for appointment. Mr. Swanson and Mr. Xenakis will be assisted by at least three Covington associates who similarly intend to move to appear pro hac vice following the Court's ruling on the motion for appointment.

WHEREFORE, Mr. Runyon respectfully requests that the Court appoint Ms. Ali as co-counsel in connection with his § 2255 proceeding.

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

8

**CERTIFICATE OF SERVICE**

   I hereby certify that on April 12, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

           /s/ Elizabeth Peiffer

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID ANTHONY RUNYON,

      Petitioner,

v.                                                   CIVIL NO. 4:15cv108
                                           [ORIGINAL CRIMINAL NO. 4:08cr16]

UNITED STATES OF AMERICA,

      Respondent.

## ORDER

This matter comes before the court on Petitioner's "Motion for Appointment of Counsel for Proceedings Pursuant to 28 U.S.C. § 2255," filed April 12, 2023, and its accompanying memorandum in support. See ECF Nos. 802, 803. In his Motion, Petitioner requests that Kathryn Ali, Ali & Lockwood LLP, be appointed to assist with Petitioner's ongoing habeas representation. See ECF No. 802 at 1. Petitioner is currently represented by Elizabeth Peiffer of the Virginia Capital Representation Resource Center ("VCRRC").

While the court is not required to appoint more than one attorney to represent Petitioner in his habeas proceedings, the court may do so, "with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation." See 18 U.S.C. § 3599(a)(2), (d). Given the seriousness of the capital penalty in this case, the amount of discovery yet

to be completed,[1] and the complexity of the case, the court will exercise its discretion to appoint a second attorney to represent Petitioner. See id. Moreover, Kathryn Ali is well-qualified to provide such representation, given her eleven years of capital habeas experience, including matters involving brain injuries and medical experts. See ECF No. 803 at 6.

Therefore, pursuant to 18 U.S.C. § 3599(d), the court **APPOINTS** Kathryn Ali as second counsel for Petitioner in this matter, but for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing. Petitioner is **ADVISED** that the court does not intend to appoint, nor to otherwise admit pro hac vice, any additional attorneys. To the extent that Petitioner utilizes additional counsel in a supporting pro bono role, he will do so without the appointment or involvement of, or reimbursement from, the court.

Petitioner and the United States have still not agreed to a proposed schedule for discovery and the continuance of the evidentiary hearing, despite several extensions from the court.

---

[1] The VCRRC was initially appointed to represent Petitioner in his habeas proceedings on November 5, 2014, and has served as Petitioner's lead counsel since that time. See ECF No. 410. Although the Federal Defender Services of Eastern Tennessee were appointed as co-counsel, ECF No. 435, and were rightly involved in the discovery process, the court is disappointed that the VCRRC did not maintain sufficient oversight of their co-counsel, which has led to extensive delays in this matter, to the inconvenience and expense of Petitioner, the United States, the public, and the court.

See ECF Nos. 801, 807 (Orders granting extensions). Nevertheless, Petitioner has independently suggested that discovery continue through August 31, 2023, with the evidentiary hearing to resume in October 2023. ECF No. 808 (Petitioner's "Status Report and Proposed Schedule"). The United States objects to such a lengthy extension and requests that the court hold a status hearing so that these issues "may be addressed directly with the court." ECF No. 809.

Considering the several extensions already granted by the court, the United States' request for a hearing, and now the appointment of Kathryn Ali to represent Petitioner, a status hearing is appropriate. As such, counsel are **DIRECTED** to schedule a hearing before the court with the Calendar Clerk, to be held within thirty (30) days of the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Order to counsel for Petitioner and the United States Attorney at Newport News.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 17, 2023

3

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON,

        Petitioner

        v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**MOTION FOR ATTORNEY ELIZABETH PEIFFER TO WITHDRAW DUE TO
UNFORESEEN PERSONAL CIRCUMSTANCES AND FOR LEAVE TO SEEK *PRO
HAC VICE* ADMISSION AND SUBSTITUTION OF *PRO BONO* COUNSEL**

For the reasons stated in the accompanying Memorandum in Support, and pursuant to 18

U.S.C. § 3599(e), Petitioner David Anthony Runyon and undersigned counsel, Elizabeth Peiffer,

move for Ms. Peiffer's withdrawal and for leave to seek *pro hac vice* admission and substitution

of attorneys from Covington & Burling LLP ("Covington") in these proceedings.

Several weeks after Mr. Runyon filed his Motion for Appointment of Counsel, *see* ECF

Nos. 802 & 803, Ms. Peiffer's mother was suddenly diagnosed with Stage IV breast cancer, which

has metastasized to other parts of her body including her bones, lungs, and liver. Further

developments in recent days have made clear that Ms. Peiffer's responsibilities as a caregiver will

prevent her from continuing to competently and diligently perform her role as counsel for Mr.

Runyon and create conflicts of interest between her responsibilities to care for her mother and

those as counsel to Mr. Runyon.

In light of this unexpected change in circumstances, and for the reasons explained in the

1

accompanying memorandum, Ms. Peiffer respectfully requests leave to withdraw and be dismissed as counsel in these proceedings, and Mr. Runyon respectfully renews his request to be represented in this matter on a *pro bono* basis by substitute counsel from Covington.

Counsel have consulted with Mr. Runyon on this matter, who supports the requested substitution. Counsel also notified counsel for the United States on June 5 of their intent to file this Motion. Counsel for the United States responded on June 7 to state that they had not had a chance to confer internally concerning this Motion and may not be able to do so until the week of June 12.

Dated: June 7, 2023

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Kathryn M. Ali

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON,

        Petitioner

        v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY ELIZABETH
PEIFFER TO WITHDRAW DUE TO UNFORESEEN PERSONAL CIRCUMSTANCES
AND FOR LEAVE TO SEEK *PRO HAC VICE* ADMISSION AND SUBSTITUTION OF
*PRO BONO* COUNSEL**

For the reasons set forth below and pursuant to <u>18 U.S.C. § 3599(e)</u>, Petitioner David

Anthony Runyon and undersigned counsel, Elizabeth Peiffer, move for Ms. Peiffer's withdrawal

and for leave to seek *pro hac vice* admission and substitution of attorneys from Covington &

Burling LLP ("Covington") in these proceedings.

Several weeks after Mr. Runyon filed his Motion for Appointment of Counsel, *see* ECF

Nos. 802 & 803, Ms. Peiffer's mother was suddenly diagnosed with Stage IV breast cancer, which

has metastasized to other parts of her body including her bones, lungs, and liver.[1] Significant

uncertainties regarding treatment and prognosis remain, but medical consultations and other

---

[1] Although Ms. Peiffer's mother was preliminarily diagnosed on April 28, that diagnosis was not immediately confirmed by an oncologist, and the treatment and care plan remained uncertain pending further medical evaluation. *See* Ex. A, Sealed Decl. of Elizabeth Peiffer ¶¶ 3-7 (hereafter, "Peiffer Decl."). It now is clear that Ms. Peiffer's mother will need substantial and ongoing care, and that Ms. Peiffer needs to be available to serve as a caregiver during treatment. Undersigned counsel endeavored to consult with Mr. Runyon, notify the United States, and file this Motion as soon as practicable in light of these fluid and evolving circumstances.

developments in recent days have made clear that Ms. Peiffer's responsibilities as a caregiver will prevent her from continuing to competently perform her role as counsel for Mr. Runyon and will create conflicts of interest between her responsibilities to care for her mother and those as counsel to Mr. Runyon.

In light of this unexpected change in circumstances, and for the reasons explained in more detail below, Ms. Peiffer respectfully requests leave to withdraw and be dismissed as counsel in these proceedings, and Mr. Runyon respectfully renews his request to be represented in this matter on a *pro bono* basis by substitute counsel from Covington, led by Peter Swanson and Nicholas Xenakis.

Counsel have consulted with Mr. Runyon on this matter, who supports the requested substitution. Counsel also notified counsel for the United States on June 5 of their intent to file this Motion. Counsel for the United States responded on June 7 to state that they had not had a chance to confer internally concerning this Motion and may not be able to do so until the week of June 12.

## I. Recent Unforeseen Changes In Ms. Peiffer's Personal Circumstances Require Her To Withdraw From This Litigation.

As laid out more fully in the attached sealed declaration, on April 28, 2023, Ms. Peiffer's 75-year-old mother fell while walking down a hallway in her home. A series of medical tests, X-rays, and CT scans conducted after that fall revealed that Ms. Peiffer's mother has Stage IV breast cancer that has metastasized to bones in her hip, spine and ribs, as well as to each of her lungs and her liver. Peiffer Decl. ¶¶ 3-7.

Ms. Peiffer's mother's medical condition has left her unable to move safely without assistance and has highlighted the need for substantial accommodations at her home. *Id.* ¶¶ 8-12.

Although Ms. Peiffer's mother has begun treatment, it will be at least three to four months before the effectiveness of that treatment can be assessed. *Id.* ¶ 14. These unanticipated and very serious developments have made significant demands on Ms. Peiffer's time, attention, and availability, and she has determined that it will be difficult for her to make plans or commitments for the foreseeable future due to her mother's unpredictable medical situation. *Id.* ¶¶ 4, 9-18. She has concluded, after consulting with counsel for the Virginia State Bar, that she is required to withdraw. *Id.* ¶ 18.

