No. 23-6

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

IN RE DAVID ANTHONY RUNYON,

*Petitioner.*

From the United States District Court for the
Eastern District of Virginia at Newport News

*United States of America v. Runyon*, No. 4:08-cr-00016
Hon. Rebecca Beach Smith

## BRIEF OF AMICUS CURIAE CATO INSTITUTE IN SUPPORT OF PETITIONER AND REVERSAL

ADAM L. BRAVERMAN
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
(858) 720-5151
abraverman@mofo.com

MATTHEW E. LADEW
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5743
mladew@mofo.com

JAY R. SCHWEIKERT
CATO INSTITUTE
1000 Massachusetts Ave. NW
Washington, DC 20001
(202) 216-1461
jschweikert@cato.org

*Counsel for Amicus Curiae*

JULY 14, 2023

**FED. R. APP. P. 26.1, LOCAL RULE 26.1(B)(2), AND FED. R. APP. P. 29(A)(4)(E) STATEMENTS**

The Cato Institute is a nonprofit entity operating under § 501(c)(3) of the Internal Revenue Code.  Amicus is not a subsidiary or affiliate of any publicly owned corporation or entity and does not issue shares of stock.

No counsel for either party authored this brief in whole or in part.  No one other than Amicus and its members made monetary contributions to its preparation or submission.  Amicus does not have a direct financial interest in the outcome of the litigation, nor does it have knowledge of any entities who would have any such interest.

**TABLE OF CONTENTS**

FED. R. APP. P. 26.1, LOCAL RULE 26.1(B)(2), AND FED. R. APP. P. 29(A)(4)(e) STATEMENTS ................................................................i

INTEREST OF AMICUS CURIAE ...............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

ARGUMENT ........................................................................................4

I.  THE AUTONOMY OF CRIMINAL DEFENDANTS IS A BEDROCK OF OUR CRIMINAL JUSTICE SYSTEM. ...............................4

    A.  The Framers of the Constitution made criminal defendant autonomy a cornerstone of the justice system....................................4

    B.  Congress has further strengthened criminal defendant autonomy. ..............................................................................9

II.  REJECTING A DEFENDANT'S CHOICE OF CAPABLE, WILLING COUNSEL VIOLATES HIS AUTONOMY. ...........................10

CONCLUSION .....................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. U.S. ex rel. McCann,*
  317 U.S. 269 (1942)..................................................................................7

*Belue v. Leventhal,*
  640 F.3d 567 (4th Cir. 2011) ................................................................11

*Boykin v. Alabama,*
  395 U.S. 238 (1969)..................................................................................7

*Brookhart v. Janis,*
  384 U.S. 1 (1966)......................................................................................7

*Carter v. Sowders,*
  5 F.3d 975 (6th Cir. 1993) .......................................................................8

*Christeson v. Roper,*
  574 U.S. 373 (2015)................................................................................11

*Don v. Nix,*
  886 F.2d 203 (8th Cir. 1989) ...................................................................8

*Faretta v. California,*
  422 U.S. 806 (1975)........................................................................2, 5, 6, 8

*Garcia v. State,*
  492 So.2d 360 (Fla. 1986) ........................................................................8

*Indiana v. Edwards,*
  554 U.S. 164 (2008)..................................................................................6

*Jones v. Barnes,*
  463 U.S. 745 (1983)..........................................................................2, 7, 8

*Martel v. Clair,*
  565 U.S. 648 (2012)..........................................................................3, 9, 12

*Martinez v. Court of Appeal,*
  528 U.S. 152 (2000)........................................................................5, 8, 10

*McKaskle v. Wiggins*,
   465 U.S. 168 (1984).................................................................................6

*McCoy v. Louisiana*,
   138 S. Ct. 1500 (2018)..........................................................................8

*Rock v. Arkansas*,
   483 U.S. 44 (1987)................................................................................6

*Roe v. Flores-Ortega*,
   528 U.S. 470 (2000)..............................................................................8

*Schlumberger Techs., Inc. v. Wiley*,
   113 F.3d 1553 (11th Cir. 1997) ..........................................................11

*State v. Bean*,
   762 A.2d 1259 (Vt. 2000)......................................................................8

*Strickland v. Washington*,
   466 U.S. 668 (1984)........................................................................10, 14

*Taylor v. Illinois*,
   484 U.S. 400 (1988)............................................................................7, 8

*Townsend v. Super. Ct.*,
   543 P.2d 619 (Cal. 1975).......................................................................8

