No. 23-6

# IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

*In re* DAVID ANTHONY RUNYON,

*Petitioner*

On Petition for a Writ of Mandamus
to the United States District Court for the Eastern District of Virginia
*United States v. Runyon*, No. 4:08-cr-00016-RBS-DEM-3
(Hon. Rebecca Beach Smith)

## BRIEF FOR THE ASSOCIATION OF PRO BONO COUNSEL, 33 LAW FIRMS, AND GEORGE KENDALL AS *AMICI CURIAE* SUPPORTING PETITIONER

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

Jaime A. Santos
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
*JSantos@goodwinlaw.com*

*Counsel for the Association of Pro Bono Counsel and Goodwin Procter LLP
(additional Amici Curiae and counsel listed at end of brief)*

July 14, 2023

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1(b)(1), *Amici Curiae* each state that they have no parent corporation and that no publicly traded corporation owns 10% or more of its stock. *Amici* are not aware of any publicly held corporation that has a direct financial interest in the outcome of this appeal.

**TABLE OF CONTENTS**

INTEREST OF THE *AMICI CURIAE* ...................................................................1

INTRODUCTION ...................................................................................................2

ARGUMENT ..........................................................................................................4

I. Pro bono representation by attorneys at law firms is highly effective and indispensable to ensuring access to justice, especially in capital cases. .............4

    A. Pro bono counsel provide critical legal services to millions.........................4

    B. Pro bono counsel are especially effective and necessary in capital post-conviction proceedings....................................................................7

    C. Robust pro bono work is also important to attorneys' professional development, morale, and quality of life. ....................................................13

II. The district court's refusal to admit the Covington attorneys *pro hac vice* frustrates the important values of pro bono legal services and sends a troubling signal to other courts....................................................................15

CONCLUSION......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daniel v. Comm'r*,
    822 F.3d 1248 (4th Cir. 2016) ...........................................................12

*Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*,
    490 U.S. 296 (1989)..............................................................................4

*McFarland v. Scott*,
    512 U.S. 849 (1994)..............................................................................8

*Shinn v. Ramirez*,
    142 S. Ct. 1718 (2022)..........................................................................6

*United States v. Runyon*,
    994 F.3d 192 (4th Cir. 2021) .............................................................12

*United States v. Sampson*,
    68 F. Supp. 3d 233 (D. Mass. 2014)...................................................10

*Wiggins v. Smith*,
    539 U.S. 510 (2003)............................................................................10

*Williams v. Stirling*,
    914 F.3d 302 (4th Cir. 2019) .............................................................12

**Statutes**

18 U.S.C. § 3005 ............................................................................................8

18 U.S.C. § 3599(a)(2)....................................................................................8

18 U.S.C. § 3599(e) ........................................................................................8

18 U.S.C. § 3599(g)(2)............................................................................12, 13

**Other Authorities**

*2017 Report of the Ad Hoc Committee to Review the Criminal Justice
    Act*, https://bit.ly/3D3CYRM.............................................................5, 6

iii

ABA, *Project Surpasses 400 Prisoners Assisted by Pro Bono Counsel*, https://bit.ly/44zsKV5.................................................................10

John Bliss & Steven A. Boutcher, *Rationalizing Pro Bono: Corporate Social Responsibility and the Reinvention of Legal Professionalism in Elite American Law Firms*, *in* Global Pro Bono: Causes, Context, and Contestation (2022) ................................................7, 14

Benjamin C. Carpenter, *A Solution Hidden in Plain Sight: Closing the Justice Gap by Applying to Legal Aid the Market Incentives That Propelled the Pro Bono Revolution*, 25 Chap. L. Rev. 1 (2021).........................7

Scott L. Cummings & Deborah L. Rhode, *Managing Pro Bono: Doing Well by Doing Better*, 78 Fordham L. Rev. 2357, 2359 (2010) ......................................................................................................7

Andrew Gelman, James S. Liebman, Valerie West & Alexander Kiss, *A Broken System: The Persistent Patterns of Reversals of Death Sentences in the United States*, J. Empirical Legal Stud. 209 (2004) ..................9

Justice Ruth Bader Ginsburg, *In Pursuit of the Public Good: Lawyers Who Care* (Apr. 9, 2001), https://bit.ly/46HJRWp...............................5

Robert A. Katzmann, *Themes in Context,* in The Law Firm and the Public Good (Robert A. Katzmann ed., 1995) ......................................4

David J. Kessler, *Learning the Legal Ropes with the Death Penalty*, 35 U. Tol. L. Rev. 567 (2004) ........................................................11

George T. Lewis, *The Business Case for Pro Bono*, 73 Baylor L. Rev. 241 (2021)....................................................................................14

Nat'l Ass'n of Criminal Defense Lawyers, *Gideon at 50: A Three-Part Examination of Indigent Defense in America, Part I — Rationing Justice: The Underfunding of Assigned Counsel Systems* (2013), https://bit.ly/3XM6DbV ...............................................5

