IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| In re: DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| _____ | ) | No. 23-6 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| *Defendant.* | ) | |

**United States' Response Opposing Petition for Mandamus**

The United States respectfully opposes defendant David Anthony Runyon's

petition for a writ of mandamus. Mandamus "is a 'drastic and extraordinary'

remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for

D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60

(1947)). But Runyon identifies no extraordinary circumstances warranting

mandamus relief and instead seeks to disrupt a district judge's ordinary measures

of trial management. "[Q]uestions of trial management are quintessentially the

province of the district courts." *United States v. Martinovich*, 810 F.3d 232, 241

(4th Cir. 2016), and "courts traditionally have exercised considerable authority 'to

1

manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).  And "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable,'" as required for mandamus relief.  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (plurality op.)); *see also In re City of Virginia Beach*, 42 F.3d 881, 884 (4th Cir. 1994).

In asking this Court to grant six *pro hac vice* applications that have never been filed in the district court—or even submitted for the first time to this Court—Runyon ignores critical context for the district court's statements showing that the court was squarely concerned trial management and that the thrust of the court's efforts were to keep the proceedings on track.

This Court remanded Runyon's case to address a single claim of ineffective assistance of counsel—whether trial counsel was ineffective in failing to present at the penalty phase putative brain damage and mental health evidence.  *United States v. Runyon*, 994 F.3d 192, 208–09 (4th Cir. 2021).  The district court held an evidentiary hearing on that claim that spanned six days.  Those hearings were continued only after the court learned that Runyon failed to disclose evidence that undermines the claim on which this Court remanded.  Specifically, defense counsel

very belatedly disclosed that Runyon's expert, Dr. Merikangas, had, in fact, received and reviewed the MRI and PET scans of Runyon that had been conducted before the penalty phase, that trial counsel did communicate with Dr. Merikangas after he had completed his August 5, 2009 preliminary report, and that Dr. Merikangas recommended that a mental health defense *not* be invoked. These points are highly damaging to Runyon's remaining ineffectiveness claim. Trial counsel's conduct must be evaluated using the information available to counsel "as of the time of counsel's conduct," *Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)), and a defense attorney's decisions about what to investigate further in such circumstances "are due 'a heavy measure of deference.'" *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011) (quoting *Strickland*, 466 U.S. at 691).

Following the revelation of defense counsel's material discovery violation, the district court permitted two defense attorneys to withdraw from representing Runyon because of the misconduct—circumstances Runyon does not and cannot dispute now—and in the wake of those withdrawals, the court ensured that Runyon had two appointed attorneys, Kathryn Ali and Elizabeth Peiffer, both admitted on his motion. The court further indicated that it would not admit six additional attorneys from Covington & Burling "unless there are other factors to consider."

3

(ECF No. 819 at 26).  The district court reiterated its willingness to entertain further argument in its order that attached a blank sample *pro hac vice* application.

In denying Peiffer's motion to withdraw, the court noted that Peiffer's employer, the Virginia Capital Representation Resource Center, "has led [Runyon's] habeas proceedings since November 5, 2014," and retaining Peiffer in the case would "ensure that [Runyon] receives adequate representation while maintaining the continuity of counsel and the institutional knowledge of the Virginia Capital Representation Resource Center."  (ECF No. 820 at 2 & n.2).  As to the Covington attorneys who now seek mandamus relief on Runyon's behalf, the district court said that Peiffer and Ali "may continue to utilize the services of *pro bono* attorneys, but no applications/motions from the individual attorneys for *pro hac vice* admission are before the court, as none have been submitted."  (*Id*. at 3). Reiterating how late in the § 2255 proceedings matters were at this stage, the court explained that it "has expressed an intention, *at this juncture*, not to admit any additional attorneys to represent [Runyon] *in this limited matter on remand from the Fourth Circuit*, but [the court] *has no specific and proper applications to consider*, with time being of the essence."  (*Id*.) (emphasis added).

After the court's order, none of the six attorneys from Covington & Burling actually submitted applications to be admitted *pro hac vice*, and did not address the court's request about "other factors" to consider.

In seeking mandamus relief, Runyon and his amici draw literally no distinction between (a) a defendant who is initiating a motion under 28 U.S.C. § 2255 and seeks as his sole counsel an attorney who must be admitted *pro hac vice* and (b) a defendant in Runyon's vastly different circumstances.

To receive mandamus relief, a party must satisfy three requirements: (1) "the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires"; (2) the petitioner has "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable'"; and "even if the first two prerequisites have been met, the issuing court must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81. Runyon satisfies none of these conditions.