A.      **The Law and Governing Professional Rules Support Ms. Peiffer's Motion.**

In light of these developments, and in the absence of an extended continuance, "there is a significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother. *See* Va. R. Prof. Conduct 1.7(a)(2). Ms. Peiffer's "loyalty to [Mr. Runyon] is also impaired" because her responsibility to care for her mother will prevent her from "carry[ing] out an appropriate course of action for [Mr. Runyon]." *See* Va. R. Prof. Conduct 1.7, cmt. 8. Thus, Ms. Peiffer has a "concurrent conflict of interest," and continued representation of Mr. Runyon would violate her duties under the Virginia Rules of Professional Conduct. *See* Va. R. Prof. Conduct 1.7(a).

Ms. Peiffer is also unable to provide competent and diligent representation to Mr. Runyon in this death penalty case in accordance with her duties under Virginia Rules of Professional Conduct 1.1 and 1.3(a). "Competent handling of a particular matter includes . . . adequate preparation." *See* Va. R. Prof. Conduct 1.1, cmt. 5. As this Court has recognized, this case is complex, and there is significant outstanding discovery. *See* Order at 2, ECF No. 810. Further, "[t]he required attention and preparation [in a case] are determined in part by what is at stake[.]" *See* Va. R. Prof. Conduct 1.1, cmt. 5. As a death penalty case, this matter requires the most

heightened attention and preparation. *See* Order at 2, ECF No. 810. Ms. Peiffer's caretaking obligations will prevent her from adequately preparing for the continued hearing and will make it difficult to reliably arrange travel and court appearances, particularly when it comes to the presentation of witnesses over multiple days. Peiffer Decl. ¶¶ 11-18.

Continued representation under these circumstances therefore would violate Rules 1.1, 1.3(a), and 1.7(a)(2) of the Virginia Rules of Professional Conduct, necessitating Ms. Peiffer's withdrawal. *See* Va. R. Prof. Conduct 1.16(a)(1); *see also id.*, cmt. 1 ("A lawyer should not . . . continue representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."). Continued representation under these circumstances—particularly in the absence of substitute counsel—would also deprive Mr. Runyon of his rights as a person facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Because of these evolving developments and circumstances beyond her control, Ms. Peiffer no longer has the capacity to competently and diligently represent Mr. Runyon pursuant to 18 U.S.C. § 3599 and in accordance with her ethical duties. Peiffer Decl. ¶ 18. In these circumstances and due to Ms. Peiffer's unavailability, it is in the "interests of justice" to allow Ms. Peiffer to withdraw from this case and to provide Mr. Runyon with substitute counsel. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) (holding that "interests of justice" standard applies to motions for substitution under 18 U.S.C. § 3599); *Christeson v. Roper*, 574 U.S. 373, 377 ("[A] motion for substitution should be granted when it is in the 'interests of justice.'"); *see also* 2/22/2023 Tr. at 1099, 1105 (applying "interests of justice standard" to motion to withdraw).

## II.    In Light Of These Unexpected Changed Circumstances, Mr. Runyon Renews His Request To Be Represented By *Pro Bono* Counsel From Covington.

As a result of the unexpected developments described in Section I—which arose after Mr. Runyon filed his Motion for Appointment of Counsel and evolved in material ways after the Court

granted that Motion in part—Mr. Runyon respectfully renews his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington. At the time this Court previously "advise[d] that the court does not intend to appoint, nor to otherwise admit pro hac vice, any additional attorneys," Mr. Runyon was represented by appointed counsel Ms. Peiffer, who joined Mr. Runyon's legal team in November 2021, with the appointment of Kathryn Ali to join as "second counsel." ECF No. 810 at 2. Now, however, Ms. Peiffer is no longer able to competently fulfill her obligations as appointed counsel for Mr. Runyon, and Mr. Runyon therefore seeks permission for substitute *pro bono* counsel from Covington to represent him as counsel of record.

### A. Designating More Than One Attorney to Serve as Counsel of Record is Critical.

Because he is an indigent person under a sentence of death who lacks the funds to hire an attorney or to pay any costs related to the prosecution of a proceeding under 28 U.S.C. § 2255, Mr. Runyon is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854–57 (1994). If Ms. Peiffer is permitted to withdraw from the litigation, Mr. Runyon will be represented only by Ms. Ali, who has been appointed solely for the limited "purpose of moving the case forward on the one issue now before the court for an evidentiary hearing," ECF No. 810 at 2.

This is a complex proceeding. Indeed, in appointing Ms. Ali, the Court determined that "[g]iven the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case," it was appropriate for Mr. Runyon to have more than one counsel of record. *See* ECF No. 810 at 1–2. That ruling was—and is—manifestly correct. The claim remanded for further proceedings—trial counsel's failure to investigate and present evidence of Mr. Runyon's psycho-social history, brain damage, and mental health—involves complicated

scientific, factual, and legal issues, including several neurological and psychological evaluations of Mr. Runyon, the facts concerning trial counsel's mitigation investigation, and whether trial counsel's conduct comported with prevailing professional standards. The record in this case is voluminous—spanning hundreds of thousands of pages—and the continued evidentiary hearing will involve numerous expert and lay witnesses.

Further, the withdrawal of Tennessee counsel and Ms. Peiffer's unavailability leave Mr. Runyon without *any* counsel who has worked on the case for more than a few months. While Ms. Ali is working diligently to learn the case, she is new to this long-running litigation. And unfortunately, due to issues created by prior, now-withdrawn counsel, much of the time dedicated so far by Mr. Runyon's team has necessarily been focused on attempting to right the ship on discovery and document production issues, thus limiting their ability to focus on preparing for the continued evidentiary hearing. Mr. Runyon should not have to bear the consequences of his former counsel's conduct, especially given that this is a capital case and may be his last opportunity to present evidence.

This situation stands in stark contrast to counsel for the United States, who have been involved in this case for more than fifteen years—since Mr. Runyon's original trial—and at least three of whom (Mr. Samuels, Ms. McKeel, and Ms. Ward, who is appearing *pro hac vice*) have suggested they intend to appear at the June 16 status conference and otherwise appear to be actively engaged in the litigation. This disparity is particularly notable given that it is Mr. Runyon who bears the burden of proof in this proceeding.

Permitting additional, substitute counsel to appear would also be consistent with this District's Criminal Justice Act ("CJA") Plan, which directs that "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least

6

two attorneys" to represent prisoners pursuing 28 U.S.C. § 2255 post-conviction petitions in federal death penalty cases. *See* United States District Court for the Eastern District of Virginia Criminal Justice Act Plan § XIV.E.2 (approved Nov. 6, 2019) (hereafter, "E.D. Va. CJA Plan").[2] *See also* ECF No. 803 at ¶ 5 (noting that this District's CJA Plan is consistent with Guide to Judicial Policies and Procedures, which recommends appointment of "at least two counsel" for § 2255 proceedings in capital cases, 7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01(A)(2), as well as CJA Plans of many (if not most) other courts).[3] And it would align with the uniform practices of every court currently handling a § 2255 proceeding involving an indigent federal capital defendant, every one of which has two or more counsel, with the sole exception being where a large institutional Capital Habeas Unit is handling the case, in which instance three or more lawyers from the Capital Habeas Unit usually assist. *See* ECF No. 803 at 3–4 & n.5.

### B. Permitting Covington *Pro Bono* Attorneys to Serve as Counsel of Record Will Facilitate An Orderly And Efficient Completion of This Proceeding.

Here, attorneys from Covington led by Mr. Swanson and Mr. Xenakis are prepared, with the Court's permission, to step in as *pro bono* counsel for Mr. Runyon in light of Ms. Peiffer's change in circumstances and resulting request to withdraw, and need only to be admitted to the District *pro hac vice*.[4]

Although the Court has discretion to control its courtroom, there is a general presumption that well-qualified attorneys will be granted *pro hac vice* admission absent some compelling

---

[2] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf (last visited June 5, 2023).

[3] It should be noted that counsel appointed pursuant to § 3599 are responsible not only for litigating § 2255 proceedings, but also for "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e).