*United States v. Gonzalez-Lopez*,
   548 U.S. 140 (2006)...........................................................2, 3, 7, 10, 13

*Weaver v. Massachusetts*
   528 U.S. 286 (2017)...............................................................................6

**Statutes**

18 U.S.C. § 3599 .................................................................................3, 9, 12

**Other Authorities**

Erica J. Hashimoto, *Resurrecting Autonomy: The Criminal
   Defendant's Right to Control the Case*, 90 B.U. L. REV. 1147
   (2010) ....................................................................................................4

7 *Guide to Judiciary Policy* § 620.10.20(b) (Dec. 29, 2022) ................12

Note, *Rethinking the Boundaries of the Sixth Amendment Right to Choice of Counsel*, 124 HARV. L. REV. 1550 (2011)..............................................2

**INTEREST OF AMICUS CURIAE**

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government.  Cato's Project on Criminal Justice was founded in 1999, and focuses in particular on the proper role of the criminal sanction in a free society, the scope of substantive criminal liability, the proper and effective role of police in their communities, the protection of constitutional and statutory safeguards for criminal suspects and defendants, the participation of citizens in the criminal justice system, and accountability for law enforcement officers.

Cato's concern in this case is protecting a well-settled principle of defendant autonomy in a criminal proceeding — specifically, that a defendant facing the death penalty is entitled to be represented by any capable and willing lawyer of that defendant's choosing.  Cato believes that its expertise in criminal law and defendant autonomy can assist the Court in deciding the proper scope of a defendant's choice of counsel in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The autonomy of a criminal defendant to exercise control over his case is fundamental to our criminal justice system — especially when it comes to Assistance of Counsel. The Constitution was forged in the heat of colonial America that valued the virtues of self-reliance and the "inestimable worth of free choice" when it comes to the right to defend oneself. *Faretta v. California*, 422 U.S. 806, 834 (1975). The Framers enshrined defendant autonomy in the Sixth Amendment, granting a defendant not only the right to counsel but also the right to "*personally . . .* make his defense." *Id.* at 819 (emphasis added). This principle of autonomy also undergirds the defendant's right to *choice* of counsel, *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006), and the defendant's "ultimate authority to make certain fundamental decisions regarding the case," *Jones v. Barnes*, 463 U.S. 745, 751 (1983), even when represented by counsel. In short, "the most ancient and fundamental element" of the "right to assistance of counsel . . . [is] the defendant's right to counsel of his own choosing." Note, *Rethinking the Boundaries of the Sixth Amendment Right to Choice of Counsel*, 124 HARV. L. REV. 1550, 1552 (2011).

Respecting a defendant's autonomy to choose his counsel is fundamental because it is the defendant who bears the ultimate consequences of a conviction. *Faretta*, 422 U.S. at 834. That is why a criminal defendant has the right to select the "counsel he believes to be best." *See Gonzalez-Lopez*, 548 U.S. at 146. "Different

2

attorneys will pursue different strategies" throughout each stage of a criminal case and "the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial." *Id.* at 150. It is for these reasons that the erroneous denial of counsel bears directly on every aspect of a criminal proceeding. *Id.* (citation omitted).

Nowhere is autonomy more important than when a defendant is facing the imposition of the death penalty. Congress enacted 18 U.S.C. § 3599 to provide federal capital defendants and capital habeas petitioners with enhanced rights of representation that "reflect a determination that quality legal representation is necessary in all capital proceedings to foster fundamental fairness in the imposition of the death penalty." *Martel v. Clair*, 565 U.S. 648, 659 (2012) (internal quotation marks and citation omitted). But in doing so, Congress was also careful to preserve a capital defendant's autonomy to choose his counsel by including a provision that explicitly permits the "replace[ment] by similarly qualified counsel upon the attorney's own motion *or upon motion of the defendant*." 18 U.S.C. § 3599(e) (emphasis added).

Here, Defendant David Runyon, was convicted and sentenced to death. This Court vacated the dismissal of Mr. Runyon's habeas petition and remanded the matter back to the district court to conduct a hearing on his claim of ineffective assistance of counsel for failure to investigate and present evidence of brain damage

3

and mental health.  It is clear that one of his two current attorneys, Elizabeth Peiffer, cannot devote the necessary time to adequately prepare for this hearing due to personal matters.  Mr. Runyon, facing the most important hearing of his life, sought to replace her with lawyers from Covington & Burling LLP.  While a district court may deny a substitution motion to thwart abusive delay, the court abused its discretion by denying Mr. Runyon's motion where there is no suggestion that he is seeking to delay this hearing and where he simply wants to ensure that he is afforded adequate representation during a hearing that will determine whether the death penalty is ultimately imposed.  This Court should allow Mr. Runyon his choice of counsel.