Eve Brensike Primus, *Defense Counsel and Public Defense*, *in* 3 Reforming Criminal Justice (Erik Luna ed., 2017) ..............................5

Pro Bono Institute, *2023 Report on the Law Firm Pro Bono Challenge Initiative*, https://bit.ly/3rpu8uW ............................................6

iv

Julia Tarver, *Swimming Upstream, A Comment on the Death Penalty*,
35 U. Tol. L. Rev. 553 (2004) .............................................................................11

Deborah L. Rhode, *Access to Justice* (2004) ............................................................4

Rule III(L), Individual Practices in Civil Cases of Judge Analisa
Torres, U.S. District Court for the Southern District of New York
(Mar. 7, 2023), https://bit.ly/3XI31Y8 .............................................................15

Rule J, Standing Order Regarding Motion Practice of Judge Kelley,
U.S. District Court for the District of Massachusetts,
http://bit.ly/3DbeplO (Feb. 8, 2023)..................................................................15

Standing Order Regarding Courtroom Opportunities for Relatively
Inexperienced Attorneys of Judge Sorokin, U.S. District Court for the
District of Massachusetts, https://bit.ly/3XMdbHa (Mar. 15, 2017)..................15

U.S. Court of Appeals for the Ninth Circuit, *Pro Bono Program*
(updated 2019), https://bit.ly/43iNAXB.......................................................14, 15

## INTEREST OF THE *AMICI CURIAE*[1]

The Association of Pro Bono Counsel ("APBCo") is a membership organization of more than 270 attorneys and practice group managers who run pro bono practices in over 130 of the world's largest law firms. APBCo members generate and manage the vast majority of the roughly *5 million pro bono hours* dedicated annually by law firms in the AmLaw 200. APBCo is dedicated to improving access to justice through law firm pro bono programs and to serving as a unified voice for the national law firm pro bono community.

APBCo is joined by 33 Law Firms and George Kendall, the Director of the Public Service Initiative at Squire Patton Boggs. These *Amici* have robust pro bono practices that heavily invest their resources (both financial and human) in pro bono legal work. Among other matters, they represent criminal defendants pro bono in state and federal courts across the country, routinely appearing *pro hac vice* to reach jurisdictions in which there is the most need for pro bono counsel.

*Amici* believe in the benefits of pro bono service as a matter of professional obligation, ethical duty, and attorney development and enrichment. They also believe that permitting the participation of pro bono counsel helps to ensure the

---

[1] All parties have consented to the filing of this brief. No party or party's counsel authored this brief in whole or in part. No person—other than the *Amici Curiae*, their members, or their counsel—contributed money that was intended to fund preparing or submitting this brief.

proper administration of justice in the United States. *Amici* are gravely concerned by the district court's refusal to allow pro bono counsel to appear on behalf of a death-penalty defendant simply because they would need to be admitted *pro hac vice*.

## INTRODUCTION

This mandamus petition arises from a highly unusual decision to bar the *pro hac vice* admission of attorneys from Covington & Burling LLP who volunteered to represent the defendant, Mr. Runyon, on a pro bono basis during his federal capital post-conviction proceedings. The district court significantly hamstrung their ability to effectively assist the defendant by refusing to allow them to appear as counsel in the case solely because they would need to be admitted *pro hac vice*.

*Amici* urge this Court to grant the mandamus petition. Even beyond the implications for the proceedings here, the district court's order sends a troubling signal to other courts that the work of pro bono counsel is somehow superfluous or distracting. That is demonstrably incorrect in run-of-the-mill cases, and especially in capital cases, where pro bono counsel working outside the relevant jurisdiction frequently become involved and make extraordinary contributions to the administration of justice.

Pro bono work is crucial both to indigent defendants and to the legal profession. Criminal defendants who cannot afford an attorney are too often

underserved. Where the client's life hangs in the balance, though, the need for well-resourced, diligent, and free representation could not be more urgent. The demand for effective pro bono counsel in such cases is high, but the supply is scarce: Given the enormous resources required, it is often difficult to find pro bono counsel willing to take on these cases. Yet, in many cases, pro bono counsel from outside the state—including many attorneys associated with *Amici*—have appeared *pro hac vice* and provided indigent clients with the same outstanding representation that paying clients obtain. The clients, the criminal justice system, and the attorneys involved all benefit enormously from this common practice.

In the face of all this good, the district court simply brushed aside the indispensable pro bono assistance of the Covington attorneys in this death-penalty case. It did so apparently for reasons of perceived orderliness that, to the extent they have any weight at all, cannot approach the seriousness and value of pro bono legal work in cases of this kind. If the district court's decision is allowed to stand, Mr. Runyon's legal representation will be unjustly constrained. And beyond this case, *Amici* are concerned that the district court's approach may be emulated by other judges. Such an approach would severely frustrate *Amici*'s ability to offer first-rate legal representation pro bono, including representation in capital cases that arise predominantly in regions outside the areas where many of *Amici*'s members are located and ordinarily practice.