First, because not one of the six Covington attorneys actually submitted a motion to be admitted *pro hac vice* and declined to offer the district court the "other factors to consider" that they now raise on appeal, Runyon has failed to show that there are no other adequate means to attain the relief he desires. There were straightforward and highly efficient means that Runyon could have pursued in the district court to seek the relief he wants—submitting to the district court *pro hac vice* applications and a memorandum making the points he raises now. *See, e.g., In re Alford*, 560 F. App'x 113, 113 (3d Cir. 2014) (rejecting mandamus petition requesting judicial recusal; "Alford has not filed a recusal motion in the

5

District Court, and thus cannot make the required showing that he has 'no other adequate means to attain the desired relief.'").  This Court has said many times in the context of direct appeals that "we are 'a court of review, not of first view,'" *Common Cause v. Lewis*, 956 F.3d 246, 253 n.6 (4th Cir. 2020) (quoting *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006)).  Although this is not a direct appeal, it makes no sense for this Court to rule on six *pro hac vice* applications that have never been filed in the district court or intervene in case management determinations that the district court had no need to address in depth given the lack of argument before it.  Moreover, in this case, the district court initially denied a *pro hac vice* application for defense counsel Susanne Bales before later admitting her when circumstances changed in this case.  (ECF No. 439, 772).

Second, in seeking mandamus, Runyon and his amici point to no case even remotely like Runyon's case where all that remains is the continuation of an evidentiary hearing that has already lasted six days on a single issue that was remanded, where the continuation of the proceedings was caused by the defendant's own highly material discovery violation, and where, as the district court reasonably viewed matters, a defendant has two appointed attorneys, is receiving the assistance of six more from a major D.C. law firm, and the realistic stakes boil down to a dignitary interest in who steps to the podium and addresses

the court. The district court cannot be said to have violated a clear and indisputable right.

In an effort to bolster why the Covington attorneys' *pro hac vice* status matters, defense counsel complain that under the district court's ruling, local counsel has to be responsible for the discovery platform that is used, but the district court reasonably wanted local counsel to be in control of how discovery was completed to allow the court greater control over any further problems with discovery. Having had the defense team's discovery go terribly wrong once, the court understandably wanted the maximum accountability for any further errors. Runyon has no clear and indisputable right about whose discovery platform is used.

Federal courts in their case management authority can set deadlines for litigants, regulate discovery, limit the duration of hearings, restrict a party's authority to raise new claims after six days of an evidentiary hearing, ensure compliance with the mandate rule, and limit which attorney may address a witness or claim. The district court effectively did nothing more here. Runyon cannot establish a violation of a clear and indisputable right. "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *In re United States*, 945 F.3d 616, 629 (2d Cir. 2019) (quoting *Allied Chem. Corp.*, 449 U.S. at 36).

Moreover, Runyon's and his amici's claims about choice of counsel must navigate around a series of problems that preclude finding a clear and indisputable right. Settled law establishes that there is no Sixth Amendment right to counsel on collateral review. *See, e.g., Davila v. Davis*, 582 U.S. 521, 524 (2017); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). And any Sixth Amendment right to choice of counsel does not extend to defendants who need appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). As to a statutory right to counsel, Runyon received two appointed counsel under 18 U.S.C. § 3599 whom he accepted, and in analyzing substitutions of counsel under § 3599(e), the Supreme Court has construed § 3599(e) to adopt an interest-of-justice standard—not a choice-of-counsel standard. *See Martel v. Clair*, 565 U.S. 648, 658 (2012). Runyon therefore has no constitutional source and identifies no statutory source for a right to choice of counsel for the Covington attorneys, particularly in a scenario when he is represented by two counsel of his choosing. In this context, he cannot identify a clear and indisputable right to choice of counsel that was violated.

Third, mandamus relief is not appropriate here, even if the first two requirements for mandamus relief were satisfied, because Runyon and his amici exaggerate the stakes in this particular case, given the contributions of Runyon's eight attorneys and the limited issues remaining in the case, as well as counsel's

failure to present the issues squarely before the district court. This is not a case that calls for "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney*, 542 U.S. at 380. This Court has "observed additionally that a writ of mandamus should not issue unless irreparable harm is likely," and here it is not. *In re City of Virginia Beach*, 42 F.3d at 884 (citation omitted).

## Background

Runyon murdered Cory Allen Voss in late April 2007 after Voss's wife, Catherina, and her lover, Michael Draven, paid Runyon to carry out the murder so that Catherina and Draven could collect life insurance proceeds and terminate Cory's and Catherina's marriage. Runyon's convictions and death sentence were upheld after extensive litigation on direct appeal. *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014).