[4] The proposed Covington team includes, in addition to Mr. Swanson and Mr. Xenakis, Santiago Zalazar, Eric O'Brien, Meaghan Ryan, and Tyler VanderMolen.

reason. *Cf., e.g.*, *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-CV-15, 2015 WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *report and recommendation adopted in part*, No. 2:15CV015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (acknowledging that "[i]t is up to each individual court to set its own standard" for "approving or denying an attorney's *pro hac vice* admission," but citing cases suggesting that there must be some legitimate, specific basis for denial, such as "uncivil behavior or abusive language by an attorney;" "an attorney's impact on judicial economy," as in a situation "where a party's out-of-state counsel has continually thwarted the progress of the litigation;" or where there have been "conflicts of interest or clear-cut violations of the rules").[5]

Here, no such reason exists, and significant considerations weigh in favor of permitting *pro hac vice* admission. The Covington team is well-qualified to represent Mr. Runyon in this § 2255 proceeding, and the individual lawyers satisfy all requirements for admission *pro hac vice* to this Court. *See* Ex. B, Decl. of Peter J. Swanson ¶¶ 4-6 (hereafter, "Swanson Decl."). Both Mr. Swanson and Mr. Xenakis have experience in criminal matters, including death penalty matters, and Mr. Xenakis previously worked as a federal public defender in this District. *See* ECF No. 803 at ¶¶ 14-16 (describing the experience of Covington team members with respect to complex litigation, expert-heavy cases involving extensive document review, and death penalty and post-

---

[5] Other federal courts employ an even stronger presumption, holding that "[a]bsent a showing of unethical conduct rising to a level that would justify disbarment, the court ***must admit*** the attorney" seeking pro hac vice admission. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) (emphasis added) (citing *In Re Evans*, 524 F.2d 1004 (5th Cir. 1975)); *see also Sanders v. Russell*, 401 F.2d 241, 245 (5th Cir. 1968) (while "district courts have broad discretion in prescribing requirements for admission to practice before them," they lack discretion to "limit[] the number of pro hac vice appearances"); *id.* at 246 ("It is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation . . . lack of necessity— in the judge's view—simply is not and cannot be a proper basis for exclusion [of additional out-of-district counsel] . . . The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.") (cleaned up).

conviction matters).[6] Covington has agreed to represent Mr. Runyon on a *pro bono* basis, and it does not intend to seek reimbursement from the Court for its fees or costs incurred in connection with such representation. Swanson Decl. ¶ 3. Counsel for Mr. Runyon have conferred with Geremy Kamens, the Federal Public Defender for the Eastern District of Virginia, who has recommended Covington as capable and available to assist in litigating Mr. Runyon's § 2255 proceedings at no cost to the Court, a factor this District's CJA Plan specifically instructs that the Court "should consider." *See* E.D. Va. CJA Plan § XIV.E.4 ("When appointing counsel in a capital § 2255 matter, the court should consider the recommendation of the Federal Public Defender, who will consult with the Federal Capital Habeas § 2255 Project.").

The only reason the Covington lawyers cannot simply enter their appearances and join Mr. Runyon's team as counsel of record without first seeking permission is that they are not admitted to practice before this Court. But this should not be a barrier to their ability to represent Mr. Runyon, who has selected the Covington team members as his *pro bono* counsel of choice. On the contrary, this is precisely why the process for *pro hac vice* admission exists.

This District's CJA Plan expressly contemplates foreign lawyers serving as counsel of record in § 2255 proceedings like this one. Although the CJA Plan requires CJA panel members in *non-capital* cases to be "members in good standing of the federal bar of this district and the Fourth Circuit Court of Appeals" and "maintain an office in this district," E.D. Va. CJA Plan IX.C.3.a & b, no such requirement exists for counsel seeking appointment in capital § 2255 proceedings. To the contrary, the CJA Plan expressly permits "[o]ut of district counsel" to be

___

[6] During his tenure with the Office of the Federal Public Defender for the Eastern District of Virginia, Mr. Xenakis was admitted to practice *pro hac vice* before this Court. Mr. Xenakis is also admitted as a member of the bar of the United States Court of Appeals for the Fourth Circuit, on which he served as a law clerk, and argued cases in that Court while a member of the Office of the Federal Public Defender.

appointed "in capital § 2255 cases to achieve high quality representation together with cost and other efficiencies."[7] *Id.* at XIV.E.6.

"High quality representation," cost reductions, "and other efficiencies" are precisely what Covington offers here. The Court is aware of the discovery issues that arose during the February 2023 hearing. As described in the Memorandum in Support of the Motion to Appoint Counsel, ECF No. 803, attorneys and litigation support staff from Covington, in conjunction with Mr. Runyon's counsel of record, have been working diligently to address these issues and conduct an efficient and reliable review of the voluminous case files transferred from prior counsel.

To date, Mr. Runyon's current counsel have received a total of seventy bankers boxes with tens of thousands of files as well as a hard drive containing 126 GB of data, including over 187,000 files, and a flash drive containing 14.2 GB of data, including nearly 9,000 files, from former counsel. The paper and electronic files received from former counsel were disorganized and required Mr. Runyon's current counsel to conduct a preliminary review of these files to identify a narrower set of materials requiring potential disclosure under the Court's discovery order. That review was conducted promptly, resulting in the identification of roughly 900 documents from fifty-seven of the bankers boxes and roughly 4,300 files from the hard and flash drives.[8] Covington attorneys, along with Mr. Runyon's counsel of record, have made significant progress regarding the necessary document-by-document review of the roughly 900 paper documents to identify materials that require production, and they completed a production to the government on May 31,

---

[7] Covington counsel are not seeking formal CJA appointment in this case but the same principles apply to retained *pro bono* counsel.

[8] As described in Petitioner's Status Report and Proposed Schedule, ECF No. 808, Mr. Runyon's former counsel sent fifty-seven bankers boxes on April 6, 7, and 10, 2023. The review of these fifty-seven boxes identified nearly 900 documents that are potentially relevant to Claim 6 and require further review. On May 2, 2023, Mr. Runyon's counsel received an additional thirteen bankers boxes from Mr. Runyon's former counsel. The review of the files from the thirteen additional boxes is ongoing and may result in additional files that require further review.

2023.  Covington plans to enlist a dedicated team of attorneys to complete an expedited first-level review of the remaining roughly 4,300 electronic files.  Covington attorneys and staff already have dedicated hundreds of hours to Mr. Runyon's case, and the firm has covered a number of out-of-pocket expenditures related to document scanning, storage, and production. Covington will continue to provide expertise, cost reductions, and other efficiencies to ensure the timely identification and production of relevant information to the government.

Permitting Covington *pro bono* lawyers to formally appear in the case would help to ensure both that this litigation can move forward efficiently and that Mr. Runyon is adequately represented in his § 2255 proceedings. Absent admission *pro hac vice*, the role that Covington attorneys can play in this case and the ability of counsel to expeditiously proceed to an evidentiary hearing will be limited in significant ways. For example:

- Based on the hearing record and documents reviewed to-date, it appears that there are at least five expert witnesses and several lay witnesses relevant to Mr. Runyon's ineffective assistance of counsel claim who were disclosed prior to the February 2023 hearing but who have not yet testified due to the interruption of proceedings. If Ms. Ali is the only lawyer permitted to formally appear and examine witnesses and present evidence, the lion's share of witness and exhibit preparation work will necessarily fall on her, which would unduly limit her ability to prepare for the hearing and could slow these proceedings down considerably. Among other things, it would significantly limit the number of witnesses who could be prepared during any particular day (whereas, if multiple counsel are permitted to examine witnesses, multiple witnesses could be prepared simultaneously on parallel tracks). Permitting multiple attorneys to present evidence and examine witnesses will help facilitate an orderly and efficient presentation to the Court.

- Likewise, if Ms. Ali is the sole counsel of record, she will be solely responsible for arguing any discovery or other disputes that may arise in the coming months, which will detract from her ability to prepare witnesses and otherwise prepare for the upcoming hearing.

- Permitting attorneys from Covington to serve as counsel of record will also ensure that they can assist with and appear on any briefing concerning both discovery-related issues and the ultimate merits of Mr. Runyon's remaining claim.

- To the extent the United States seeks to depose any of Mr. Runyon's witnesses, a ruling that precludes any attorney other than Ms. Ali to prepare any such witnesses and defend their depositions will be inefficient for similar reasons. For example, this would prevent the counsel team from being able to proceed with multiple depositions on parallel tracks.

- Permitting attorneys from Covington to serve as counsel of record would mean that Covington counsel are officially speaking for Mr. Runyon and subject to the Court's authority, and thus presumably would give the United States more confidence and trust in dealing with Covington concerning outstanding discovery disputes, hearing logistics, and other issues. *See, e.g.*, *Belue v. Leventhal*, 640 F.3d 567, 576–77 (4th Cir. 2011) (noting that "pro hac vice attorneys are 'held to the same professional responsibilities and ethical standards as regular counsel,' particularly in this modern era where "[t]he legal profession has become a national one, and justice in any true sense must transcend the parochial . . .") (citation omitted).

These considerations are particularly weighty here given that Mr. Runyon has selected and retained Covington as his *pro bono* counsel. The principles underlying the Sixth Amendment support honoring his selection.

The Sixth Amendment protects the right of a non-indigent defendant to select the counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Amendment also guarantees indigent defendants like Mr. Runyon the right to be represented by qualified, chosen counsel "willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989). Because this choice is the very "root meaning of the constitutional guarantee," *Gonzalez-Lopez*, 548 U.S. at 147–48, the Supreme Court has instructed that when a defendant is denied qualified counsel of his choice, it is a structural constitutional violation and does not matter whether a subsequent trial has otherwise been fair. *Id.* at 146 ("[The Sixth Amendment] commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best."). Under the current

circumstances, refusing to permit Mr. Runyon's counsel of choice to fully participate in his representation would also deprive Mr. Runyon of the care and attention he and his case deserve given that he is facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Mr. Runyon understands that this right is not unlimited. But Supreme Court precedent makes clear that none of those limitations applies to his choice of the Covington lawyers to represent him. Mr. Runyon has not chosen counsel who lacks bar membership, has a conflict, is unwilling to carry on the representation, or fails the ethical standards of profession. *See Wheat*, 486 U.S. at 159–60. On the contrary, Covington's attorneys are members in good standing of their respective bars, have already signed a representation agreement with Mr. Runyon and begun work on his case, and are free from ethical conflicts and disciplinary history.