**ARGUMENT**

**I.      THE AUTONOMY OF CRIMINAL DEFENDANTS IS A BEDROCK OF OUR CRIMINAL JUSTICE SYSTEM.**

       **A.      The Framers of the Constitution made criminal defendant autonomy a cornerstone of the justice system.**

The old English criminal justice system relegated defendants to the sidelines of the most momentous occasions of their lives.  The judge examined and cross-examined witnesses.  Erica J. Hashimoto, *Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case*, 90 B.U. L. REV. 1147, 1165 (2010) ("*Resurrecting Autonomy*").  He questioned parties on the law.  *Id.*  In the 1730s, defense lawyers became more prevalent, but like other issues, whether they could

4

appear was still up to the judge. *Id.* In essence, a criminal defendant had to trust that the judge would protect him. *Id.*

Thankfully, the Framers recognized the perils such a system presents. And they roundly rejected it, trusting that criminal defendant autonomy — not the wisdom and mercy of judges — would safeguard the liberty of "a free people." *Cf. Martinez v. Court of Appeal*, 528 U.S. 152, 165 (2000) (Scalia, J., concurring in the judgment). Shortly after the revolution, twelve of thirteen states codified a right to counsel, rejecting the judge's assistance. *Resurrecting Autonomy*, *supra*, at 1167.

The Framers further enshrined criminal defendant autonomy in the Bill of Rights. The Sixth Amendment does not merely guarantee the right to counsel, but also guarantees the larger and more fundamental right "to make one's own defense personally" — to exercise one's autonomy. *Faretta*, 422 U.S. at 819.

In *Faretta v. California*, the Court examined the extensive legal history of the right to self-representation, underscoring the historical basis for defendant autonomy more generally. *Id.* at 821–32. The Court explained that self-representation is, in some sense, the ultimate expression of autonomy, as it necessarily includes the right to conduct the entirety of one's own defense personally. *Id.* at 819. In its discussion, the Court relied on Colonial Era sources, which explicitly grounded this right in the natural liberty of all free persons. For example:

- The Pennsylvania Frame of Government of 1682 provided that "in all courts all persons of all persuasions may freely appear in their own way." *Id.* at 828 n.37.

- The Georgia Constitution in 1777 secured "that inherent privilege of every freeman, the liberty to plead his own cause." *Id.* at 829 n.38.

- Thomas Paine, in support of the 1776 Pennsylvania Declaration of Rights, argued that people have "a natural right to plead [their] own case." *Id.* at 830 n.39.

Subsequent case law on self-representation reinforces the understanding reflected in *Faretta* that the right to a "personal defense" — the defendant's autonomy — is the fountainhead from which other procedural guarantees flow. For example, in *McKaskle v. Wiggins*, the Court explicitly confirmed that "the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy." 465 U.S. 168, 177–78 (1984); *see also Indiana v. Edwards*, 554 U.S. 164, 176 (2008) ("'[d]ignity' and 'autonomy' of individual underlie self-representation right"). In *Rock v. Arkansas*, the Court held that "an accused's right to present his own version of events in his own words" was "[e]ven more fundamental to a *personal defense* than the right of self-representation." 483 U.S. 44, 52 (1987) (emphasis added). And in *Weaver v. Massachusetts*, the Court explained that the right to self-representation "is based on the fundamental legal principle that a defendant must be allowed to

6

make his own choices about the proper way to protect his own liberty." 528 U.S. 286, 295 (2017).

The Court has protected not only self-representation, but also a defendant's choice of counsel. *Gonzalez-Lopez*, 548 U.S. at 144. The Assistance of Counsel Clause does not discuss "choice of counsel" in so many words, but the "right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee." *Id.* at 147–48. It is not just a procedural protection for the accused, but rather a reflection of the larger right to a personal defense. This component of the Sixth Amendment "commands, not that a trial be fair, but that a particular guarantee of fairness be provided — to wit, that the accused be defended by the counsel **he believes to be best**." *Id.* at 146 (emphasis added).

A criminal defendant's autonomy also protects other important rights. For example, it protects his right to decide whether to enter a guilty plea[1] (or the functional equivalent of a guilty plea),[2] waive the right to a jury trial,[3] waive the right

---

[1] *Jones*, 463 U.S. at 751; *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

[2] *Brookhart v. Janis*, 384 U.S. 1, 6–7 (1966) (counsel lacked authority to agree to a "prima facie" trial that was equivalent to a guilty plea).