3

## ARGUMENT

**I.    Pro bono representation by attorneys at law firms is highly effective and indispensable to ensuring access to justice, especially in capital cases.**

"[I]n a time when the need for legal services among the poor is growing and public funding for such services has not kept pace, lawyers' ethical obligation to volunteer their time and skills *pro bono publico* is manifest." *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989). For decades, attorneys have taken this charge seriously, stepping in where publicly funded representation is inadequate or nonexistent. Nowhere are their services more necessary and effective than in capital cases like Mr. Runyon's.

### A.    Pro bono counsel provide critical legal services to millions.

The primary rationale underpinning pro bono legal work is "the value to society of addressing unmet legal needs." Deborah L. Rhode, *Access to Justice* 146 (2004). As officers of the court, lawyers have a special "duty to further equality before the law"—the "duty to serve those unable to pay is thus not an act of charity or benevolence, but rather one of professional responsibility." Robert A. Katzmann, *Themes in Context, in* The Law Firm and the Public Good 7 (Robert A. Katzmann ed., 1995). As Justice Ginsburg put it in her remarks on pro bono lawyering, "[i]t is

4

incumbent on anyone who regards lawyering not simply as a trade but as a true profession . . . to assure that legal aid will be there, when needed."[2]

The need for free legal services is immense, particularly in criminal cases and post-conviction proceedings. "The vast majority of American criminal defendants are indigent, and funding for public defense is grossly insufficient for providing adequate legal representation to such a large client base." Eve Brensike Primus, *Defense Counsel and Public Defense*, *in* 3 Reforming Criminal Justice 123-24 (Erik Luna ed., 2017) (discussing the enormous caseload of public defenders). Nor can appointed counsel entirely remedy this deficiency. Indeed, a fifty-state survey revealed "staggeringly low rates of compensation for assigned counsel across the nation," making it impossible to procure effective representation.[3]

In the federal system, too, "many defender offices are severely understaffed." *2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act*, at XX, https://bit.ly/3D3CYRM. And while courts may appoint funded counsel from a panel of attorneys under the Criminal Justice Act, "many panel attorneys in particular are indeed ill-equipped and insufficiently compensated; often without the resources or knowledge to hire experienced investigators, expert witnesses, and

---

[2] Justice Ruth Bader Ginsburg, *In Pursuit of the Public Good: Lawyers Who Care* (Apr. 9, 2001), https://bit.ly/46HJRWp.

[3] Nat'l Ass'n of Criminal Defense Lawyers, *Gideon at 50: A Three-Part Examination of Indigent Defense in America, Part I — Rationing Justice: The Underfunding of Assigned Counsel Systems* 8 (2013), https://bit.ly/3XM6DbV.

interpreters when a case requires such services; and lacking access to the level of training and guidance that both institutional public defenders and prosecutors have readily available." *Id.* at XVII.

The challenges in post-conviction proceedings are even greater. Navigating the restrictions of AEDPA, not to mention the often enormous underlying factual record and complicated legal issues, is often a Herculean undertaking. And the consequences of ineffective representation in post-conviction proceedings are notoriously difficult to undo. *See, e.g.*, *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) ("a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel").

Against this backdrop, the value added by attorneys from the private sector who volunteer as pro bono counsel can hardly be overstated. In 2022, according to a survey of 124 law firms that signed the Law Firm Pro Bono Challenge, attorneys at these firms worked *nearly 5 million pro bono hours*. Pro Bono Institute, *2023 Report on the Law Firm Pro Bono Challenge Initiative* 1, https://bit.ly/3rpu8uW. This work ran the gamut of legal services, but "criminal justice reform was . . . the most common type of work cited." *Id.* at 10. Indeed, "the pro bono revolution of the last 30 years has undoubtedly brought legal services to millions of individuals who otherwise would have gone unrepresented." Benjamin C. Carpenter, *A Solution*

*Hidden in Plain Sight: Closing the Justice Gap by Applying to Legal Aid the Market Incentives That Propelled the Pro Bono Revolution*, 25 Chap. L. Rev. 1, 4 (2021).

Moreover, "[l]arge firms have increasingly formalized their pro bono programs by establishing written pro bono policies, outlining the firm's practical commitment to pro bono, providing billable hour credit to attorneys as an incentive to volunteer for pro bono cases, and even hiring managers to coordinate the firm's pro bono practice."  John Bliss & Steven A. Boutcher, *Rationalizing Pro Bono: Corporate Social Responsibility and the Reinvention of Legal Professionalism in Elite American Law Firms*, *in* Global Pro Bono: Causes, Context, and Contestation 85 (2022).  This commitment to pro bono work has proven resilient, even "recession-proof":  in 2009, when "the nation's most profitable firms suffered their worst financial year since the early 1990s, they nonetheless managed to devote more hours than ever to public service."  Scott L. Cummings & Deborah L. Rhode, *Managing Pro Bono: Doing Well by Doing Better*, 78 Fordham L. Rev. 2357, 2359 (2010).