Three years after the Supreme Court denied review, the district court denied defendant's motion under 28 U.S.C. § 2255 in an equally extensive opinion reviewing Runyon's 18 claims for relief. *Runyon v. United States*, 228 F. Supp.3d 569 (E.D.Va. 2017). On appeal, after this Court granted a certificate of appealability on four issues, this Court affirmed the denial of relief on all but one portion of one of defendant's claims and ordered an evidentiary hearing on that issue—namely, whether defense counsel was ineffective at the penalty phase for

9

failing to investigate adequately mitigation evidence about defendant's potential mental illness and brain injury. *United States v. Runyon*, 994 F.3d 192, 208–09 (4th Cir. 2021). Defendant had raised a broader claim alleging ineffectiveness in presenting mitigation evidence, but this Court denied defendant's claim that his counsel were ineffective in investigating or presenting evidence on defendant's putative "generational trauma" and "Psycho-Social History."

At the time of the remand, Runyon had long been represented in his § 2255 by Michele Brace of the Virginia Capital Representation Resource Center (VCRRC) and Dana Chavis, then supervisor of the capital habeas unit of the Federal Defender Services of Eastern Tennessee, Inc. (FDSET). In November 2021, Brace moved to withdraw for medical reasons and requested that she be replaced by Elizabeth Peiffer, also an employee of VCRRC and member of the EDVA bar. (ECF 648). Brace amply described her circumstances of personal illness, represented that she "already has withdrawn from her representation of the petitioner in her other active habeas matter," and sought equally to withdraw from Runyon's § 2255. (ECF 648 at 1). Peiffer's resume was attached, identifying her as learned and competent counsel to proceed in the capital litigation. The government did not object, and the district court granted the withdrawal and substitution in November 2021. (ECF 649).

On January 27, 2022, the parties entered a joint scheduling and discovery order.  (ECF Nos. 656 and 657).  Runyon later filed motions for discovery and early production of Jencks that were denied.  (ECF Nos. 737, 739, 767, and 775).

In August 2022, Runyon filed a motion to appoint Susanne Bales, another FEDSET attorney, pro hac vice (ECFs 691, 692), and renewed the motion on January 13, 2023.  The district court granted the motion in part, limited to a set of designated witnesses.  (ECF Nos. 725, 726, 751, 772).

On January 31, 2023, the United States filed a memorandum (ECF No. 743), addressing Runyon's motion for the early production of Jencks materials, and explained that the materials had already been produced.  The United States noted, however, that Runyon had not disclosed such materials and made a reciprocal request.  (ECF No. 743 at 7).  On February 6, 2023, Runyon disputed the United States' claims of untimely discovery disclosure and accused the United States of failing to comply with the agreed upon disclosure deadlines.  (ECF No. 771).  Counsel stated, "It is simply incorrect to suggest that Mr. Runyon's counsel has not complied with the agreed-upon disclosure schedule or that the government 'has not received reciprocal disclosures from certain of the Petitioners experts, including Dr.

Siddartha Nadkarni.'" (ECF No. 771, p.3).  Runyon also emphasized, "Any and all conflicting statements, no matter how minor, must be disclosed." *Id.* at 4.

The evidentiary hearing commenced on February 7, 2023.  By that time, approximately two years had elapsed since this Court's remand.  Runyon called thirteen witnesses to testify, including trial counsel (now) Judge Stephen Hudgins, Jon Babineau, and Lawrence Woodward.  Also called to testify were lay witnesses Maria Runyon, Mark Runyon, David Dombrowski, Wren Fleming, Scott Linker, Tiffany Linker, Deborah and Robert Seeger, Jeffrey Harris and (mitigation specialist) Sheila Cronin.  Often, witnesses were asked about information pertaining to Runyon's psycho-social history, or transgenerational and cultural trauma.  The government objected frequently that the testimony was beyond the scope of the remand, and the district court agreed.  For example, after such an objection during David Dombrowski's testimony regarding generational trauma, the court asked habeas counsel whether the scope of the claim was limited to evidence of brain injury and mental illness.  Counsel agreed but requested permission to elicit the information for purposes of the record.

On the morning of the fifth hearing day, February 13, 2023, Chavis left two documents on the courtroom table of the attorneys for the United States that had not been produced previously in discovery or as part of any Jencks material.  At minimum, these documents were Jencks material for defense witnesses Sheila

Cronin and Judge Hudgins.  At the end of the day of testimony, the United States alerted the district court that it was concerned that discovery had not been provided in a complete or timely manner.  The district court questioned Runyon's counsel about the matter.  Chavis acknowledged giving the document to the United States before the hearing but was uncertain whether it been produced previously.  Chavis continued that Runyon did not introduce the document because the United States objected.