That the members of the Covington team are out-of-state attorneys should not interfere with Mr. Runyon's choice of counsel. *See, e.g.*, *United States v. Ensign*, 491 F.3d 1109, 1114–15 (9th Cir. 2007) ("We have held that a defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted pro hac vice.") (internal quotations omitted); *Fuller v. Diesslin*, 868 F.2d 604, 607 (3d Cir. 1989) ("[W]e conclude that the right to counsel pro hac vice is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases."). Out-of-district admission in this case will not "hinder the efficacious administration of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 817–18 (1st Cir. 1987). Once again, the opposite is true: the Covington attorneys possess the requisite resources to professionally and efficiently review and disclose discovery as well as the courtroom experience to conduct the evidentiary hearing in an efficient and orderly manner.

**CONCLUSION**

For the foregoing reasons, Ms. Peiffer respectfully requests that the Court grant her request to withdraw from this litigation, and Mr. Runyon respectfully requests that the Court grant leave for the Covington lawyers to file *pro hac vice* motions and be substituted as counsel of record in this litigation.

Dated: June 7, 2023                          Respectfully Submitted,

                                             /s/ Elizabeth J. Peiffer

                                             Elizabeth J. Peiffer, VSB No. 71353
                                             Capital Representation Resource Center
                                             1155 Seminole Trail #6391
                                             Charlottesville, VA 22906
                                             Telephone (434) 817-2970
                                             Fax (434) 817-2972
                                             epeiffer@vcrrc.org

                                             Kathryn M. Ali, VSB No. 97966
                                             Ali & Lockwood LLP
                                             300 New Jersey Avenue N.W., Suite 900
                                             Washington, D.C. 20001
                                             Telephone (202) 651-2475
                                             katie.ali@alilockwood.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Kathryn M. Ali

# EXHIBIT 6

*(Filed Under Seal)*

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| David Anthony Runyon,<br> Petitioner,<br><br>v.<br><br>United States of America,<br> Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Original Criminal No. 4:08-cr-16-3<br>Original Civil No. 4:15-cv-108<br>**Capital § 2255 PROCEEDINGS**<br><br>HON. REBECCA BEACH SMITH |

**Declaration of Peter A. Swanson**

I, Peter A. Swanson, hereby declare as follows:

1. I am a partner in the Washington, D.C. office of Covington & Burling, LLP ("Covington"). I provide this declaration in support of the Motion for Attorney Elizabeth Peiffer to Withdraw Due to Unforeseen Personal Circumstances and for Leave to Seek Pro Hac Vice Admission and Substitution of Pro Bono Counsel ("Motion").

2. In the Motion, Petitioner requests, *inter alia*, leave to seek *pro hac vice* admission and substitution of attorneys from Covington.

3. Petitioner has retained Covington as counsel in connection with the above-captioned matter. Covington has agreed to represent Mr. Runyon on a *pro bono* basis and does

not intend to seek reimbursement from the Court for its fees or costs incurred in connection with this representation.

4.  The proposed Covington team for this matter includes myself, Nicholas Xenakis, Santiago Zalazar, Eric T. O'Brien, Meaghan Ryan, and Tyler G. VanderMolen.

5.  I meet the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(D). The other proposed team members have represented to me that they satisfy the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(D), and to the best of my knowledge, information, and belief, they do satisfy these requirements.

6.  If the Motion is granted, the proposed Covington team members will promptly file *pro hac vice* admission applications and pay the required fee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

Executed on June 6, 2023, at Washington, DC.

Peter A. Swanson
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5111
pswanson@cov.com

2

# EXHIBIT 8

## *(Excerpted)*

N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - -
                                        )
UNITED STATES OF AMERICA,               )
                                        )
v.                                      )   CRIMINAL ACTION NO.
                                        )   4:08cr16
DAVID ANTHONY RUNYON,                   )
                                        )
        Defendant.                      )
                                        )
                                        )
        AND                             )
                                        )
DAVID ANTHONY RUNYON,                   )
                                        )
        Petitioner,                     )   CIVIL ACTION NO.
                                        )   4:15cv108
v.                                      )
                                        )
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )
                                        )
- - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

(Status hearing)

Norfolk, Virginia

June 16, 2023


BEFORE:  THE HONORABLE REBECCA BEACH SMITH
         United States District Judge

APPEARANCES:

UNITED STATES ATTORNEY'S OFFICE
By:  Brian Samuels
      Lisa R. McKeel
      Assistant United States Attorneys
      Counsel for the United States


VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
By:  Elizabeth J. Peiffer
              And
ALI & LOCKWOOD LLP
By:  Kathryn M. Ali
      Counsel for the Defendant

(Hearing commenced at 12:04 p.m.)

THE CLERK: In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent; and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels and Ms. McKeel, is the government ready to proceed?

MR. SAMUELS: The government is ready. Good afternoon, Your Honor.

THE COURT: Good afternoon.

THE CLERK: Ms. Peiffer, Ms. Ali, is the defense ready to proceed?

MS. ALI: Yes, Your Honor. Good afternoon.

THE COURT: Good afternoon.

Counsel, I will briefly review the current status of where we've been since the last hearing, and I will then address outstanding matters. I would recognize Mr. Runyon. You are David Anthony Runyon?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So Mr. Runyon is here with his counsel, and counsel for the United States are present. On February 7, 2023, Petitioner's evidentiary hearing began following the Fourth Circuit's remand on the limited issue of whether Petitioner's trial counsel, "Failed to provide him with effective assistance in violation of the Sixth Amendment by

failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of the trial."

That's from *United States v. Runyon*, 924 F.3d 192 at 204. It's a 2021 Fourth Circuit case. I will not go through all of the lengthy history that has occurred to date, but the last time that we convened on this case was in February of 2023. Petitioner's counsel from the Federal Public Defender services in Eastern Tennessee were withdrawn from the case, and for the reasons I ruled on the bench, as stated from the bench and in court and for further reasons, that have occurred in the Eastern District of Tennessee. On February 24, 2023, the Court continued the evidentiary hearing.

The Court by written order also directed Ms. Peiffer and the United States, "To come to an agreement regarding the discovery schedule moving forward, including the necessary lengths of any continuance of the evidentiary hearing and to submit the proposed schedule to the Court by close of business on Friday, March 24, 2023." That order is ECF Number 796.

On March 23, 2023, petitioner, by counsel, filed an unopposed motion to continue the scheduling deadline until April 14, 2023, which the Court granted the following day. On April 14, 2023, petitioner, by counsel, filed a motion to

continue the scheduled deadline until May 5, 2023, which the Court granted on April 18th, 2023. On May 5, 2023, petitioner filed a status report and proposed schedule in which counsel suggested that discovery should be due on August 31, 2023, and that the evidentiary hearing could begin in October of 2023. The United States responded to that status report on May 17, 2023. In its response the United States objected to that length of a delay and, "Requested that the Court hold a prompt status hearing to discuss the status of discovery and the lack of agreement regarding the continuation of the evidentiary hearing." So that was why we were initially here today, and we certainly will get to that.

In the meantime, on April 12, 2023, petitioner, by counsel, moved to appoint a second attorney, Kathryn Ali, and the Court granted that motion, and Ms. Ali was appointed on May 17, 2023. I note that the Court had the discretion whether to appoint Ms. Ali or not, because the second attorney is discretionary, and the defendant was already represented by Ms. Peiffer and the Virginia Capital Resources Center, who have been in this case for some time since it started the collateral proceedings.

Then on June 7, 2023, Ms. Peiffer moved to withdraw from her representation of the petitioner due to her mother's cancer diagnosis. I would note that there is an

outstanding motion to seal Ms. Peiffer's declaration, and I have reviewed that because it contains personal information relating to her mother's diagnosis and care.

Is there any objection to the Court sealing that document?

MR. SAMUELS: No, ma'am.

THE COURT: Ms. Peiffer, I assume that you still want that sealed?

MS. PEIFFER: Yes, Your Honor. Thank you.

THE COURT: Well, I grant the outstanding motion to seal, and that declaration will be sealed.

Now, the first issue we will take up is Ms. Peiffer's withdrawal, and I will tell you at a threshold level that I am not inclined to allow you to withdraw at this point, Ms. Peiffer, and there are a number of reasons. I will state my reasons. You can then respond.

There is no indication here that you are not still going to be with the Virginia Capital Resource Center, and if you're going to be with that Center, even if you can't at this juncture necessarily take a lead role, Ms. Ali is certainly capable of taking a lead role. She was a law clerk in this court for Judge Doumar. She has experience in death penalty cases, and that is why the Court admitted her, because of her experience, and she moved, as did Ms. Peiffer, to allow her in. That was allowing her in on

the Court's discretion without having any information in regard to Ms. Peiffer's mother's condition.