[3] *Taylor v. Illinois*, 484 U.S. 400, 417–18 & n.24 (1988) (citing *Doughty v. State*, 470 N.E.2d 69, 70 (Ind. 1984)); *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 277 (1942).

to be present at trial,[4] testify on one's own behalf,[5] forego an appeal,[6] and concede guilt.[7] Courts have also held that defendants have the final say on whether to attend important pretrial proceedings,[8] waive the constitutional right to a speedy trial,[9] and enter an insanity plea.[10]

Such autonomy is critical, even when a defendant makes choices that are "ultimately to his own detriment." *Faretta*, 422 U.S. at 834. Indeed, "his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337, 350–351 (1970) (Brennan, J., concurring)). Defendant autonomy — like all liberty — entails both a privilege to decide and a responsibility to accept the consequences. A "criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State. Any other approach is unworthy of a free people." *Martinez*, 528 U.S. at 165 (Scalia, J., concurring in the judgment).

---

[4] *Taylor*, 484 U.S. at 417–18 & n.24 (citing *Cross v. United States*, 325 F.2d 629, 632–33 (D.C. Cir. 1963)).

[5] *Jones*, 463 U.S. at 751; *see also Rock*, 483 U.S. at 49 ("[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.").

[6] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Jones*, 463 U.S. at 751.

[7] *McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018).

[8] *Carter v. Sowders*, 5 F.3d 975, 981–82 (6th Cir. 1993) (deposition); *Don v. Nix*, 886 F.2d 203, 206–207 (8th Cir. 1989) (same); *Garcia v. State*, 492 So.2d 360, 363–64 (Fla. 1986) (pretrial conference).

[9] *Townsend v. Super. Ct.*, 543 P.2d 619, 624 (Cal. 1975) (distinguishing between the constitutional and statutory right).

[10] *See State v. Bean*, 762 A.2d 1259, 1267 (Vt. 2000) (collecting citations).

**B.      Congress has further strengthened criminal defendant autonomy.**

By enacting 18 U.S.C. § 3599, Congress sought to "promote effective representation for persons threatened with capital punishment." *See Martel*, 565 U.S. at 660. Section 3599 "requires lawyers in capital cases to have more legal experience" than previously required, "authorizes higher rates of compensation . . . and provides more money for investigative and expert services." *Id.* at 659. Critically, § 3599(e) allows a defendant to substitute his counsel — a grant of autonomy to correct "serious representational problems" and "to promote effective representation." 18 U.S.C. § 3599(e); *Martel*, 565 U.S. at 660. In line with Congress's goals, the Supreme Court held that such substitution motions should be decided in the "interests of justice." *Martel*, 565 U.S. at 658.

*        *        *

The takeaways are simple. The Framers designed a criminal justice system that would honor a defendant's autonomy to make a "personal defense." *See Rock*, 483 U.S. at 52 (1987). The Supreme Court has reinforced it. And the statutory scheme that Congress enacted strengthens this autonomy, including by allowing a capital-case defendant to substitute his counsel whenever the "interests of justice" demand it. *See Martel*, 565 U.S. at 662. Against this backdrop, this Court should uphold Mr. Runyon's autonomy to choose his own counsel.

9

## II.    REJECTING A DEFENDANT'S CHOICE OF CAPABLE, WILLING COUNSEL VIOLATES HIS AUTONOMY.

The choice of counsel is so fundamental that the Supreme Court has recognized that its denial in a criminal trial is a "structural error" that "is not subject to harmless-error analysis." *Gonzalez-Lopez*, 548 U.S. at 150, 152. That is because the defendant's — or the court's — choice of counsel will significantly impact the direction of the case. *Id.* at 150. The lawyer shapes "the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument." *Id.* A lawyer counsels and influences her client on key decisions like plea bargains and appeals. *Id.* In capital cases, the right lawyer can be the difference between life and death.

Our criminal justice system is premised on adversarial proceedings, and effective, zealous defense counsel is therefore "critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). But when a defendant is denied his choice of counsel, someone else — whether it be the judge or prosecutor — necessarily chooses for him. That transfer of power would have been odious to the Framers, "who were suspicious enough of governmental power — including judicial power — that they insisted upon a citizen's right to be judged by an independent jury of private citizens." *Martinez*, 528 U.S. at 165 (Scalia, J., concurring in the judgment).