**B.      Pro bono counsel are especially effective and necessary in capital post-conviction proceedings.**

Capital cases are extraordinary in every way—the gravity of the penalty, the complexity of the legal and factual issues, and the sheer resources necessary to mount a proper defense or effectively mount a collateral attack on a conviction or death sentence.  Given the "complexity of [the Supreme Court's] jurisprudence in

this area," "[a]n attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial." *McFarland v. Scott*, 512 U.S. 849, 855 (1994).

Although in federal post-conviction proceedings, indigent defendants facing a death sentence have the statutory right to counsel, 18 U.S.C. § 3599(a)(2), "the current state of public defense in capital habeas cases" "stands out as "especially troubling." *2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act*, *supra*, at XXI. The cases are exceedingly complex and there is just a one-year deadline to file: this "limited time frame combined with heavy caseloads means that habeas attorneys miss deadlines, sealing their clients' fates." *Id.* In 2009, for example, "nine defendants in Texas were scheduled for execution because their attorneys failed to file habeas petitions on time." *Id.*

Congress has likewise recognized that the extraordinary nature of capital cases requires additional resources to protect defendants' rights. Defendants in federal capital cases are entitled to two appointed counsel, including "at least 1 [who is] learned in the law applicable to capital cases." 18 U.S.C. § 3005. And indigent federal capital defendants are entitled to maintain their appointed counsel through appeal and post-conviction proceedings. *See* 18 U.S.C. § 3599(e).

The Eastern District of Virginia's Criminal Justice Act Plan likewise provides that, "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least two attorneys" in capital

§ 2255 cases. CJA Plan § XIV.E, https://bit.ly/43lourb. Other guidance is more specific: "In cases where appellate proceedings have been completed . . . and the death penalty has been imposed, two qualified post conviction attorneys should be assigned to represent the defendant." Nat'l Legal Aid & Defender Ass'n, *Standards for the Appointment and Performance of Counsel in Death Penalty Cases (Black Letter)* 2.1, https://www.nlada.org/defender-standards/death-penalty/black-letter. Counsel in these cases also require "significant assistance from expert witnesses and other specialized service providers," including "mitigation specialists," because capital habeas proceedings often demand "the investigation, or re-investigation, of matters which might have been but were not litigated" at earlier phases. *2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act*, *supra*, at 191.

Unsurprisingly, "the more time and resources [attorneys] had for investigators and experts for habeas petitions, the greater the probability that their petition would be successful." *Id.* at 196. Moreover, a systematic study of *all* death penalty sentences in the United States between 1973 and 1995 found that approximately 75% percent of reversals at the post-conviction review stage were due to prejudicial errors surrounding the trial itself: "egregiously incompetent lawyering, prosecutorial misconduct or suppression of evidence, misinstruction of jurors, or biased judges or jurors." Andrew Gelman, James S. Liebman, Valerie West & Alexander Kiss, *A Broken System: The Persistent Patterns of Reversals of Death Sentences in the*

*United States*, 1 J. Empirical Legal Stud. 209, 219 (2004). These are precisely the kind of errors that skilled and thorough lawyering—including by *Amici*—is well-suited to uncover in post-conviction proceedings. *See, e.g.*, *Wiggins v. Smith*, <u>539 U.S. 510</u> (2003) (granting habeas relief based on ineffective assistance of counsel in capital case litigated pro bono by *Amicus* Jenner & Block LLP); *United States v. Sampson*, <u>68 F. Supp. 3d 233, 235-236</u> & n.3 (D. Mass. 2014) (recognizing the "significant *pro bono* contribution made by" a team of lawyers from Williams & Connolly LLP appointed for post-conviction proceedings who succeeded in uncovering juror misconduct that resulted in a new trial).

In light of these challenges, multiple attorneys working pro bono are frequently brought on board in capital cases—often from large law firms from different regions of the country. To take one example, the ABA's Death Penalty Representation Project has long partnered with law firms to recruit "pro bono lawyers who provide direct representation to death-sentenced prisoners who have no counsel or have been appointed counsel lacking the necessary skills or resources to provide effective representation." ABA, *Project Surpasses 400 Prisoners Assisted by Pro Bono Counsel*, https://bit.ly/44zsKV5. Using this partnership model, that Project has assisted over 400 defendants sentenced to death—successfully obtaining a non-death sentence in a remarkable 112 cases. *Id.* The Project's Director & Chief Counsel have informed the undersigned counsel, after a review of the Project's data,

that approximately 80% of the attorneys placed by the Project are from outside of the state where the case is being litigated, and that the vast majority of those attorneys appear *pro hac vice*.