On February 14, 2023, before the hearing began and Dr. Merikangas was scheduled to testify remotely, Bales approached the government's counsel and advised that there were documents that were discoverable regarding Dr. Merikangas' testimony that had not been produced to the United States and that counsel was working on the production.  In court, Bales disclosed to the court that certain documents had not been disclosed to the United States and that their office was working to produce the documents.  The district court questioned Runyon's counsel and adjourned until 5:00 p.m. for Runyon's counsel to report about the production's status.  At 5:00 p.m., the court reconvened, and Bales disclosed that they lacked a record to determine what had previously been disclosed to the United States and that they did not know how long it would take to produce the documents, but that counsel was working diligently on the matter.  At the end of the hearing, the court ordered Runyon's counsel to produce all discoverable and

13

Jencks documents to the attorneys for the United States and set a deadline of February 15, 2023, by 3:30 p.m.

The initial production of documents provided on February 14, 2023, established, at minimum, that: (1) trial counsel did have communications with Dr. Merikangas after he had completed his August 5, 2009, preliminary report and this communication included Dr. Merikangas' recommendation that a mental health defense *not* be invoked; and (2) that Dr. Merikangas had, in fact, received and reviewed the MRI and PET scans of Runyon that had been conducted before the onset of the penalty phase. These two facts alone conflict with information tendered in pleadings, declarations and examinations that have been presented to the district court and this Court. For example, contrary to many representations about Dr. Merikangas and the scans, the following documents have been provided:

- A "Memo To File" from attorney Hudgins that reflects an August 13, 2009 telephone conference with attorney Woodward and Dr. Merikangas. According to this document, Dr. Merikangas relayed he did not believe that the defense was in a good position to present a mental health defense because of the government's rebuttal. Dr. Merikangas indicated that the examination of Runyon was not abnormal and that Runyon was not truthful. Dr. Merikangas indicated that unless there was something glaring in the MRI or PET scan, he did not recommend a mental health defense, and even if there were a defect shown in the scans or testing, it would be a risk the defense counsel would have to weigh as to whether or not to present a mental health defense absent a very bad injury or defect.

- Billing records from attorney Woodward that reflect an entry entitled "Memo to file regarding Dr. Merikangas interview" on August 13,

14

2009; and an entry entitled "Memo to file regarding mental health evidence/interview with Dr. Merikangas" on August 16, 2009. To date, neither memo has been found and produced.

- Two invoices from Dr. Merikangas to attorney Hudgins, both from August 2009; one reflects "MRI and PET 8/17/2009 Review" for two hours at $100 per hour accompanied by a court reimbursement invoice signed by Dr. Merikangas that has the written description of "review of MRI and PET scans"; and the other invoice reflects "MRI and PET 8/17/2009" also for two hours at $100 per hour.

(ECF No. 793-1).

On February 15, 2023, Chavis emailed the district court and parties that she could not meet the deadline for production or answer the government's questions regarding discovery. The district court convened a hearing to assess the status of the discovery production. Bales took the lead in addressing the court, candidly conceding that the task was likely much larger than anticipated. She explained that, due to Chavis' actions earlier that day, the team had been unable to access its physical workspace or the internet.

Chavis explained her belief that files had been overlooked due to possible file-naming issues and her mistaken belief that the undisclosed items were duplicates. She admitted to preventing her colleagues from accessing the defense files, which she characterized as her own. Chavis explained that her co-counsel were leveling "false accusations" against her. (ECF No. 788-2 at 4).

After hearing from all three of Runyon's counsel, including Peiffer, the district court observed that there was a breakdown in Runyon's team and suggested

15

that Runyon be consulted as to whether Chavis should move to withdraw. Chavis then moved to withdraw from representation, which all parties, including Runyon, agreed should happen. Bales also moved to withdraw from her representation, citing the general advice of her supervisor and the possibility of an imputed conflict. The court initially denied the motion pending briefing.

On February 17, 2023, Bales moved to withdraw. (ECF No. 788). The court granted Bales' motion, finding the appearance of imputed conflict. (ECF No. 796). The evidentiary hearing was continued so that proper disclosures could be made to the United States. (ECF No. 796).

On February 24, 2023, the Federal Defender filed an affidavit with the court, outlining habeas counsels' agreed upon plan to transfer all files to VCRRC and Peiffer and her office. (ECF No. 795). On February 27, 2023, Peiffer submitted a declaration to the court, confirming that she had reached resolution regarding Runyon's file transfer from FDSET. (ECF No. 797-1). This declaration adopted the schedule set forth by FDSET (ECF No. 795-1), promising completion of the scanning and transfer of files by April 3, 2023.