So at a threshold level, there are already two attorneys in this case, and Ms. Ali is certainly qualified. If she's not, she shouldn't have submitted all that she did to the Court saying she was totally qualified to go forward with this case, and those submissions were verified, her experience by the Court, and the Court is familiar with her, her having served as a law clerk in this court. I didn't work directly with her, but I certainly am familiar with her.

Secondly, as I said, there is no indication that Ms. Peiffer is leaving the Virginia Capital Resource Center or that the Virginia Capital Resource Center is in any way closing. Every case needs some kind of institutional memory and continuity, in other words, an attorney that's been with the case. I am certainly not inclined to let an attorney or the Capital Resource Center withdraw. Ms. Brace started this habeas with the Center, then the Court was assured she was ill. The Court was assured that Ms. Peiffer would take over and proceed in this case, and that the Virginia Capital Resource Center would proceed.

Certainly, at this juncture, this case started in 2008. It started a bit before that, but filed in 2008, and so, consequently, at this juncture this Court is not

inclined to let the habeas attorney withdraw. I'm very sympathetic to Ms. Peiffer's family illness. I'm sympathetic to family situations, and she may not for a while be able to take the lead here, but you've got very capable co-counsel. Now, if you want to make some remarks to that, certainly, Ms. Peiffer, I will let you, and I will let the United States respond.

Ms. Peiffer.

MS. PEIFFER: Your Honor, since most of the explanation and reasons why I believe I'm required to withdraw as set forth in the motion and declaration, I'll have very brief responses to Your Honor's comments. The first is that, although I had elected to, after reviewing the ethical rules and consulting with the bar of ethics department, I believe it is appropriate and necessary for me to withdraw because I can't fulfill my ethical obligations to Mr. Runyon due to my personal conflict of interest that has arisen and disabled by that conflict of interest and particularly to the Rules 1.1, 1.3 and 1.7, I feel obligated to withdraw, and I have done that after consultation with ethics counsel at the bar.

THE COURT: I haven't received any ethics opinion, and I don't know of any cases on point. Are you staying with the Virginia Capital Resource Center? Are you employed by them?

MS. PEIFFER: Your Honor, I am currently employed by the Capital Representation Resource Center. I have not been working my normal schedule. I have been unable to work my normal schedule since April 28th due to my involvement and responsibilities for caring for my mother, and my schedule has been very unpredictable, and I have had a great degree of flexibility, and because of that, that is why I believe that I am not able to competently represent Mr. Runyon because of the degree of unpredictability that has taken over my schedule and my life at this point due to my mother's illness.

I have not been working in the way that I would need to to prepare for his evidentiary hearing or to support Ms. Ali as co-counsel in the case. I have not been able to do that due to my other obligations. I have the option of taking compassionate relief from the Resource Center, and I will do so if that's needed to address my mother's medical situation.

But the situation is evolving and changing, and I'm not -- to be frank with the Court, it changes every day, and I am not sure of my stance for the future, but that degree of unpredictability and my concern that I cannot adequately represent Mr. Runyon with an approaching evidentiary hearing and the work that would need to be done to prepare for that is to prepare and to follow the Court's orders regarding the

discovery in this case, I don't feel like I can fulfill those obligations, and that's why I did move to withdraw in this case.

THE COURT: The Court is of the opinion you are not fulfilling your obligation to withdraw. There's probably not a person in this room that has not had a close family member very will or had a difficult family situation, including the undersigned judge, a very similar family situation, and I'm not saying I'm not sympathetic but there are still ways to meet your obligations because that's what a person has had to do at some junctures, and as far as I'm concerned, that's why you have Ms. Ali to take a lead role.

You would be, in my opinion, violating your duties to Mr. Runyon by not staying in this case because you have the institutional memory, and it doesn't mean that you have to work on the case every day, but there are computers, there are e-mails, there's telephones. Ms. Ali is in the State of Virginia. Her office is in Northern Virginia, as I understand it, and you're in Charlottesville. So there are certainly means to communicate, and nobody is saying that you have to be lead counsel necessarily, but you're co-counsel, and if you leave, I'm still going to require the Capital Resource Center to be in this case. So you can let Mr. Lee know that. You can't take on a case like this and then the attorneys one by one -- there is an obligation.

You have the records, you've done the discovery, you've filed the motions. One of the experts is now deceased. One of the attorneys, I believe, had cancer. This case is getting too stale at this point. We've got to continue on with it, and we are going to continue on with it, absent another reason other than you've told me. If it was your health, that would be different. It may be hard on you. But nobody is saying that you've got to file the briefs and do everything because you've got Ms. Ali, your co-counsel.

So nobody from the bar has told me you have to withdraw. I've looked at the caselaw. There is a family illness, but that doesn't mean if you take leave, then Mr. Lee will have to step in, even if you take compassionate leave, you are still with the Resource Center. So at this juncture, unless I hear something more persuasive, I'm going to deny your motion. In my opinion, the interest of justice requires that you and the Capital Resource Center stay in this case.

Let me hear from the United States, but at this juncture, unless I hear something more persuasive from you, and you're saying you don't have anything any more than what you've told me. I'm not granting withdrawal.

MS. PEIFFER: Your Honor, may I address several of your points, response?

THE COURT: You can, but don't repeat. Be as quick

as possible. We have other matters to address.

MS. PEIFFER: Absolutely. The first regarding the Resource Center, we have operated under the Court's instructions that I was appointed to the case and not the office. The office institutionally has had very little involvement with the case. I have performed the brunt of the work in this case, the relationship with Mr. Runyon, and participation in the evidentiary hearing so far.

THE COURT: Wait just a minute, please. I want to interject something. Ms. Brace was let out because she was ill, and you took Ms. Brace's place. You were both with the Capital Resource Center. So Ms. Brace was with this case, the continuity through the habeas action, and appeared in this case at the inception of it. She got out right at the inception of when we had to have the evidentiary hearing. She was in the case as was the Capital Resource Center. So she got out with the understanding that the Capital Resource Center would still be in the case, and you would be the attorney from the Capital Resource Center. I agreed to let you all associate the Federal Public Defender of Tennessee and you lost control of that one.

MS. PEIFFER: Well, Your Honor, I was appointed from the Resource Center, but the other attorneys at the Resource Center did not have a substantial involvement in the case. And that was -- they are currently impacted by my

situation, which also has made me unavailable to work on our other cases. We are a very small office of only three attorneys. So my inability to work at full capacity, and the need to accommodate that on our other cases, and my reduced contribution, has had a proportionately great effect on the office. And in the interest of efficiency and moving it forward, which I know is in the interest of all of the parties, that was why we suggested substitute counsel who would be able to move the case forward on the schedule that we had proposed, which we would not be able to do if I was involved -- I would not be able to commit to a hearing because of my current situation and to just -- I'm trying to keep it brief as directed by Your Honor, but I just want to clarify, I believe I am currently operating under a conflict of interest because I am -- my personal commitment and my personal responsibilities are creating a significant risk that the representation of Mr. Runyon is materially limited. So that is the reason why I believe, and the bar advised, that it is appropriate, and that's why I moved to withdraw from the representation.

THE COURT: As far as the Court is concerned, if the Capital Resource Center did you not have enough resources, it needs to seek more. That's number one. Number two, I would be interested, and I may inquire, if necessary, a list of all the cases that you have because

this is certainly one of the oldest cases that you have. So if you are taking on new cases, and you're putting Mr. Runyon's case behind those, that is unethical, in my opinion.

In other words, if you're taking on new capital cases, and you're not getting out of more recent capital cases that haven't been nearly as far as this case, that is not right. This case had a full jury trial. He was convicted with three segments for a death penalty case. The jury rendered the verdict, not the Court. The law required the jury to render the death penalty verdict, and not the Court, which is then directed under the law to impose that sentence of the jury.

The case went to the Fourth Circuit on appeal and was affirmed. Then it went to the Supreme Court, with cert. denied. Then it came back here. It was a habeas petition that had things even in there alleging that the attorneys hadn't used the correct font. That was actually one of the numerous grounds. Then it gets ruled on by this court, and it goes to the Fourth Circuit on appeal. Everything is upheld but the one issue of whether the two attorneys were ineffective because they didn't pursue or produce certain evidence on potential mental health issues. They testified. The habeas evidentiary hearing started at lasted seven to eight days. They, the attorneys, have testified here why

they didn't and what was going on.

Then when Ms. Chavis appeals, it comes out on the objection of the government that certain documents haven't been seen, certain documents haven't been produced, and the record will show this. Then, as I understand it, a closet with at least 40 bankers boxes of evidence was found at the Tennessee Federal Public Defender's office that Ms. Chavis had put there.

So, consequently, this case has been going on an inordinate amount of time, and it needs to move forward, and the Court itself has not dragged its feet. This came back to court on this one issue in 2021, and then I continually notified counsel we need to set a hearing. I set a hearing, I believe, at the insistence of the government about a year later. So it needs to keep moving along. People are going to have problems. That is one of the issues now. There are problems. There are problems with the experts, one has died. There's problems with the trial attorneys getting ill. At least they have testified at this point. Then there were problems with, and it wasn't the government, withholding discovery information. It was the petitioner's counsel withholding that. That was a nightmare for the Court, for Mr. Runyon, and for everybody involved with what occurred and with the case.