10

The district court erred when it denied Mr. Runyon his choice of counsel. It abused its discretion by dismissing his concerns regarding Ms. Peiffer's personal conflict of interest when it denied his substitution motion. *See Christeson v. Roper*, 574 U.S. 373, 378 (2015) (per curiam) (reversing denial of a § 3599(e) substitution motion because the district court failed to acknowledge the existing lawyers' conflict of interest); *see also* Tr. of Proceedings, *United States v. Runyon*, No. 4:08-cr-16 (E.D. Va. Jun. 16, 2023), ECF No. 819 ("ECF No. 819") at 8:22–25 (disregarding Ms. Peiffer's conflict of interest because the Court had not received any ethics opinion). And, the court refused to substitute the lawyers at Covington for Ms. Peiffer, or to entertain *pro hac vice* applications, despite the presumption that well-qualified attorneys can gain *pro hac vice* admission. *See Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1554 (11th Cir. 1997) (requiring district courts to find unethical conduct before denying *pro hac vice* admission); *cf. Belue v. Leventhal*, 640 F.3d 567, 576 (4th Cir. 2011) (noting the wide rejection of the view that *pro hac vice* status is "granted and held at the grace of the court," and endorsing the modern practice of holding *pro hac vice* attorneys to standards no "different or more stringent than those imposed upon regular members of the district court bar" (internal citations and quotation marks omitted)). The district court reasoned that granting the motions would be logistically burdensome and took issue with having out-of-state counsel, noting the performance of Mr. Runyon's prior out-of-state counsel. ECF No. 819 at

11

21:15–17, 21:21–24. While a district court may deny a substitution motion to thwart abusive delay, *see Martel*, 565 U.S. at 662–66, there is no suggestion that Mr. Runyon is using this request as a means to delay this hearing. To the contrary, Covington will provide high-quality representation and devote significant resources to the case. Covington's team of lawyers would help prepare witnesses, review documents, and draft motions — all moving the case forward with *no delay* — and all at no expense to the court or the government.

And the fact that Kathryn Ali will remain in the case does not impact this analysis. Congress intended to provide a second lawyer in serious capital cases like Mr. Runyon's. Congress granted district courts authority to appoint a second counsel in capital cases if it has "good cause" to do so, considering "the seriousness of the possible penalty" and "the unique and complex nature of the litigation." *See* 18 U.S.C. § 3599(d). And the Criminal Justice Act Guidelines instruct that "judicial officers should consider appointing *at least* two attorneys" in death penalty proceedings given their "complex, demanding, and protracted nature." 7 *Guide to Judiciary Policy* § 620.10.20(b) (Dec. 29, 2022) (emphasis added). Good cause for a second attorney is satisfied here, as even the district court agreed. That is why it previously appointed Ms. Ali as Mr. Runyon's second counsel, noting "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case." Order, ECF No. 810 at *1–2 (E.D. Va.

May 17, 2023).  But denying Mr. Runyon's motion to substitute Ms. Peiffer, who cannot devote time to this case, with lawyers from Covington effectively leaves Mr. Runyon with only one attorney who cannot, by herself, handle this case's complexity.  Mr. Runyon's autonomy to exercise control over his case and replace Ms. Peiffer with "counsel he believes to be best," *Gonzalez-Lopez*, 548 U.S. at 146, must be respected as it is he who will bear the ultimate consequences of the hearing with his life.

## CONCLUSION

By denying Mr. Runyon his choice of counsel, the district court violated his autonomy and his fundamental "right to make his defense" as he sees fit.  This Court should grant the writ, reverse the district court's order, and remand with instructions to allow lawyers from Covington & Burling LLP to represent Mr. Runyon during these capital proceedings.

Dated:  July 14, 2023

Respectfully submitted,

*/s/ Adam L. Braverman*

ADAM L. BRAVERMAN
MORRISON & FOERSTER LLP
12531 High Bluff Drive
Suite 100
San Diego, CA 92130
(858) 720-5151
abraverman@mofo.com

MATTHEW E. LADEW
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5743
mladew@mofo.com

JAY R. SCHWEIKERT
CATO INSTITUTE
1000 Massachusetts Ave. NW
Washington, DC 20001
(202) 216-1461
jschweikert@cato.org

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. 29(a)(5) and 32(a)(7)(B) because it contains 3,021 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2022 in 14-point Times New Roman font.

Dated:  July 14, 2023                                          */s/ Adam L. Braverman*
                                                                  Adam L. Braverman

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system on July 14, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated:  July 14, 2023                              /s/ *Adam L. Braverman*
                                                                    Adam L. Braverman