Pro bono counsel, especially from large firms like Covington, can be particularly effective in death-penalty cases because they generally have the capacity to devote hours, energy, financial resources, and technology (such as discovery platforms) to a case. *See, e.g.*, Julia Tarver, *Swimming Upstream, A Comment on the Death Penalty*, 35 U. Tol. L. Rev. 553, 562 (2004) (describing "the arsenal of resources" large firms can bring to capital cases). In one case, for example, an attorney at a large out-of-state firm reported that "[w]e hired a 'dream team' of psychological and other mental health experts because, despite the overwhelming evidence, the State was disputing Johnny's mental retardation." *Id.*

In a different case, one then-associate at a large firm reported: "I have worked harder and spent more hours on Tommy's case than on all of the school work I ever did. This includes my work as an undergraduate, graduate, and law school student combined." David J. Kessler, *Learning the Legal Ropes with the Death Penalty*, 35 U. Tol. L. Rev. 567, 574 (2004); *see, e.g.*, *United States v. Lighty*, 82023 WL 2932960 (D. Md. Apr. 13, 2023) (resentencing death-row inmate after 12 years of pro bono representation by Venable LLP defendant in post-conviction proceedings, during which time 14 lawyers spent more than 3,200 hours on his case); *State v.*

11

*Parker*, Case No. 82000352CFCXMX (19th Jud. Cir. Martin Cty. Fla. Mar. 31, 2023) (death-row inmate resentenced to life with the possibility of parole after 35 years of pro bono representation by approximately 80 Proskauer Rose LLP attorneys). These examples reflect the longstanding commitment of *Amici* and their attorneys to pro bono advocacy—a commitment that is never more important than when the client's life is on the line.

Underscoring the point, several notable instances in which this Court has affirmed habeas relief in capital cases due to counsel's failure to present mitigating evidence have involved pro bono counsel from large firms, appearing *pro hac vice*. *See, e.g.*, *Williams v. Stirling*, 914 F.3d 302, 306 (4th Cir. 2019) (affirming decision granting capital habeas petition on "a claim of ineffective assistance of counsel resulting from trial counsel's failure to investigate potentially mitigating evidence of Fetal Alcohol Syndrome" at penalty phase); *Daniel v. Comm'r*, 822 F.3d 1248 (4th Cir. 2016) (similar).[4]

That's not to say that the judiciary has no ability to administer the taxpayer resources dedicated to defendants in capital habeas cases, which are governed by statute. 18 U.S.C. § 3599(g)(2). But when counsel stand willing to help litigate a federal post-conviction case when the defendant's life is on the line at no cost to

---

[4] As this Court has noted, the circumstances in Mr. Runyon's case "are much like those we recently considered in *Williams*." *United States v. Runyon*, 994 F.3d 192, 208 (4th Cir. 2021).

taxpayers, wielding *pro hac vice* admission as a sword to prevent the defendant from having his chosen counsel represent him is itself a miscarriage of justice—and one that makes it more difficult for the defendant's counsel to ensure that justice is administered fairly during the federal post-conviction proceedings themselves.

**C.      Robust pro bono work is also important to attorneys' professional development, morale, and quality of life.**

Beyond the inherent value in serving the greater good, lawyers and law firms also provide pro bono services in part due to what Judge Katzmann once called "enlightened self-interest." Katzmann, *supra*, at 7. "[A] heightened concern with the public good can improve the quality of a lawyer's life, and have positive effects on lawyering and professionalism. . . . A law firm that devotes more time to pro bono work of interest to its lawyers is likely to find morale improved and the opportunities for the refinement of legal skills enhanced." *Id.*; *see also* Rhode, *supra*, at 147 ("Strong public service programs can produce tangible, although hard to quantify, organizational benefits in terms of retention, recruitment, reputation, morale, and job performance.").

From the perspective of professional development, pro bono work in a law firm setting is especially valuable to junior attorneys working under the supervision of experienced counsel. That is precisely what Covington sought here—the Covington team proposed to the district court included two senior lawyers with

13

significant experience in capital and habeas cases (Nicholas Xenakis[5] and Peter

Swanson[6]), one of whom previously worked in the federal public defender's office

in the Eastern District of Virginia, and numerous associates who would be working

under their supervision.  Pet. Add., Ex. 7.

For junior attorneys, this work "can provide valuable training, contact, trial

experience, and leadership opportunities."  Rhode, *supra*, at 147; *see also* Bliss &

Boutcher, *supra*, at 86 ("Individual lawyers are motivated to do pro bono for a

variety of reasons, including personal values and commitments to social justice, the

desire to acquire legal skills and training, and as an important mechanism for

developing social networks and future clients.").  George T. Lewis, *The Business*

*Case for Pro Bono*, 73 Baylor L. Rev. 241, 244 (2021) ("Young lawyers in big firms

have always complained that it took a long time before they took their first

deposition, tried their first jury trial, or handled their first appeal.  Pro bono work

can solve that problem." (footnotes omitted)).