Between October 2021 and February 3, 2023 (before the evidentiary hearing), habeas counsel produced 4,809 pages of information. Following the February 14, 2023, continuance, habeas counsel produced an additional 1,613 pages through February 20, 2023. Nothing further was produced, despite promises

of a "rolling discovery plan" until June 1, 2023, and the government received approximately 315 pages followed by approximately 137 pages on June 15, 2023 (excepting approximately 300 pages that were entirely redacted). Nothing further has been received.

On April 12, 2023, Runyon filed a motion for the appointment of Kathryn Ali to represent him with Peiffer. (ECF No. 802). Runyon also sought "to be represented in this matter on a pro bono basis by attorneys from Covington & Burling LLP, whose pro hac vice motions are forthcoming." (ECF No. 803). Runyon alleged receiving "at least fifty-seven bankers boxes and a hard drive containing 187,284 documents" and acknowledged that the "hearing was stopped at least in part due to the production of documents not previously disclosed." (ECF No. 803 at 4). Runyon also claimed that "a number of expert and lay witnesses remain to be called." (ECF No. 803 at 5). Runyon also asserted that the requested appointment is critical for the parties "and for any subsequent appeal." (*Id.*).[1] The court granted Ali's appointment "for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing." (ECF No. 810). Although no *pro hac vice* motion was, or has ever been, presented to the district

---

[1] Before the district court's decision to continue the hearing, the government addressed the myriad of discovery issues and highlighted that the few pages turned over were apparently claim dispositive. The government, as the victim of the violations, sought to waive further discovery for purposes of the limited hearing (ECF No. 793), deemed moot by the continuance. (ECF No. 799).

court from the Covington attorneys, the court put the parties on notice that "the court does not intend to appoint, or to otherwise admit pro hac vice, any additional attorneys. To the extent that petitioner utilizes additional counsel in a supporting pro bono role, he will do so without the appointment or involvement of, or reimbursement from, the court." (ECF 810 at 2).

Meanwhile, on April 14, 2023, Runyon sought another continuance to submit a proposed discovery schedule, again discussing an obligation to "conduct an independent review to ensure that all appropriate disclosures are made." (ECF No. 806 at 6). The government requested a status conference, which was held on June 16, 2023. Ultimately, the court granted Runyon's requested continuance to complete discovery by August 31, 2023, and ordered that the hearing will recommence on November 1, 2023. (ECF No. 817).

Meanwhile, Peiffer filed a motion seeking to withdraw and substitute counsel, (ECF No. 814, 815, 816) which was heard at the June 16, 2023 hearing. Peiffer provided limited information in support of her motion. Peiffer provided a sealed, undated declaration (filed with her motion on June 7, 2023) in which she explained that her mother fell ill on April 28, 2023, requiring Peiffer's assistance. Without question, her personal circumstances have become challenging, as she and others seek to provide the requisite care and attention to her mother.

18

Peiffer informed the court of her general review of the Virginia Rules of Professional Conduct and a consultation with the Virginia State Bar, without specificity. The district court gave Peiffer the opportunity to expand on her motion and declaration; however, Peiffer did not provide additional factual information. Moreover, Peiffer did not address how her withdrawal affected her overall duties at VCRRC, how it affected other clients, and how she prioritized client representation. At the hearing on June 16, 2023, the court sought such clarity and allowed Peiffer every opportunity to remedy the lack of information before the court. Peiffer did not attest that she was withdrawing from other client representation; she did not address how she prioritized work; and while she has a modified schedule to provide her reasonable accommodations to care for her mother, she said that she will remain employed with the VCRRC. (Tr. at 6-8). The court noted that while Peiffer availed herself of a consultation with the bar, she did not disclose the substance of those communications; she did not provide a written opinion explaining how her perception of a personal conflict gave rise to a withdrawal from the representation—particularly at this late stage in the litigation; and she did not identify whether she discussed her ethical obligations for providing Runyon with continuity of counsel. (Tr. at 7). Despite the district court's invitation to address the court's concerns (Tr. at 6), Peiffer never provided

19

additional evidence on those issues and likewise never addressed whether she received advice regarding her ethical obligations to remain in the representation.

Runyon did "renew his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington." (ECF No. 815 at 5). The motion remains unclear as to which attorneys will formally seek admission, and no Covington attorney has in fact submitted a *pro hac vice* application.