So, consequently, we all have problems. It's human

nature. I know you have a problem, Ms. Peiffer, but there are attorneys and other people in that office, and there is you, you can communicate. You can communicate with Ms. Ali, who is extremely competent. So she's in the case, and the case can move forward. If she has a question about something thus far, at least she has someone to ask. Can you tell me why this was filed? You don't necessarily have to do all the substantive work, but the continuity has to be there, and it has to be there now through you, and if not through you, through the Virginia Capital Resource Center. Mr. Lee, the director of the Center, is an attorney.

I will do what I have to do to keep the Virginia Capital Resource Center in this case. Three attorneys and Mr. Lee apparently have not stopped taking new cases. I'd be interested in the cases that you have. I bet you don't have many that go back to 2008. I would be very interested.

So unless you can produce something other than what you have told the Court that, number one, I understand your situation. I'm very sympathetic to your situation. But the situation, in my mind, is not grounds to withdraw. If you feel you have a conflict, I don't feel you have a conflict. I don't see any conflict because a family member is ill. I just don't see the conflict. So I find that you don't have a conflict that prevents you from proceeding on with this case, even if on a limited basis, and I find that you don't

have an ethical obligation to withdraw.  I find you have an ethical obligation not to withdraw at this late juncture.

Now, is there anything else?

MS. PEIFFER:  I'll consult with my co-counsel, Your Honor.

All right.  Nothing further at this point, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Samuels, Ms. McKeel.

MR. SAMUELS:  Thank you, Judge.  Your Honor, we certainly have a great sympathy for Ms. Peiffer's family situation.  When we were investigating this case, and we were doing the early litigation on it, Ms. McKeel, my colleague, had some very difficult family situations, as well, during that time that we worked through.

But the concern that the United States has is the concern that the Court had referenced, which is the issue of continuity, the issue of institutional memory.  I think it is just important to note that Ms. Brace was appointed in this case back in 2015 from the Virginia Capital Resource Center at the onset of the habeas proceedings.  Ms. Peiffer assumed her responsibilities in late 2021, and that was through the Court's order, ECF 649, and the Court permitted that substitution with the understanding that it would not cause a further delay in the proceedings.

I think it's also important to note that since Ms. Peiffer has been involved in late 2021, it's been about a year and a half, there has been significant ground plowed in this case. There has been a lot of discovery exchanged. We went a long way down the road on this evidentiary hearing. The lawyers testified. Lay witnesses testified. There were many prehearing pleadings that were filed.

The concern of the United States is that there be a thread in counsel's team, in habeas counsel's team, that's linking to what has been done before, and that would be Ms. Peiffer, Your Honor. So for those reasons, we agree that she should be involved in this and not the capacity that she was, but she does provide the link between what's going to go on in the future and what has happened in the past. She has had a lot of contact with the attorneys at the Federal Defender's office, and that's where all these discovery issues and these disclosures should stem from, so we do think it's an important link to maintain, Your Honor. Thank you.

THE COURT: One thing that I would add is that if Ms. Peiffer or the Virginia Capital Resource Center is not in the case, they have the electronic database of this case, and so if something comes up, they know where to go. In other words, it is not just transferring a database, it's having the memory and the knowledge to know where to go and

get things.

So the reasons that I've said, as far as I'm concerned, I just don't see anything that would serve the interests of justice in Mr. Runyon's case to allow Ms. Peiffer to withdraw. She can certainly take a lesser role, as Mr. Samuels and the Court indicated, and the Court understands that. But certainly to completely withdraw and to withdraw basically the firm, the group that has been representing Mr. Runyon throughout these habeas proceedings, would not serve the interest of justice from his standpoint, in my opinion.

Now, is there anything else that you want to say, Ms. Ali?

MS. ALI: Just briefly, Your Honor, if I may. I understand that the Court has -- I think I understand the Court has ruled on the motion.

THE COURT: No, I'm asking you if you have any comment about the motion. I've indicated upfront how I feel about the motion, and it's been pending, and that's why I didn't just rule on it. I knew we are going to have this hearing, and I wanted to articulate my reasons on record, and if you all wanted to respond, I certainly will consider any response. I have left out Ms. McKeel, but Mr. Samuels has responded.

MS. ALI: I won't repeat the argument that

Ms. Peiffer made. I'll just add, you know, we think that it is critical that Mr. Runyon have more than one counsel here for the reasons that we said in our motion, and I understand that technically if Ms. Peiffer is still in the case, then he's got two appointed counsel. But functionally, that's not going to be the case. Ms. Peiffer has really had significant constraints on her time over the last month since all of this unfolded, and my understanding that that will continue for at least the next three to four months.

The Court acknowledged in the order appointing me, and I'll note also that I was appointed in that order as second counsel solely for the purposes of this hearing. This is a complex case. There is a lot of discovery yet to be completed, and I am getting up to speed. I'm trying to learn the case, but I'm not sure that Ms. Peiffer continuing to be in the case functionally serves those two counsel. The Court made a judgment in the appointment order that it was appropriate for him to have two counsel.

I understand that that doesn't mean that both have to be serving a lead counsel function. But Ms. Peiffer is not in a position, as I understand it, and based on the constraints on her time, to really competently represent Mr. Runyon in any capacity right now. I understand the Court's comments about the office and the Resource Center and Mr. Lee, but they are aware of the case. They have been

doing some work on the case, but they are not -- they do not have the personal relationship with Mr. Runyon. They are not up to speed on all the developments in the case, and they have not been involved in the way that Ms. Peiffer has.

So I'm not sure -- it's not a substitute to have somebody else from that office come in, especially -- we put all this in our motion, but we have substitute counsel standing ready to come into the case. I see Your Honor shaking your head, so I'm happy to move on.

THE COURT: I haven't responded to that yet, but that's a different issue whether I'm going to let five attorneys come in here *pro hac vice*. We had a problem with that before with Ms. Bales, Ms. Chavis, and the Tennessee Public Defender. I did that against my better judgment, but we will get to that in a minute. There are five attorneys sitting in here. Do you know what a hearing is like with various attorneys jumping up and down and, well, Ms. Bales prepared this witness so she has to do it, and the record will go back and show that, and then there was conflict between the *pro hac vice* counsel.

I mean, there were a lot of problems, even admitting Ms. Bales from the Federal Public Defender's office in Tennessee. They would say, well, I didn't prepare that witness. I can't do that. And this person has been admitted *pro hac vice*, so they need to do it. We will get

to that in a minute, but that is not bearing, in my opinion, on whether Ms. Peiffer stays in the case or not. If you want me to, I'll do an amended order and make you lead counsel, and I'll make you both co-counsel. I'll do it right now. Then you two can decide how you split your responsibilities.

MS. ALI: Again, I'm not going to repeat the arguments Ms. Peiffer made, but I think the Court understands our position. We put it in our motion. But from our perspective, it is not a substitute for him having two counsel. I understand the Court's position that it is discretionary, but as we put in our motion, the CJA plan for this district specifically says that the Court should consider having at least two counsel in a capital 2255, and as we said in our motion as well, every other person litigating -- every other person litigating a capital 2255 has at least two lead counsel of record and in many instances many more than two.

So Mr. Runyon would really functionally only have one counsel of record in the case if Ms. Peiffer is not permitted to withdraw and no additional counsel are permitted to appear as counsel of record. Mr. Runyon would be standing alone in that posture.

THE COURT: I don't agree with you because this habeas has gone on, and is at the final stage. It's not

like the inception of a habeas case where all of -- I've forgotten, what was it 60 grounds or something was fully briefed, ruled upon, argued, and so forth. I don't know how many grounds, I'd have to look back. This isn't the inception of a habeas case where the petition hasn't been filed. It's been heard on appeal. It's now here on one narrow ground. So this is quite distinctive and distinguishable from what you're saying because this is not a new habeas proceeding from the inception where -- I don't know how many hundred pages I wrote where I went through every single ground, and it went up to the Fourth Circuit and one ground came back, and that's the only ground. So it's a very narrow habeas case at this point, and, in fact, that's why I was hesitant to even appoint a second counsel in the middle of the evidentiary hearing, because it is within my discretion. It is not required, and the Virginia Capital Resource Center and Ms. Peiffer, since it got to this narrow issue, have been in this case, and Ms. Brace from the Center before that. On all of that, I still appointed you, and exercised my discretion, but it's not required, and it's only on one narrow issue. If you're not up to it, tell me. I'll let you withdraw. We will get somebody else. Are you up to it, Ms. Ali?

MS. ALI: I am prepared to stay in this case and represent Mr. Runyon, as I have agreed to do and as I

represented to the Court.

THE COURT: All right.

MS. ALI: Nothing further, Your Honor.

THE COURT: Anything further from anyone?

MR. SAMUELS: Not from the United States, Your Honor. Thank you.

THE COURT: Ms. Peiffer, anything further from you?

MS. PEIFFER: Not at this time.

THE COURT: Well, for the reasons that I've stated, I deny Ms. Peiffer's motion to withdraw as counsel. I designate the two attorneys as co-counsel, and they can determine how to divide the responsibilities as between them in Mr. Runyon's case at this juncture. As for the reasons I've said, Ms. Peiffer must remain in the case, but I'm not going to repeat them all. The institutional memory of the whole Virginia Capital Resource Center that's been in this case since 2015 is necessary, in my opinion, to serve the interests of justice for Mr. Runyon.