Numerous courts have amplified the importance of junior attorneys obtaining

this critical experience as well.  The Ninth Circuit, for example, promises oral

argument to counsel participating in its pro bono program.  *See* U.S. Court of

Appeals for the Ninth Circuit, *Pro Bono Program* 1 (updated 2019),

---

[5] https://www.cov.com/en/professionals/x/nicholas-xenakis
[6] https://www.cov.com/en/professionals/s/peter-swanson

https://bit.ly/43iNAXB.  Similarly, many federal judges now specifically encourage and facilitate these types of stand-up opportunities for junior attorneys through their chambers practices.[7]

Pro bono work is a win-win-win proposition:  It benefits the individuals who receive the free legal services, the attorneys who provide them, and the courts that reap the rewards of excellent advocacy as junior attorneys' legal skills develop.

## II.    The district court's refusal to admit the Covington attorneys *pro hac vice* frustrates the important values of pro bono legal services and sends a troubling signal to other courts.

In light of the enormous benefits that pro bono work offers to indigent defendants, the criminal justice system, and pro bono attorneys, the district court's refusal to allow *pro hac vice* admission to pro bono counsel is troubling.  It is profoundly unfair for Mr. Runyon, who is facing death without the representation of experienced attorneys who are willing and able to assist him.  And if other courts follow a similar practice, that would severely hamper the efforts of pro bono counsel to assist indigent criminal defendants, especially in capital cases which arise

---

[7] *See, e.g.*, Rule III(L), Individual Practices in Civil Cases of Judge Analisa Torres, U.S. District Court for the Southern District of New York (Mar. 7, 2023), https://bit.ly/3XI31Y8 ("Participation of Junior Attorneys"); Rule J, Standing Order Regarding Motion Practice of Judge Kelley, U.S. District Court for the District of Massachusetts, http://bit.ly/3DbeplO (Feb. 8, 2023) ("Courtroom Opportunities for Relatively Inexperienced Attorneys"); Standing Order Regarding Courtroom Opportunities for Relatively Inexperienced Attorneys of Judge Sorokin, U.S. District Court for the District of Massachusetts, https://bit.ly/3XMdbHa (Mar. 15, 2017).

15

disproportionately outside the major coastal hubs of large law firms.  The district court's approach to *pro hac* admissions would therefore jeopardize the routine, effective, and necessary practice of out-of-state pro bono counsel appearing in capital cases.

The district court suggested that admitting the attorneys *pro hac* was unnecessary because the court did not prohibit them "from acting *pro bono*" by, for example, ghost-writing motions.  Pet. Add., Ex. 8 at 25; *see id.* at 26.  But fact-intensive capital cases require far more work than drafting motions.  If the attorneys are not admitted then they will be unable to examine witnesses at the hearing or *argue* any pre-hearing motions (including discovery motions).  Mr. Runyon's only active counsel would therefore have to assume control of witness and exhibit preparation for every witness and item of evidence, and to master every issue that may require oral argument.  Mr. Runyon would be much better served by allowing his counsel to divide the labor.  To make matters worse, the district court also prohibited Covington from using its file-sharing site to produce documents to the government.  *Id.* at 27-28.  That restriction further curtails the limited assistance Covington can offer and massively increases the burden on Mr. Runyon's counsel of record, who hails from a two-person firm that unquestionably does not have the same resources as Covington.

The district court's restrictions on out-of-jurisdiction pro bono counsel would also threaten to make such invaluable service less attractive to prospective pro bono counsel. Attorneys (and firms) may be less willing to volunteer their assistance if they are allowed to play only a very minor role, preferring instead to devote their limited time and energy to matters in which they can fully engage. The regrettable result would be that capital defendants outside of regions with large concentrations of attorneys at private firms will find it even harder to obtain effective pro bono counsel.

## CONCLUSION

This Court should grant the petition for a writ of mandamus.

Dated: July 14, 2023                    Respectfully submitted,

/s/ Steven H. Schulman                  /s/ Jaime A. Santos

Steven H. Schulman                      Jaime A. Santos
AKIN GUMP STRAUSS HAUER & FELD          GOODWIN PROCTER LLP
LLP                                     1900 N Street, NW
2300 N. Field Street                    Washington, DC 20036
Suite 1800                              (202) 346-4000
Dallas, TX  75201-2481                  JSantos@goodwinlaw.com
202.887.4071
sschulman@akingump.com                  Jesse Lempel
                                        GOODWIN PROCTER LLP
Counsel for Akin Gump Strauss           100 Northern Avenue
Hauer & Feld LLP                        Boston, MA 02210

                                        Counsel for Amici Curiae the Association
                                        of Pro Bono Counsel and Goodwin
                                        Procter LLP