Despite her difficult personal situation, Peiffer remains involved in other federal cases, including a case pending in the United States District Court for the Northern District of Mississippi – *Batiste v. Cain*, No. 1:22cv108. Peiffer was admitted *pro hac vice* in that case and was listed as counsel on an Amendment to Petition for a Writ of Habeas Corpus by a Prisoner in State Custody, filed on June 20, 2023. (ECF 31). That filing apparently prompted a *sua sponte* order by the district court, filed on June 21, 2023, that clarified an apparent misunderstanding as to "the nature of Ms. Peiffer's role in these proceedings." (ECF 32). The district court indicated that Peiffer was admitted *pro hac vice* as associate counsel at a reduced rate. *Id.* This Order has not prompted any motion to withdraw by Peiffer. In fact, the Superseding Scheduling Order in that case, also issued on June 21, 2023, requires an answer and reply to the Amended Petition within the next five months (90 days for an answer, and another 60 days for a reply). Additionally, the petitioner in this case (represented by Peiffer and other counsel) must file a

20

memorandum of law within 90 days after service of the answer.  In short, the

schedule sets forth deadlines occurring over the next three to six months, which

overlaps with the time frame in this case.

Peiffer's involvement in new litigation undercuts her claim that she cannot

adequately assist Runyon.  Moreover, what remains to be done in Runyun's case is

limited.  When the evidentiary hearing in Runyon's case resumes, the scope of the

proceedings should be narrow.  At the time that the hearing was continued in

February 2023, defense counsel represented to the court that they had five

proposed witnesses remaining: Dr. Merikangas, whose apparently false

information about not receiving brain scans and never discussing with trial counsel

was material in securing the limited remand.  Additional witnesses include Drs.

Cunningham, Martell, and Nadkarni, *post hoc* mental health experts, and Barrett, a

self-identified *"Strickland* expert," all of whom remain subject to challenge for

relevance and necessity.  Each of these experts have completed their evaluations,

reports, and consultations with Runyon's counsel.

At Runyon's request, their discovery was ordered complete by August 31,

2023, and the hearing is due to reconvene by November 1, 2023, and "each day

thereafter, until completion." (ECF 802 at 4).  Given counsels' proffers to the

court, and even assuming all five proposed witnesses testify, Runyon should

complete his case-in-chief in less than five days, and the government anticipates

moving for judgment at the conclusion of Runyon's case-in-chief.  If that motion is denied, the government will seek to present rebuttal evidence.

## Analysis

Runyon and his amici seek to depict this mandamus petition as dealing with a bare application of *pro hac vice* standards (to six applications that were never actually submitted to the district court).  But that is an unjustifiable oversimplification and one that does not give the district court its due in managing long-running habeas proceedings that Runyon's defense team had badly derailed.

Two fundamental points relating to the merits of Runyon's claims frame the district court's trial-management rulings below.  First, the mandate rule limits what remains to be litigated in Runyon's § 2255 motion.  Runyon has not just initiated a § 2255; rather, he previously litigated and lost his first § 2255 before the district court, appealed, and had this Court affirm on all but a single claim of ineffective assistance of counsel that was remanded for an evidentiary hearing.  *United States v. Runyon*, 994 F.3d 192, 208–09 (4th Cir. 2021).

The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court," as well as "issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court."  *United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993).  Runyon

22

cannot claim to have the right to expand the issues before the district court because of misconduct by one of Runyon's attorneys in failing to disclose evidence that undermines the sole claim on which this Court remanded.  And even beyond the mandate rule, any amendment to Runyon's § 2255 would be time barred under § 2255(f).  *See, e.g., Mayle v. Felix*, 545 U.S. 644 (2005) (rejecting amended claims on collateral review that are barred by statute of limitations); *United States v. Pittman*, 209 F.3d 314, 317–18 (4th Cir. 2000) (discussing "relation back" principles in a § 2255 and rejecting "broad view" that would permit conceptually distinct ineffective assistance claims to relate back as long as they arose out of the same trial or proceedings as the original claims).

Second, the ineffectiveness claim before the district court is narrow.  The claim addresses solely whether trial counsel was ineffective in failing to present evidence of brain damage and mental health at the penalty phase.  *Runyon*, 994 F.3d at 204–09.  When a court evaluates this claim, trial counsel's conduct must be evaluated using the information available to counsel "as of the time of counsel's conduct," *Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)), and a defense attorney's decisions about what to investigate further in such circumstances "are due 'a heavy measure of deference.'"  *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011) (quoting *Strickland*, 466 U.S. at 691).