So, consequently, I would also suggest if the Virginia Capital Resource Center -- this is a suggestion -- is overworked, then they review their cases and decide that they can't take on any new cases, but you don't drop cases that you have been in for coming on soon almost nine to ten years. So you just can't drop cases. You stop adding cases. But for any reason, for all the reasons I've said, I

exercise my discretion and find that in the interest of justice, and the interest of justice that I am interested in is Mr. Runyon and the continuity of counsel for his case, particularly on this very narrow issue of whether his trial counsel was ineffective for not pursuing the mental health route in the case.

Again, I appointed Ms. Ali, and she can -- they can serve as co-counsel.

The next matter I think we need to look at it, in Ms. Peiffer's motion to withdraw she renews her request for Covington, it's a very large national firm, attorneys to be admitted *pro hac vice* to represent petitioner *pro bono*. I would note that despite this request, no *pro hac vice* motions have been filed at this time. So you can't be admitted *pro hac vice* until the individual attorneys file a motion to this effect. That's number one.

Number two, I see no reason to admit, at least it appears five attorneys in here to be *pro hac vice* because that can put the hearing out of control. To the extent they want to volunteer their time to you, Ms. Ali and Ms. Peiffer, they can. There is nothing that keeps them from acting *pro bono*. They can certainly, if their firm wants it and permits it, they can act *pro bono*. They can advise you, and you and Ms. Peiffer can use them however you deem appropriate. But I see no reason to start admitting

attorneys *pro hac vice* to be here for this continued evidentiary hearing. The record will show what happened before with the *pro hac vice* situation. So, consequently, I welcome any *pro bono* help you can get. That's up to you, Ms. Peiffer and Ms. Ali, whether you need *pro bono* help. Number one, that's up to you. Number two, it's up to their attorneys and their law firm. I permit the attorneys to be *pro bono*, but the Court is not inclined to admit them *pro hac vice* in this case. They can be present at the hearing, whatever you decide, but not as counsel in the case. There is no requirement that they be admitted *pro hac vice* to be present. So if they want to file the motions, you can file them, but be prepared for my decision, unless there are other factors to consider.

My decision at this juncture is no for the above reasons. Now let's go to why we were supposedly here in the first place, which is to look at the schedule going forward for discovery and a continued evidentiary hearing date.

You asked for the conference, status conference, Mr. Samuels, and I'll let you speak first.

MR. SAMUELS: I did, Your Honor, and thank you. I'd just like to put on the record where we are with this. Since we took our break at the end of February, and I believe at that time the Court had ordered the government and Ms. Peiffer at the time to come together and to come up

with a prosed schedule for the disclosure of additional materials and resumption of the evidentiary hearing by March 24th, but we have been unable to do that, Your Honor. The government has agreed to, I believe, two extensions of the Court's original order. We moved it first to April 14th and then to May 5th, and then there was a status report, I believe, filed by Mr. Runyon's counsel that asked us to commit to August 31st for a deadline for turning over materials.

Your Honor, this is about six months after we paused the hearing. Let me tell the Court what we have received to date and the manner of it so the Court can understand some of the challenges we have had. We have received two disclosures of documents. Both of those only since we set this hearing. We had asked for the hearing on May 17th. The Court granted that, I believe the same day, and said we had to do it within 30 days. We are at the end of that time period, the end of the 30 days. We received the first disclosure on May 31st. These disclosures are coming to us, Your Honor, through Covington's document platform, so they are involved in the case.

THE COURT: They can't be coming through that platform. They can assist *pro bono*. But if you're not admitted in a case as counsel, you're not on the docket sheet as any type of counsel of record, and local counsel of

record are responsible.  The responsible attorneys, reportable to the Court, are Ms. Ali and Ms. Peiffer.

MR. SAMUELS:  To be clear, Your Honor, it is Ms. Ali that is informing us that the documents are ready, but then we have to go through a platform that I understand is Covington's platform to actually get the documents.  That has caused us a little bit of a delay in the first instance where we didn't actually get the documents until June 1st.

The second one we received notice of yesterday at 4:00.  We were not able to get that until this morning. There are these indices that have accompanied the disclosures.  The first set of documents was about 315 pages, and the second set was about 437.  The indices don't really tell us anything about what the documents are or where they came from other than they came from some Winston & Strawn boxes, but we don't know their relation to the penalty phase of this case or whose folder they came from or anything like that, which did seem to us as contrary to what the Federal Defender in Tennessee said they would do, which is they would have all these indices when they produced the documents.  There's no indication as to whether these documents have been turned over to us before, and as we have gone through them, we have recognized a good number of them are documents we have seen before and have been introduced in the hearing.

THE COURT: Well, I am too. I'm quite disappointed.

MR. SAMUELS: I understand.

THE COURT: I would say that, number one, it is petitioner's burden here. This is a habeas proceeding. This is his burden, not the United States' burden. That's number one. Number two, you only produce relevant documents. The Court is not going to sift through all the documents in this case. We have had a full trial. We have had a full habeas petition briefed and ruled upon, and you're not going to do "a document dump." That's not the way this is going to proceed. And if it proceeds that way after I have said it's not going to proceed that way, I'm warning everybody we are going to have some possible sanction or contempt proceedings because this is just not proper and contrary to the Court's orders.

The documents may not come from Covington. If you want to get them, Ms. Ali, and you want to sift through them for relevance, then you do it with whatever help you can get in your office or *pro bono*, but we are not going to have attorneys who aren't even admitted in the case producing them directly to the government through their servers and their indices. You are responsible for their production to opposing counsel and the Court. You're in the case, Ms. Ali, and you're in the case, Ms. Peiffer, and it is your

role as attorneys to produce relevant documents. This is not happening here. This is everything that could possibly be. It's just not going to be. If the Court has to sit down and look through hundreds of these documents and determines there are a lot of irrelevant documents after I said you produce only relevant documents to the issue at hand, we are going to have problems. Not only are we going to look to sanctions or contempt, we are going to look to it from whoever is doing this. Because this isn't right. We've got one narrow issue, and there were just a couple of things with a couple of doctors and information. We've heard already all the testimony from the lay witnesses.

MR. SAMUELS: Your Honor, if I can clear something, I do think there has been an effort to narrow down the documents from the much larger subset so that they are trying to give us relevant documents, but the problem is they can't tell us whether they have given us the documents before. So then we have to look through and decide are these new documents or there's documents we have seen before. There is no way to cross-reference it, and that creates the difficulty, Your Honor. Thank you, Judge.

THE COURT: Ms. Ali.

MS. ALI: Thank you, Your Honor. If I could just respond to some of the points that Mr. Samuels made. The first is I think, as he just attempted to explain, I don't

well. This is the threshold issue that we need to get past to really be able to start preparing for the hearing.

So we have been laser focused on that, we have been spending, I think at this point, you know, many hundreds, if not thousands of hours trying to get through these documents, which were delivered to us in a manner that nobody expected, and we are working hard to get through this, to get this case to a hearing.

But I also can't control the witness availability. I'm happy to walk through -- I have the specific conflict from all the witnesses, but these are -- they are going to testify at trials, or out of the country, things like that.

THE COURT: I don't need that information now. Counsel, the first thing is you need to meet and confer, it seems to me, and only counsel that are admitted in this case will be part of the meet and confer. You are fully admitted. I looked at the docket sheet, and you are listed as a lead counsel on the docket sheet, both of you are. Ms. Peiffer and Ms. Ali are listed as lead counsel. I only require that one of you be there to meet and confer, but it's only record counsel. Whatever *pro bono* help you get, you get. But nobody has been admitted *pro hac vice*, and nobody's been admitted as a lead counsel except the two of you, Ms. Peiffer and Ms. Ali. So the meet and confer will be between record counsel. That would be one or the other

or both.  Ms. McKeel and Ms. Samuels.  Ms. Ward, she's got COVID.

MR. SAMUELS:  She does, Your Honor.

THE COURT:  She is with the Justice Department.

MR. SAMUELS:  She is with the capital case section up there.

THE COURT:  Either one of you, Ms. Peiffer or Ms. Ali, and you can meet and confer, and that needs to be done and completed on or before June 28th.  I would make it a week from today, but there is a holiday in there, and this gives you a few extra days.  So you meet and confer on or before June 28th, and you get what we have talked about, schedule on what you plan to present, the way the presentation is to go, and how you're going to exchange your documents, and any discussions that you need to make that you've mentioned here today, any discussions about the protective order, any discussions about how you're going to exchange the documents, any discussions about how you're going to do to the presentation, organization of the documents, what you've talked about today.  You both said it would be helpful at this juncture to sit down and meet and confer.

If you are not able to do that, and you cannot get along or whatever, I don't anticipate that with either set of counsel, but you need to notify the Court no later than

this as part of our meet and confer, but I think as part of this we may have some motions regarding the scope of the resumed hearing, but that's something we can bring to the Court at a later date if acceptable.  Thank you, Judge.