/s/ Robert Grass                        /s/ Brad Robertson

Robert Grass                            Brad Robertson
ARNOLD & PORTER KAYE SCHOLER            BRADLEY ARANT BOULT CUMMINGS LLP
LLP                                     1819 5th Avenue North
250 West 55th Street                    Suite 200
New York, NY 10019                      Birmingham, AL 35203
212 836-8064                            205-521-8188
Robert.Grass@arnoldporter.com           brobertson@bradley.com

Counsel for Arnold & Porter Kaye        Tiffany M. Graves
Scholer LLP                             BRADLEY ARANT BOULT CUMMINGS LLP
                                        188 East Capitol Street
                                        Suite 1000
                                        Jackson, MS 39201
                                        601-592-9971
                                        tgraves@bradley.com

                                        Counsel for Bradley Arant Boult
                                        Cummings LLP

18

*/s/ David H. Herrington*

David H. Herrington
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York NY 10006
212 225 2266
*dherrington@cgsh.com*

*Counsel for Cleary Gottlieb Steen &
Hamilton LLP*

*/s/ Philip T. Inglima*

Philip T. Inglima
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
202.624.2795
*pinglima@crowell.com*

*Counsel for Crowell & Moring LLP*

*/s/ Amelia T.R. Starr*

Amelia T.R. Starr
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
212-450-4000
*amelia.starr@davispolk.com*

*Counsel for Davis Polk & Wardwell
LLP*

*/s/ Joanna P. Boisen*

Joanna P. Boisen
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206-757-8005
*joannaboisen@dwt.com*

*Counsel for Davis Wright Tremaine LLP*

*/s/ Benjamin C. Weinberg*

Benjamin C. Weinberg
DENTONS US LLP
233 S. Wacker Drive
Suite 5900
Chicago, IL  60606
312-876-3101
*Ben.weinberg@dentons.com*

*Counsel for Dentons US LLP*

*/s/ RJ Zayed*

RJ Zayed
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis MN 55402
612-472-6711
*Zayed.rj@dorsey.com*

*Counsel for Dorsey & Whitney LLP*

19

*/s/ James L. Volling*

James L. Volling
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center, 90 South Seventh Street
Minneapolis, Minnesota 55402
(612) 766-7000
*james.volling@faegredrinker.com*

*Counsel for Faegre Drinker Biddle & Reath LLP*

*/s/ Lousene M. Hoppe*

Lousene M. Hoppe
FREDRIKSON & BYRON, PA
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
(612) 492-7402
*lhoppe@fredlaw.com*

*Counsel for Fredrikson & Byron, PA*

*/s/ Meghan Rissmiller*

Meghan Rissmiller
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th floor
Washington, D.C. 20005
(202) 777-4500
*meghan.rissmiller@freshfields.com*

Lee P. Rovinescu
Rebecca C. Kerr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022

*Counsel for Freshfields Bruckhaus Deringer US LLP*

*/s/ Katherine Marquart*

Katherine Marquart
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
213.229.7475
*KMarquart@gibsondunn.com*

*Counsel for Gibson, Dunn & Crutcher LLP*

*/s/ Caroline Heller*

Caroline Heller
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
212.801.2165
*Caroline.Heller@gtlaw.com*

*Counsel for Greenberg Traurig, LLP*

*/s/ Robert R. Stauffer*

Robert R. Stauffer
Katya Jestin
Randall Mehrberg
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
*RStauffer@jenner.com*

*Counsel for Jenner & Block LLP*

20

/s/ Joshua C. Toll
Joshua C. Toll
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
202 737 8616
jtoll@kslaw.com

Counsel for King & Spalding LLP

/s/ Roy T. Englert, Jr.
Roy T. Englert, Jr.
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
2000 K Street NW
Washington, DC 20006
202.775.4503
REnglert@kramerlevin.com

Counsel for Kramer Levin Naftalis &
Frankel LLP

/s/ Paul M. Thompson
Paul M. Thompson
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8032
pthompson@mwe.com

Counsel for McDermott Will &
Emery LLP

/s/ Rachel L. Strong
Rachel L. Strong
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
202.739.3000
rachel.strong@morganlewis.com

Counsel for Morgan, Lewis & Bockius
LLP

/s/ Meaghan VerGow
Meaghan VerGow
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5504
mvergow@omm.com

Counsel for O'Melveny & Myers LLP

/s/ Rene Kathawala
Rene Kathawala
ORRICK HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5100
rkathawala@orrick.com

Counsel for Orrick Herrington &
Sutcliffe LLP

/s/ Caitlin Annatoyn
Caitlin Annatoyn
PAUL HASTINGS LLP
71 S Wacker Drive, Ste. 45
Chicago, IL 60606
Caitlin.Annatoyn@paulhastings.com

Counsel for Paul Hastings LLP

21

/s/ William C. Silverman
William C. Silverman
Michelle K. Moriarty
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
(212) 969-3000
*wsilverman@proskauer.com*