23

Confronted with the limited scope of the remaining proceedings, the district court had ample reason to ensure that the proceedings stay on track, cure the discovery violation, and conclude in a timely and efficient manner.  As this Court and the Supreme Court have explained, "[q]uestions of trial management are quintessentially the province of the district courts."  *United States v. Martinovich*, 810 F.3d 232, 241 (4th Cir. 2016), and "courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172–73 (1989) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

Federal courts in their case management authority can set deadlines for litigants, regulate discovery, limit the duration of hearings, restrict a party's authority to raise new claims after six days of an evidentiary hearing, ensure compliance with the mandate rule, and limit which attorney may address a witness or claim.  Illustrating these points, courts have found time limits on the presentation of evidence unexceptional.  "Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *Life Plus Int'l v. Brown,* 317 F.3d 799, 807 (8th Cir.2003).  Such limits are not viewed in isolation and are assessed in context.  *See, e.g., Cedar Hill Hardware & Const. Supply, Inc.*

24

*v. Ins. Corps. of Hannover,* 563 F.3d 329, 352 (8th Cir. 2009). Similarly, it is an unexceptional rule in the Eastern District of Virginia that "[o]nly one attorney for each party, or any party acting *pro se*, shall examine or cross-examine each witness. The person stating objections (if any) during direct examination shall be the attorney or party acting *pro se* recognized for cross-examination." *United States v. Nabaya*, No. 3:17-cr-3, 2017 WL 3880660, at *15 (E.D.Va. Sept. 5, 2017) (unpublished). When a court is resuming a hearing after a defendant's discovery violation and seeking to complete hearing addressing a limited issue on remand, the court has the case management discretion to direct that the attorneys that the court appointed will address the court on the matter. Runyon points to no authority that creates a clear and indisputable right that the district court abused its discretion in this regard. And "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666 (1978) (plurality op.)); *see also In re City of Virginia Beach*, 42 F.3d 881, 884 (4th Cir. 1994).

As in *Cedar Hill*, the district court here was appropriately concerned by the lengthy delays, the time and judicial resources already expended on this limited issue, counsels' preparation and preservation of the remaining relevant evidence, which due to the passage of time, aging, and deaths, is subject to additional loss.

25

In the pendency of the appeal, one expert (Dr. Mirsky) died, lead trial counsel is battling cancer, and Runyon's remaining fact expert, Dr. Merikangas motioned to testify by alternate means (his declaration) or by remote testimony due to his advanced age and poor health.

Because no *pro hac vice* applications were actually before the district court, its decision is most straightforwardly treated as a case-management ruling. But even when viewed through the lens of a ruling on a *pro hac vice* application, the district court did not abuse its discretion. This Court has stated that *pro hac vice* status is "not a right" and that the decision to grant such status "rest[s] in the sound discretion of the presiding judge." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957). The "decision on whether to grant *pro hac vice* status to an out-of-state lawyer is purely discretionary." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 277 n. 2 (1985) (citing *Leis v. Flynt*, 439 U.S. 438, 442 (1979)). Moreover, the local rules in the Eastern District of Virginia assign an important role for local counsel. For example, under Local Criminal Rule 57.4(G), every pleading and every appearance must be accompanied by local counsel, and the court's appointed counsel was local counsel for Runyon in this case. Runyon cannot show that the district court violated a clear and indisputable right of his to the extent that the court forecasted that its case management concerns would lead it

26

to deny some or all of the *pro hac vice* applications that the Covington lawyers might file.

That is not to say that a district court's authority to deny *pro hac vice* status is boundless. "If pro hac vice attorneys become subject to uniquely preemptory dismissals, then federal courts will be lesser bulwarks against local favoritism," and the "legal profession has become a national one." *Belue v. Leventhal*, 640 F.3d 57, 576 (4th Cir. 2011). This case does not require this Court to address whether the district court could have precluded the Covington attorneys from receiving *pro hac vice* status earlier in the proceedings, and nothing the district court said indicated that the district court had adopted a view on that matter. All that is relevant here is whether Runyon can show that the district court abused its discretion when it forecasted how it would rule on *pro hac vice* application under the circumstances presented here and where counsel had not offered the court additional factors to consider on Runyon's request.