MS. ALI:  If I could just be briefly heard, Your Honor.  I understand the Court has ruled on Ms. Peiffer's request to withdraw from this case.  I make an oral motion that the Court stay that ruling pending appeal.  Here we think we are likely to proceed on the merits.  I understand the Court disagrees, but for the reasons that we stated in our motion and on the record here, most notably, we think there is a significant risk that Ms. Peiffer's continued representation will be materially limited, but that means she is operating under a conflict of interest here under Virginia Rule 1.1, 1.3(a) and 1.7(a)(2).

Again, for the reasons stated in our motion earlier today, we think Mr. Runyon will be irreparably harmed if he is not permitted to have additional counsel of record here given the circumstances that Ms. Peiffer is operating under in which she is not able to competently represent him going forward.  At the same time we have lined up potential substitute counsel.  I understand the Court has indicated that Your Honor will deny -- I mean, likely to deny.

THE COURT:  Let me just say.  I said you could have any *pro bono* help that you want, but I'm not inclined to

admit all these attorneys that you want *pro hac vice* in the case. We had a number of problems before with that. That's all I've said. You can get the help that you need. It's just you're responsible. The Court looks to counsel of record, lead counsel. That's where a Court looks to hold the attorney responsible.

So, consequently, I'm not going to admit *pro hac vice* because they don't have the same level of responsibility to the Court. We need lead counsel, and we've got two lead counsel. I also said that another attorney from Virginia Capital Resource Center could come into the case. So Ms. Peiffer doesn't have to be here for everything between now and then. As I understand it, her mother is very ill. She has Stage IV cancer. I don't know what her prognosis will be, and I'm not going there. But Ms. Peiffer has to stay in the case. You can take the lead, Ms. Ali. Moreover, she can ask to have someone else admitted from the Virginia Capital Resource Center to be substituted for her on the case. I have said that. The Court, and Mr. Runyon, and the government need the continuity of the Virginia Capital Resource Center, that has been in this case since 2015, as counsel, as co-lead attorney.

So that is what I said. You have not offered any substitute for Ms. Peiffer, just she gets out, and the whole

Capital Resource Center gets out, and that is what is not acceptable to the Court. I will not stay my order. My order remains. If you want to -- if Mr. Lee or Ms. Peiffer wants to submit substitute counsel from the Virginia Capital Resource Center, that's fine, and I will approve. But I'm not going to stay my order to let the Virginia Capital Resource Center out of this case completely at this late juncture. There's just been too much going on and prejudice to all concerned would occur. The motion to withdraw is not timely, is not in the interest of justice for Mr. Runyon, and I've considered all of your arguments. I'm not going to stay my ruling.

MS. ALI: Understood, Your Honor. Thank you.

THE COURT: Pardon?

MS. ALI: Understood, Your Honor.

THE COURT: All right. Is there anything else?

MR. SAMUELS: No, Your Honor, not from the United States. Thank you.

THE COURT: Then the Court stands in recess until Tuesday.

(Hearing adjourned at 1:37 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_____/s/_____x
                Jody A. Stewart
                X_____6-20-2023 _____x
                        Date

# EXHIBIT 9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division


DAVID ANTHONY RUNYON,

        Petitioner,

v.                                   CIVIL NO. 4:15cv108
                       [ORIGINAL CRIMINAL NO. 4:08cr16-3]

UNITED STATES OF AMERICA,

        Respondent.


## ORDER


At the request of the United States, the parties convened before the court on June 16, 2023, for a status hearing to address the parties' inability to reach an agreement regarding the timeline for discovery and the continuation of Petitioner's evidentiary hearing. See ECF Nos. 809 at 7; 796 (Order directing the parties to reach such an agreement)[1]; 817 (Minute Entry). Petitioner was present throughout the hearing. The court heard argument of counsel regarding (1) issues with discovery and in agreeing to a proposed schedule; and (2) Ms. Elizabeth Peiffer's Motion to Withdraw and Substitute Pro Bono Counsel, which was filed on June 7, 2023. ECF No. 814.

---

[1] After the court's initial order directing the parties to reach an agreement on a proposed schedule, the court subsequently granted three motions and requests to continue the deadline for such. See ECF Nos. 801, 807, 810.

I.

For the reasons stated from the bench, the court finds that Ms. Peiffer's withdrawal would not be in the "interests of justice." Martel v. Clair, 565 U.S. 648, 652 (2012); see Christeson v. Roper, 574 U.S. 373 (2015). To the contrary, in order to ensure that Petitioner receives adequate representation while maintaining continuity of counsel and the institutional knowledge of the Virginia Capital Representation Resources Center ("VCRRC")[2], the court finds that it is in the "interests of justice" for Ms. Peiffer to remain as counsel for Petitioner. See id.

Further, for the reasons stated from the bench, while the court is sympathetic to Ms. Peiffer's family situation, the court does not find that she has a conflict of interest necessitating withdrawal under Virginia Rules of Professional Conduct 1.7(a)(2), 1.1, or 1.3(a). See ECF No. 815 at 3-4 (Memorandum in Support of Ms. Peiffer's Motion to Withdrawal). Moreover, the court has considered the untimely filing of the Motion to Withdraw at the "eleventh hour" in these proceedings, and has fully heard the matter with all of the reasons and argument for Ms. Peiffer's withdrawal, together with the prejudice resulting to Petitioner and the United States, which opposed the withdrawal. The court concludes that the "interests of justice" would not be served by granting the Motion to

---

[2] The Virginia Capital Representation Resource Center has lead Petitioner's habeas proceedings since November 5, 2014. See ECF No. 410 (Order appointing Ms. Michele Brace of the VCRRC).

Withdraw. Accordingly, Ms. Peiffer's Motion to Withdraw, ECF No. 814, is **DENIED**.[3]

Ms. Peiffer and Ms. Ali shall remain counsel for Petitioner, distributing their duties as they see fit, as co-lead counsel. Ms. Peiffer and Ms. Ali may continue to utilize the services of pro bono attorneys, but no applications/motions from the individual attorneys for pro hac vice admission are currently before the court, as none have been submitted.[4] The court has expressed an intention, at this juncture, not to admit any additional attorneys to represent Petitioner in this limited matter on remand from the Fourth Circuit,[5] but it has no specific and proper applications to consider, with time being of the essence. See infra Part II.

## II.

Next, after hearing argument of counsel and for the reasons stated from the bench, the court **ORDERS** that all discovery be

---

[3] For the reasons stated from the bench, the court **GRANTED** Ms. Peiffer's Motion to Seal, ECF No. 812, regarding the declaration in support of her Motion to Withdrawal, ECF No. 814.

[4] Attached hereto as Exhibit A is a blank application form required by the Local Rules of this court. See Local Rule 83.1(E). The application has necessary information for consideration by the court to exercise its discretion for any individual pro hac vice appointment.

[5] The Fourth Circuit remanded this matter on only one limited issue: Whether Petitioner's trial counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of trial." United States v. Runyon, 994 F.3d 192, 204 (4th Cir. 2021).

completed by 5:00 P.M. on August 31, 2023. The evidentiary hearing shall resume on November 1, 2023, at 11:00 A.M., and shall begin at 11:00 A.M. each day thereafter, until completion. The parties are **DIRECTED** to meet and confer, on or before June 28, 2023, to agree on the form and method of document exchange; to address any issues with and resolutions thereto of the Protective Order, ECF No. 652; and to discuss the format, scope, and presentation of evidence at Petitioner's evidentiary hearing. If no agreement can be reached, or if further issues otherwise necessitate an additional status hearing, the parties are **DIRECTED** to notify the court of such need by 5 P.M. on June 28, 2023, after which the court will set a status hearing.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for Petitioner, the United States Attorney at Newport News, and Mr. Robert Lee of the Virginia Capital Representation Resource Center. Finally, the court **DENIED** a stay of this Order pending appeal at the conclusion of the hearing, for the reasons of record for its rulings.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

June 20, 2023*

* This Order was effective immediately after issued from the bench on June 16, 2023, at 1:40 P.M., at which time the hearing was adjourned.

4

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

APPLICATION TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D) AND LOCAL CRIMINAL RULE 57.4

In Case Number_____, Case Name _____

Party Represented by Applicant: _____

To: The Honorable Judges of the United States District Court for the Eastern District of Virginia

### PERSONAL STATEMENT

FULL NAME (no initials, please) _____

Bar Identification Number_____State _____

Firm Name _____

Firm Phone #_____Direct Dial #_____FAX # _____

E-Mail Address _____

Office **Mailing** Address _____

Name(s) of federal district court(s) in which I have been admitted _____

I certify that the rules of the federal court in the district in which I maintain my office extend a similar *pro hac vice* admission privilege to members of the bar of the Eastern District of Virginia.

I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar.

I hereby certify that, within ninety (90) days before the submission of this application, I have read the Local Rules of this Court and that my knowledge of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence is current.

I am ☐ am not ☐ a full-time employee of the United States of America, and if so, request exemption from the admission fee.

_____
(Applicant's Signature)

I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

_____          _____
(Signature)                                                              (Date)

_____          _____
(Typed or Printed Name)                                       (VA Bar Number)

Court Use Only:

Clerk's Fee Paid ☐ *or* Exemption Granted ☐

The motion for admission is GRANTED ☐ *or* DENIED ☐

_____          _____
(Judge's Signature)                                                  (Date)