*Counsel for Proskauer Rose LLP*


/s/ Michael A. Levey
Michael A. Levey
Dawn R. Caldart
QUARLES & BRADY LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202-4428
*michael.levey@quarles.com*

Melanie C. Kalmanson
QUARLES & BRADY LLP
101 E. Kennedy Blvd., Suite 3400
Tampa, FL 33602
*melanie.kalmanson@quarles.com*

*Counsel for Quarles & Brady LLP*

/s/ Marc L. Greenwald
Marc L. Greenwald
Sarah Heaton Concannon
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
202.538.8122
*sarahconcannon@quinnemanuel.com*

*Counsel for Quinn Emanuel Urquhart &
Sullivan, LLP*


/s/ Christopher P. Conniff
Christopher P. Conniff
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
212-596-9036
*christopher.conniff@ropesgray.com*

Jennifer A. Rikoski
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
617-951-7354
*Jennifer.Rikoski@ropesgray.com*

*Counsel for Ropes & Gray LLP*

22

*/s/ Brenna K. DeVaney*
Brenna K. DeVaney
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLC
155 N. Wacker Drive
Chicago, Illinois  60606
(312) 407-0142
*brenna.devaney@skadden.com*

*Counsel for Skadden, Arps, Slate,
Meagher & Flom LLC*

*/s/ Paul S. Lee*
Paul S. Lee
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
202 429 3086
*plee@steptoe.com*

*Counsel for Steptoe & Johnson LLP*

*/s/ Nicholas N. Spear*
Nicholas N. Spear
Glenn C. Bridgman
Halley W. Josephs
Rohit D. Nath
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
(310) 789-3100
*nspear@susmangodfrey.com*

*Counsel for Susman Godfrey L.L.P.*

*/s/ W. Warren Hamel*
W. Warren Hamel
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
410.244.7563
*wwhamel@venable.com*

*Counsel for Venable LLP*

*/s/ Stacey Kushlefsky*
Stacey Kushlefsky
Wesley R. Powell
Michael S. Schachter
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY  10019-6099
212 728 8621
*skushlefsky@willkie.com*

*Counsel for Willkie Farr & Gallagher
LLP*

*/s/ Michael R. Heyison*
Michael R. Heyison
WILMER CUTLER PICKERING HALE AND
DORR LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000
*michael.heyison@wilmerhale.com*

*Counsel for Wilmer Cutler Pickering
Hale and Dorr LLP*

*/s/ George H. Kendall*
George H. Kendall
SQUIRE PATTON BOGGS (US) LLP
1211 Avenue of the Americas, 26th
Floor
New York, New York  10036
212 872 9834
*george.kendall@squirepb.com*

*Counsel for George H. Kendall*

24

## APPENDIX

**List of *Amici*:**

1.    The Association of Pro Bono Counsel

2.    Akin Gump Strauss Hauer & Feld LLP

3.    Arnold & Porter Kaye Scholer LLP

4.    Bradley Arant Boult Cummings LLP

5.    Cleary Gottlieb Steen & Hamilton LLP

6.    Crowell & Moring LLP

7.    Davis Polk & Wardwell LLP

8.    Davis Wright Tremaine LLP

9.    Dentons US LLP

10.   Dorsey & Whitney LLP

11.   Faegre Drinker Biddle & Reath LLP

12.   Fredrikson & Byron, PA

13.   Freshfields Bruckhaus Deringer LLP

14.   Gibson, Dunn & Crutcher LLP

15.   Goodwin Procter LLP

16.   Greenberg Traurig, LLP

17.   Jenner & Block LLP

18.   King & Spalding LLP

19.   Kramer Levin Naftalis & Frankel LLP

20.   McDermott Will & Emery LLP

21.    Morgan Lewis & Bockius LLP

22.    O'Melveny & Myers LLP

23.    Orrick Herrington & Sutcliffe LLP

24.    Paul Hastings LLP

25.    Proskauer Rose LLP

26.    Quarles & Brady LLP

27.    Quinn Emanuel Urquhart & Sullivan, LLP

28.    Ropes & Gray LLP

29.    Skadden, Arps, Slate, Meagher & Flom LLP

30.    Steptoe & Johnson LLP

31.    Susman Godfrey L.L.P.

32.    Venable LLP

33.    Willkie Farr & Gallagher LLP

34.    Wilmer Cutler Pickering Hale and Dorr LLP

35.    George H. Kendall, Director, Public Service Initiative, Squire Patton Boggs (US) LLP

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g)(1), I hereby certify that the foregoing Brief of the Association of Pro Bono Counsel and 33 Law Firms Supporting Petitioners complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(a)(5). According to the word count feature of Microsoft Word, the word-processing system used to prepare the brief, the brief contains 3,895 words.

I further certify that the foregoing brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman font, a proportionally spaced typeface.

Dated:  July 14, 2023                                   /s/ Jaime A. Santos
                                                        Jaime A. Santos

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ Jaime A. Santos
Jaime A. Santos