Likewise, Runyon's point that the government has one attorney who must appear *pro hac vice* ignores that Local Rule 57.4(D) validly treats *pro hac vice* admission for attorneys for the United States and the Federal Public Defender differently than other litigants. Indeed, as to the United States, how a court regulates the executive branch's choice of attorney to represent the United States implicates separation-of-powers concerns. By statute Congress has directed that

27

the U.S. Attorney General may dispatch any of the Justice Department's lawyers to any court in the United States to address the United States' interests. *See, e.g.,* 28 U.S.C. §§ 517 and 518(b). Likewise, in 28 U.S.C. § 530C(c)(1), an attorney for the Justice Department need only be admitted to a state bar, but not necessarily the state bar for the jurisdiction in which they are appearing. *See United States v. Ferrara*, 54 F.3d 825, 826 (D.C. Cir. 1995). The Supremacy Clause also limits state authority over federal enforcement of the United States' interests. *See, e.g., Hancock v. Train*, 426 U.S. 167, 178–79 (1976). In short, Runyon's comparison between his *pro bono* counsel and counsel for the United States is inapt, and again, Runyon does not meet his burden of showing that the district court violated a clear and indisputable right of his.

Nor can Runyon show that the district court violated a clear and indisputable right of his by pointing to the concept of choice of counsel. Again, settled law establishes that there is no Sixth Amendment right to counsel on collateral review. *See, e.g., Davila v. Davis*, 582 U.S. 521, 524 (2017); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). Any Sixth Amendment right to choice of counsel does not extend to defendants who need appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). And as to a statutory right to counsel, Runyon received two appointed counsel under 18 U.S.C. § 3599 whom he accepted, and as to

28

substitutions of counsel under § 3599(e), the Supreme Court has construed

§ 3599(e) to adopt an interest-of-justice standard—not a choice-of-counsel

standard.  *See Martel v. Clair*, 565 U.S. 648, 658 (2012).  Runyon therefore has no

constitutional source for a right to choice of counsel, identifies no statutory source

for a right to choice of counsel for the Covington attorneys, and cannot show that

his any clear and indisputable right of his was violated.

Runyon also cannot convert his mandamus petition into a challenge to the

district court's denial of Elizabeth Peiffer's motion to withdraw under the

standards in *Martel*.  For one thing, Runyon does not actually argue in his

mandamus petition that the district court's ruling on Peiffer's motion to withdraw

violates a clear and indisputable right of Runyon's.  Any such argument should be

deemed waived.  For another thing, the facts fail to show that the district court

abused its discretion, much less in a way that could be deemed to satisfy the clear-

and-indisputable-right standard.  The continuation of the evidentiary hearing is not

until November 1; Peiffer has the assistance of cocounsel; the remaining issue is

limited; and Peiffer is continuing to practice law.  Runyon also does not purport to

claim that the Covington lawyers are necessary to satisfy § 3599 and again has

waived any such argument by not raising it.

But as noted abo, even setting aside whether Runyon has established a clear

and indisputable right to have the Covington lawyers admitted *pro hac vice*,

29

Runyon cannot reasonably insist that he has met the first requirement for mandamus relief given that he has not actually submitted *pro hac vice* applications to the district court for the Covington lawyers. This point not only bears on whether there are no other means available to Runyon, but also bear on what Runyon is asking this Court to do. Runyon wants this Court to direct the *pro hac vice* admission of attorneys where no such application is before any court. *See, e.g., In re Alford*, 560 F. App'x 113, 113 (3d Cir. 2014) (rejecting mandamus petition requesting judicial recusal; "Alford has not filed a recusal motion in the District Court, and thus cannot make the required showing that he has 'no other adequate means to attain the desired relief.'").

This Court in its discretion also should not grant mandamus given that Runyon has two appointed attorneys, is receiving assistance from the six Covington attorneys, and is addressing solely the remainder of the evidentiary hearing on the single issue on which this Court remanded. This is not a case that calls for "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney*, 542 U.S. at 380. No "irreparable harm is likely" here. *In re City of Virginia Beach*, 42 F.3d at 884 (citation omitted).

30

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
       Richard D. Cooke
       Assistant United States Attorney
       919 East Main Street Suite 1900
       Richmond, Virginia 23219
       Telephone: (804) 819-5471
       Email: richard.cooke@usdoj.gov

       Brian J. Samuels
       Lisa McKeel
       Assistant United States Attorney
       Fountain Plaza Three, Suite 300
       721 Lakefront Commons
       Newport News, Virginia 23606
       Telephone: (757) 591-4000
       Facsimile: (757) 591-0866
       Email: brian.samuels@usdoj.gov

31

## Certificate of Compliance

I certify that I wrote this brief using 14-point Times New Roman typeface and Microsoft Word 2016. I further certify that this response to a mandamus petition does not exceed 7,800 words (and is specifically 7,166 words) as counted by Microsoft Word.

By:  /s/ _____
Richard D. Cooke
Assistant United States Attorney
919 East Main Street Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5471
Email: richard.cooke@usdoj.gov